UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————— x

In re DEUTSCHE BANK AG SECURITIES       :     Master File No. 1:09-cv-01714-DAB
LITIGATION                              :
                                        :     <u>CLASS ACTION</u>
————————————————————            :
                                        :
This Document Relates To:               :     PLAINTIFFS' OPPOSITION TO
                                        :     DEFENDANTS' MOTION TO DISMISS
    ALL ACTIONS.                        :     ALL CLAIMS FROM THE FEBRUARY
                                        x     2008 OFFERING
————————————————————

## TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ...................................................................................................1

II.  PROCEDURAL HISTORY.......................................................................................3

III. ARGUMENT ..........................................................................................................7

    A.   Laiti Filed a Complaint Alleging February 2008 Offering Claims Within the Statute of Repose ..................................................................................7

        1.   Laiti Did Not "Abandon" Her Claims .......................................................8

        2.   *ANZ* Does Not Bar Laiti's Claim ..............................................................10

        3.   *IndyMac* Does Not Bar Laiti's Claim .......................................................13

        4.   *ING* Does Not Bar Laiti's Claim ..............................................................16

    B.   Laiti Filed a Complaint Alleging February 2008 Offering Claims Within the Statute of Limitations............................................................................20

        1.   *American Pipe* Has Tolled the Statute of Limitations Applicable to All Putative Class Members Since the First-Filed Class Action Complaint......................................................................................................21

        2.   No Exception to *American Pipe* Applies .................................................21

IV.  CONCLUSION....................................................................................................25

1304554_1

# TABLE OF AUTHORITIES

Page

## CASES

*Am. Pipe & Constr. Co. v. Utah*,
    414 U.S. 538 (1974)...................................................................................11, 14, 21, 22

*Belmont Holdings Corp. v. Deutcshe Bank*,
    _U.S._, 135 S. Ct. 2805 (2015)..........................................................................5

*Betances v. Fischer*,
    144 F. Supp. 3d 441 (S.D.N.Y. 2015)..............................................................21, 23

*Cole v. Schenley Indus., Inc.*,
    563 F.2d 35 (2d Cir. 1977)................................................................................7

*Collins v. Vill. of Palatine*,
    203 F. Supp. 3d 952 (N.D. Ill. 2016) ...............................................................25

*Crown, Cork & Seal Co. v. Parker*,
    462 U.S. 345 (1983)........................................................................... *passim*

*Cullen v. Margiotta*,
    811 F.2d 698 (2d Cir. 1987)..............................................................................10

*Culver v. City of Milwaukee*,
    277 F.3d 908 (7th Cir. 2002) ...........................................................................24

*DPWN Holdings (USA), Inc. v. United Air Lines, Inc.*,
    871 F. Supp. 2d 143 (E.D.N.Y. 2012) .............................................................24

*Drapkin v. Mafco Consol. Grp., Inc.*,
    818 F. Supp. 2d 678 (S.D.N.Y. 2011)..............................................................10

*Fait v. Regions Fin. Corp.*,
    655 F.3d 105 (2d Cir. 2011)..............................................................................4, 5

*Freidus v. ING Groep N.V.*,
    No. 09 Civ. 1049 (LAK), 2012 WL 2878637
    (S.D.N.Y. July 10, 2012) .................................................................6, 16, 17, 18

*Freidus v. ING Group N.V.*,
    No. 09 Civ. 1049(LAK), 2012 WL 4857543
    (S.D.N.Y. Oct. 11, 2012), *aff'd on other grounds*,
    543 F. App'x 93 (2d Cir. 2013), *vacated in part and aff'd in part*,
    601 F. App'x 59 (2d Cir. 2015) .......................................................................16, 17

1304554_1

**Page**

*Giovanniello v. ALM Media, LLC,*
  726 F.3d 106 (2d Cir. 2013)....................................................................24

*Guy v. Lexington-Fayette Urban Cty. Gov't,*
  488 F. App'x 9 (6th Cir. 2012) ..............................................................24

*Hayes v. Cty. of Sullivan,*
  853 F. Supp. 2d 400 (S.D.N.Y. 2012)....................................................10

*In re Cobalt Int'l Energy, Inc. Sec. Litig.,*
  No. H-14-3428, 2017 U.S. Dist. LEXIS 134495
  (S.D. Tex. Aug. 23, 2017).......................................................................13

*In re Deutsche Bank AG Sec. Litig.,*
  No. 09 Civ. 1714 (DAB), 2011 U.S. Dist. LEXIS 93867
  (S.D.N.Y. Aug. 19, 2011) .........................................................................4

*In re Deutsche Bank AG Sec. Litig.,*
  No. 09 Civ. 1714 (DAB), 2012 U.S. Dist. LEXIS 115088
  (S.D.N.Y. Aug. 9, 2012) ...........................................................................4

*In re Deutsche Bank AG Sec. Litig.,*
  No. 09 Civ. 1714 (DAB), 2013 U.S. Dist. LEXIS 70816
  (S.D.N.Y. May 15, 2013)...........................................................................5

*In re Facebook, Inc.,*
  312 F.R.D. 332 (S.D.N.Y. 2015) .........................................................9, 18

*In re Indep. Energy Holdings PLC, Sec. Litig.,*
  210 F.R.D. 476 (S.D.N.Y. 2002) .............................................................9

*In re IndyMac Mortg.-Backed Sec. Litig.,*
  793 F. Supp. 2d 637 (S.D.N.Y. 2011)......................................13, 14, 15, 16

*In re Initial Pub. Offering Sec. Litig.,*
  214 F.R.D. 117 (S.D.N.Y. 2002) .............................................................9

*In re Initial Pub. Offering Sec. Litig.,*
  617 F. Supp. 2d 195 (S.D.N.Y. 2007)......................................................22

*In re Lehman Bros. Sec. & ERISA Litig.,*
  No. 09 MD 2017 (LAK), 2013 U.S. Dist. LEXIS 13999
  (S.D.N.Y. Jan. 23, 2013).........................................................................18

- iii -

**Page**

*In LIBOR-Based Fin. Instruments Antitrust Litig.*,
No. 11 MDL 2262 NRB, 2015 WL 6243526
(S.D.N.Y. Oct. 20, 2015) ........................................................................24

*In re Nat'l Austl. Bank Sec. Litig.*,
No. 03 Civ. 6537 (BSJ), 2006 U.S. Dist. LEXIS 94163
(S.D.N.Y. Nov. 8, 2006) .........................................................................23

*In re Vivendi Universal, S.A. Sec. Litig.*,
281 F.R.D. 165 (S.D.N.Y. 2012) .............................................................23

*In re Winstar Commc'ns Sec. Litig.*,
290 F.R.D. 437 (S.D.N.Y. 2013) .............................................................19

*Johnson v. Manhattan Ry. Co.*,
289 U.S. 479 (1933)..................................................................................7

*Kaess v. Deutsche Bank AG*,
572 F. App'x 58 (2d Cir. 2014), *vacated sub nom.*
*Belmont Holdings Corp. v. Deutsche Bank AG*,
__ U.S. __, 135 S. Ct. 2805 (2015)...........................................................5

*Katz v. Realty Equities Corp. of N.Y.*,
521 F.2d 1354 (2d Cir. 1975)....................................................................8

*Korwek v. Hunt*,
827 F.2d 874 (2d Cir. 1987).....................................................................22

*Litton Indus., Inc. v. Lehman Bros. Kuhn Loeb, Inc.*,
967 F.2d 742 (2d Cir. 1992).....................................................................20

*N. Sound Capital LLC v. Merck & Co.*,
No. 16-1367, 2017 WL 3278886 (3d Cir. Aug. 2, 2017) ......................12

*N.Y. State Elec. & Gas Corp. v. FirstEnergy Corp.*,
766 F.3d 212 (2d Cir. 2014)....................................................................20

*NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*,
693 F.3d 145 (2d Cir. 2012)...............................................................18, 19

*NYTDA, Inc. v. N.Y.C.*,
No. 11-CV-1836 (NGG) (RER), 2014 WL 4274219
(E.D.N.Y. Aug. 28, 2014).........................................................................9

Page

*Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*,
  __ U.S.__, 135 S. Ct. 1318 (2015)....................................................................5

*P. Stolz Family P'ship L.P. v. Daum*,
  355 F.3d 92 (2d Cir. 2004)...........................................................................12

*Police & Fire Ret. Sys. of City of Detroit v. Goldman, Sachs & Co.*,
  No. 10 Civ. 4429 (MGC), 2014 WL 1257782
  (S.D.N.Y. Mar. 27, 2014) ...........................................................................19

*Police & Fire Ret. Sys. v. IndyMac MBS, Inc.*
  721 F.3d 95 (2d Cir. 2013)................................................................ *passim*

*Ret. Sys. v. ANZ Sec., Inc.*,
  __ U.S.__, 137 S. Ct. 2042 (2017)..................................................... *passim*

*Ret. Sys. v. ANZ Sec.*,
  No. 16-373 (*petition for cert. filed* Sept. 22, 2016) ....................................6

*Ret. Sys. v. YPF Sociedad Anonima*,
  980 F. Supp. 2d 487 (S.D.N.Y. 2013)............................................................9

## STATUTES, RULES AND REGULATIONS

15 U.S.C.
  §77k.......................................................................................................1
  §77l(a)(2) ..............................................................................................3
  §77m ...........................................................................................1, 11, 12
  §77o.......................................................................................................7
  §77z-1 ............................................................................................. *passim*
  §77z-1(a)(3)(B)(ii) .................................................................................2
  §78u-4(a)(3)(B)(iii)(I).............................................................................7


Federal Rules of Civil Procedure
  Rule 12(b)(6)........................................................................................10
  Rule 15(c)............................................................................................17
  Rule 23 ......................................................................................9, 22, 24
  Rule 26 ..................................................................................................9
  Rule 42(a) ..............................................................................................7

## I.       INTRODUCTION

On December 1, 2016, this Court provided plaintiffs the opportunity to file an amended motion for class certification including a class representative for the February 2008 Offering. Plaintiffs did just that.  Sylvia Laiti ("Laiti"), one of the first persons to file a complaint in this consolidated action, is seeking to serve as a class representative with respect to the February 2008 Offering, the subject of her complaint.  Defendants' motion is an attempt to strip Laiti of her right to serve in this capacity, and deprive all purchasers in the February 2008 Offering of any opportunity to recover losses due to defendants' misstatements and omissions.  The motion should be denied.

Defendants fail to explain how the recent decision from the U.S. Supreme Court in the matter of *Cal. Pub. Emps.' Ret. Sys. v. ANZ Sec., Inc.*, __ U.S.__, 137 S. Ct. 2042 (2017) ("*ANZ*"), supports their request of dismissal of the February 2008 Offering.  It does not.  *See infra* §III.A.2. As defendants admit, *ANZ* affirmed a rule that has been the law in the Second Circuit since 2013: the three-year limit in §13 of the Securities Act of 1933 ("Securities Act") (15 U.S.C. §77m) is a "statute of repose" which is "in general not subject to tolling."  *Id*. at 2050.  Because Laiti does not need to rely on tolling of the statute of repose, that holding is not relevant here and presents absolutely no basis for dismissing the February 2008 Offering.

On April 17, 2009, ***well within the statute of limitations and repose periods***, Laiti filed a complaint asserting claims pursuant to §§11, 12(a)(2) and 15 of the Securities Act (15 U.S.C. §§77k, 77l(a)(2) and 77o) arising from alleged misstatements and omissions contained in the February 2008 Offering materials.  On August 11, 2009, this Court consolidated Laiti's action with five other actions that had been filed in the Southern District of New York, and appointed another plaintiff as the lead plaintiff in the consolidated action. Dkt. No. 19 at 1-3; *id.* at 14 ("The following six actions

- 1 -

are consolidated *for all purposes*, including pretrial proceedings, trial, and appeal . . . .").[1]  As Congress intended in passing the Private Securities Litigation Reform Act of 1995 ("PSLRA"), the lead plaintiff acted as the "lead plaintiff for the consolidated actions" on behalf of all other consolidated plaintiffs and absent class members.  15 U.S.C. §77z-1(a)(3)(B)(ii). [2]

Unlike CalPERS – the petitioner in *ANZ* that filed its original complaint after the expiration of the statute of repose (to pursue its claims separate from a class action filed years earlier) – Laiti neither seeks to, nor needs to, invoke the doctrine of equitable tolling to pursue her claims.  She filed a timely complaint.  And the Supreme Court acknowledged that it takes *less than* filing a complaint within the repose period to protect a class member's right to assert that claim later.  *ANZ*, 137 S. Ct. at 2054 ("A simple motion to intervene or request to be included as a named plaintiff in the class action complaint may well suffice.").[3]  This is because the statute of repose is intended to provide the defendant with notice of the "number and identity of individual suits" and "where they may be filed," within a specified period.  *Id*. at 2053.  Defendants here, of course, were provided that notice by Laiti in 2009.  None of this is disputed by defendants, and they concede Laiti's complaint was filed within both the statutes of limitations and repose.

Finding no help from *ANZ*, defendants attempt to expand the Second Circuit's decision in *Police & Fire Ret. Sys. v. IndyMac MBS, Inc.*, 721 F.3d 95 (2d Cir. 2013) ("*IndyMac*"), to bar Laiti's

---

[1]   Unless otherwise noted, emphasis is added and citations are omitted throughout.

[2]   The Court initially appointed Kaess and Farruggio as lead plaintiffs on August 11, 2009, and added Belmont as a lead plaintiff on November 23, 2009, following Belmont's motion for reconsideration of the Court's August 11, 2009 order.

[3]   The Supreme Court says a mere *request* to be included – and not actual inclusion – as a named plaintiff in the lawsuit is all that is required.  *ANZ*, 137 S. Ct. at 2054.  After all, a non-lead plaintiff cannot insist that the court-appointed lead plaintiff include her as a named plaintiff in the consolidated complaint.  That is the lead plaintiff's prerogative.

- 2 -

timely filed and continuously litigated February 2008 Offering claim.  But *IndyMac* is of no help to defendants because Laiti's claim was neither newly added after the statute of repose ended, nor previously dismissed for lack of jurisdiction.  *See infra* §III.A.3.  Unlike this case, in *IndyMac* the consolidated complaint **on its face** did not validly assert the claims of the attempted intervenor – the appointed lead plaintiffs **did not** purchase in the same offering as the intervenor, and thus did not have standing to assert a claim on that offering.  *See id*.  As a result, the statute of repose ran as to those claims.  The consolidated complaints in this case **did** properly assert Laiti's claim and it has been continuously pursued since 2009.

So defendants' only argument now is that Laiti somehow inadvertently "abandoned" her claim and "disappeared" from the case after the appointment of the lead plaintiffs.  But such a thin reed cannot support the weight they ask it to bear.  Defendants' argument ignores the Congressionally mandated lead plaintiff process set forth in the PSLRA, this Court's consolidation order and the Supreme Court's analysis in *ANZ*.  Neither does the statute of limitations – which defendants assert for the first time ever in this litigation – compel dismissal of Laiti's timely filed claim.  *See infra* §III.B.  Accordingly, defendants' request for dismissal of the February 2008 Offering should be denied.

## II.   PROCEDURAL HISTORY

Between February 24 and May 1, 2009, six separate actions alleging Securities Act claims under §§11, 12(a)(2) and 15 were filed in the Southern District of New York.  Dkt. No. 19 at 2.  On April 17, 2009, ***well within the statute of limitations and repose periods***, Laiti filed a complaint: (1) in the Southern District of New York; (2) asserting claims pursuant to §§11, 12(a)(2) and 15 of the Securities Act (15 U.S.C. §§77k, 77l(a)(2) and 77o); and (3) arising from alleged misstatements and

omissions contained in the February 2008 Offering materials. *See Laiti v. Deutsche Bank AG*, No. 1:09-cv-03889, Class Action Complaint at 2-3 (S.D.N.Y. Apr. 17, 2009) (Dkt. No. 1).

On August 11, 2009, pursuant to the procedures set forth in the PSLRA (15 U.S.C. §77z-1), this Court entered an order consolidating Laiti's action with the five other related actions filed in this District. The Court also appointed Norbert G. Kaess ("Kaess"), Maria G. Farruggio ("Farruggio") and Belmont Holdings Corp. ("Belmont") as lead plaintiffs to litigate the claims on the class members' behalf.

On January 25, 2010, lead plaintiffs filed a Consolidated Amended Complaint ("CAC") asserting claims arising from six offerings, including the February 2008 Offering, and alleging lead plaintiff Belmont participated in the February 2008 Offering. Dkt. No. 34, ¶¶2, 16. Defendants moved to dismiss the CAC but did not challenge Belmont's standing. Dkt. Nos. 44, 46. On August 19, 2011, this Court found the CAC properly alleged a claim for five of the six offerings, including the February 2008 Offering. *In re Deutsche Bank AG Sec. Litig.*, No. 09 Civ. 1714 (DAB), 2011 U.S. Dist. LEXIS 93867 (S.D.N.Y. Aug. 19, 2011). Lead Plaintiffs filed a Second Consolidated Amended Complaint ("2CAC") to conform with the Court's order, and defendants filed their Answer on October 18, 2011. Dkt. No. 67. In their Answer, defendants asserted 20 affirmative defenses, but the statute of limitations and statute of repose were not among their defenses.

At approximately the same time, defendants moved for reconsideration on the basis that *Fait v. Regions Fin. Corp.*, 655 F.3d 105 (2d Cir. 2011) ("*Fait*"), constituted a recent change in authority. The Court granted reconsideration and dismissed all claims because plaintiffs did not allege facts demonstrating defendants did not believe their "opinion" statements were true, and otherwise disavowed allegations of fraud. *In re Deutsche Bank AG Sec. Litig.*, No. 09 Civ. 1714 (DAB), 2012 U.S. Dist. LEXIS 115088, at *9 (S.D.N.Y. Aug. 9, 2012).

- 4 -

Plaintiffs then moved for reconsideration, seeking leave to amend to satisfy the *Fait* pleading standard.  Dkt. No. 73.  The Court denied plaintiffs' request, *In re Deutsche Bank AG Sec. Litig.*, No. 09 Civ. 1714 (DAB), 2013 U.S. Dist. LEXIS 70816 (S.D.N.Y. May 15, 2013), and plaintiffs appealed to the Second Circuit.  The Court of Appeals affirmed the dismissal and denial of leave to amend.  *Kaess v. Deutsche Bank AG*, 572 F. App'x 58, 59 (2d Cir. 2014), *vacated sub nom. Belmont Holdings Corp. v. Deutsche Bank AG*, __ U.S. __, 135 S. Ct. 2805 (2015).

After denial of a request for rehearing en banc, plaintiffs filed a petition for writ of certiorari with the Supreme Court.  During the pendency of the writ, the Supreme Court issued its decision in *Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, __ U.S.__, 135 S. Ct. 1318, 1327 (2015), rejecting the per se application of *Fait*'s requirement that a speaker must subjectively disbelieve his or her own opinion.  Following its decision in *Omnicare*, the Supreme Court granted plaintiffs' petition for writ of certiorari, vacated the judgment of the Second Circuit, and remanded the case "for further consideration in light of *Omnicare*."  *Belmont Holdings Corp. v. Deutcshe Bank*, _U.S._, 135 S. Ct. 2805 (2015).  During all of these appellate proceedings, defendants did not challenge Belmont's standing.

Defendants then moved this Court for dismissal on the grounds that *Fait* is unaffected by *Omnicare* and plaintiffs did not and could not comply with *Omnicare*.  Dkt. No. 91.  Plaintiffs requested leave to amend the complaint because the proposed Third Consolidated Amended Complaint ("TCAC") had never been considered by the Court and plaintiffs had not yet been given an opportunity to "incorporate[] facts relevant to *Omnicare*'s new approach."  Dkt. No. 94 at 17-20.  On October 15, 2015, with leave from this Court, lead plaintiffs filed the TCAC – the operative complaint – asserting claims arising from, *inter alia*, the February 2008 Offering.  Dkt. No. 98 at 2.  Defendants again moved to dismiss the TCAC, but again did not challenge Belmont's standing.

On July 25, 2016, the Court upheld certain claims with respect to the November 2007 and February 2008 Offerings.  Dkt. No. 114 at 76-81.  Defendants filed their Answer to the TCAC on October 24, 2016.  This time they asserted 24 affirmative defenses, but again the statute of limitations and statute of repose were not among them.  Dkt. No. 124.

On November 17, 2016, plaintiffs moved to certify a class with respect to the November 2007 Offering.  Dkt. Nos. 126, 127.  Thereafter, plaintiffs informed the Court of Belmont's intention to seek voluntary withdrawal as a lead plaintiff.[4]  During a conference on December 1, 2016, the Court granted plaintiffs permission to file an amended motion for class certification by January 20, 2017, if a new plaintiff stepped forward as a proposed class representative for the February 2008 Offering.  Dkt. No. 131 at 2.  On January 20, 2017, in accordance with the Court's direction, plaintiffs filed an amended motion for class certification, seeking to appoint Laiti as a proposed class representative with respect to the February 2008 Offering.  Dkt. Nos. 133, 134.

On February 8, 2017, defendants filed a letter brief with the Court, arguing the February 2008 Offering should be dismissed under *IndyMac*.  Plaintiffs filed a response on February 9, 2017, addressing defendants' arguments and identifying the reasons why no such dismissal was warranted under *IndyMac*.  The parties held another conference with the Court on February 10, 2008.  On April 6, 2017, the Court issued an order staying further proceedings with respect to the February 2008 Offering until the Supreme Court entered a decision in *Cal. Pub. Emps.' Ret. Sys. v. ANZ Sec.*, No.

---

[4]    On February 8, 2017, the Court entered as an order the parties' Stipulation and [Proposed] Order dismissing Belmont. Dkt. No. 139. Defendants' accusation that plaintiffs have been prosecuting the February 2008 claims without a plaintiff with standing is simply false. Dkt. No. 159 ("Memo.") at 4 n.1. Defendants do not contend Belmont did not hold the February 2008 Offering securities when this action was commenced. That a different district court in another action held Belmont could not demonstrate injury with respect to one of the securities offerings litigated in *that* action is of no impact to this action. The district court's opinion in *Freidus v. ING Groep N.V.*, No. 09 Civ. 1049 (LAK), 2012 WL 2878637 (S.D.N.Y. July 10, 2012), is not binding authority and has no precedential impact here. More importantly, it has no effect whatsoever on Laiti's claim in this case.

16-373 (*petition for cert. filed* Sept. 22, 2016).  On June 26, 2017, the Supreme Court issued an opinion in *ANZ*.

## III.   ARGUMENT

Laiti's complaint was timely and defendants do not contend otherwise.  On April 17, 2009, well within the statute of limitations and repose periods, Laiti filed a complaint:  (1) in the Southern District of New York; (2) asserting class claims pursuant to §§11, 12(a)(2) and 15 of the Securities Act (15 U.S.C. §§77k, 77l(a)(2) and 77o); and (3) arising from alleged misstatements and omissions contained in the February 2008 Offering materials.  *See Laiti v. Deutsche Bank AG*, No. 1:09-cv-03889, Class Action Complaint at 2-3 (S.D.N.Y. Apr. 17, 2009) (Dkt. No. 1).[5]  Laiti's action, which defendants have never moved to dismiss on jurisdictional grounds, remains pending before this Court.

### A.   Laiti Filed a Complaint Alleging February 2008 Offering Claims Within the Statute of Repose

In accordance with the Federal Rules and the PSLRA, the Court consolidated the six related actions filed between February 24 and May 1, 2009, for all purposes, including appeal.  Notwithstanding consolidation, Laiti remained a named party to one of those consolidated actions.  ***None of Laiti's rights as a plaintiff were affected by the consolidation or the filing of subsequent, consolidated complaints***.   *Cole v. Schenley Indus., Inc.*, 563 F.2d 35, 38 (2d Cir. 1977) (consolidation under Rule 42(a) does not "effect a merger of the actions or the defenses of the separate parties" and "does not change the rights of the parties in the separate suits") (citing *Johnson*

---

[5]   Defendants make hay of the fact Laiti did not move for appointment of lead plaintiff in 2009, but they ignore that the PSLRA creates a rebuttable presumption that "the most adequate plaintiff is the person or group" with "the largest financial interest in the relief sought by the class."  15 U.S.C. §78u-4(a)(3)(B)(iii)(I).  As evidenced by the court record at the time, Laiti did not have the "largest financial interest" and such a motion would have been futile.

*v. Manhattan Ry. Co.*, 289 U.S. 479, 496-97 (1933)); *Katz v. Realty Equities Corp. of N.Y.*, 521 F.2d 1354, 1361 n.7 (2d Cir. 1975) ("Rights are unaffected even though a consolidated complaint is filed.").

The PSLRA requires the court to appoint a lead plaintiff to oversee the litigation until a class is certified and a class representative appointed. 15 U.S.C. §77z-1. In this case, the Court appointed lead plaintiffs Kaess, Farruggio and Belmont to litigate the class's claims, including Laiti's. The consolidated complaint filed on January 25, 2010, as well as each successive amended consolidated complaint, asserted violations of the Securities Act arising from the February 2008 Offering and included a named plaintiff (Belmont) who purchased securities in the February 2008 Offering.[6] Thus, Laiti and every other person who purchased or acquired securities pursuant to the February 2008 Offering knew that their claims were being pursued by a lead plaintiff who had also purchased February 2008 Offering securities.[7] Defendants, in seriatim motions for dismissal, never suggested otherwise. In accordance with the policies underlying the PSLRA, the lead plaintiffs and lead counsel prosecuted this action ***on behalf of Laiti and the proposed class of February 2008 Offering purchasers***.

### 1.    Laiti Did Not "Abandon" Her Claims

Perhaps aware of this important fact, defendants assert Laiti's failure to take an "active role" in this litigation somehow proves she "abandoned" her claims and thus cannot now serve as a class

---

[6]    Dkt. No. 34 (1/25/2010 CAC, ¶16 (alleging Belmont acquired the 7.60% securities pursuant or traceable to the false and misleading offering materials)); Dkt. No. 65 (9/19/2011 2CAC, ¶16 (alleging same)); Dkt. No. 98 (10/15/2015 TCAC, ¶28 (alleging same)).

[7]    Contrast this case with *IndyMac*, wherein it was clear to the Police & Fire Retirement System of the City of Detroit ("Detroit PFRS") from the face of the consolidated complaint that the sole lead plaintiff named in the consolidated complaint (*i.e.*, the two Wyoming pension funds) had ***not*** purchased the INDX 2007-ARS Securities, the only security that Detroit PFRS ***had*** purchased. *See infra* §III.A.3.; *IndyMac*, 721 F.3d at 102-03.

representative for the February 2008 Offering.[8]  Memo. at 2-3 (complaining "Laiti did not appear or seek to participate in any of" the motion practice or proceedings held after the actions were consolidated, lead plaintiffs litigated the appellate proceedings without Laiti's assistance, and Laiti was not "mentioned in," *inter alia*, the writ of certiorari with the U.S. Supreme Court or either side's Rule 26 initial disclosures).

To charge that Laiti "abandoned" the claims she asserted in 2009, by respecting the Court's orders requiring lead plaintiffs to litigate the action on the class's behalf, entirely ignores the policy behind the PSLRA.  "[T]he main purpose of having a lead plaintiff [is] to empower one or several investors with a major stake in the litigation to exercise control over the litigation as a whole." *IndyMac*, 721 F.3d at 112.  Accordingly, courts have consistently held class members need not take the sort of duplicative actions defendants fault Laiti for not taking.  *See, e.g.*, *NYTDA, Inc. v. N.Y.C.*, No. 11-CV-1836 (NGG) (RER), 2014 WL 4274219, at *3-*5 (E.D.N.Y. Aug. 28, 2014) (under defendants' incorrect reasoning, "'class members would not be able to rely on the existence of the suit to protect their rights,' and would be compelled to intervene or take other action within the statute of limitations") (quoting *Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 350 (1983)); *Monroe Cty. Emps.' Ret. Sys. v. YPF Sociedad Anonima*, 980 F. Supp. 2d 487, 491 (S.D.N.Y. 2013)

---

[8]   Confusing a lead plaintiff under the PSLRA and a class representative under Rule 23, defendants incorrectly state Laiti is seeking to be added as a lead plaintiff.  Memo. at 4.  The amended motion for class certification seeks to add Laiti as a class representative, wholly in compliance with Rule 23. Courts in the Second Circuit have recognized a person may serve as a class representative even if he or she is not a named plaintiff.  *In re Facebook, Inc.*, 312 F.R.D. 332, 345 (S.D.N.Y. 2015) (Sweet, J.) (appointing as class representatives persons who were "not named in the Complaint," explaining "Rule 23 gives the Court the power to designate class representatives who are not lead plaintiffs"); *In re Initial Pub. Offering Sec. Litig.*, 214 F.R.D. 117, 123 (S.D.N.Y. 2002) ("'the Court believes on reflection that it probably has the power to designate a Class Representative under Rule 23 who is not a Lead Plaintiff, simply because there is nothing in the statute which prevents it'"); *In re Indep. Energy Holdings PLC, Sec. Litig.*, 210 F.R.D. 476, 485 (S.D.N.Y. 2002) ("in the ordinary course of litigation the class representative will not appear on the scene until long after the lead plaintiff").

1304554_1

("'If [Defendant's] argument were accepted, then unnamed class members would be encouraged to file their own lawsuits to ensure that their claims are not deemed untimely in the event that the named plaintiff elects to voluntarily dismiss the class's claims.'").

Even prior to the PSLRA, in the Second Circuit "absent putative class members are *expected and encouraged* to remain passive during the early stages of the class action and to 'rely on the named plaintiffs to press their claims.'" *Cullen v. Margiotta*, 811 F.2d 698, 719 (2d Cir. 1987) (quoting *Parker*, 462 U.S. at 352-53). "Not until a class is certified 'does a class member have any duty to take note of the suit or to exercise any responsibility with respect to it.'" *Id.* Laiti's February 2008 Offering claims have not been abandoned by any stretch of the definition, nor has her right to pursue her claim in this action been extinguished.

Focusing on dicta from the district court's decision in the *IndyMac* case, defendants fail to even *cite* the relevant legal standard courts apply in determining whether a claim has actually been "abandoned." Memo. at 18. In the Second Circuit, courts generally "'deem a claim abandoned when a plaintiff fails to respond to a defendant's arguments that the claim should be dismissed,'" *Hayes v. Cty. of Sullivan*, 853 F. Supp. 2d 400, 418 (S.D.N.Y. 2012), or "'when a party moves for summary judgment on one ground and the party opposing summary judgment fails to address the argument in any way,'" *Drapkin v. Mafco Consol. Grp., Inc.*, 818 F. Supp. 2d 678, 688 n.4 (S.D.N.Y. 2011). In this case, plaintiffs have consistently and vehemently defended against defendants' attempts to dismiss the February 2008 Offering under Fed. R. Civ. P. 12(b)(6). Laiti's claim has not been abandoned. *See also infra* at 15-16.

### 2. *ANZ* Does Not Bar Laiti's Claim

On February 10, 2017, this Court stayed further proceedings with respect to the February 2008 Offering until the Supreme Court entered a decision in *ANZ.* Dkt. No. 141 ("2008: Stayed until

SCOTUS rules in *In Re Lehman Bros. Sec's ERISA Litigation*.").  Contrary to defendants' assertions that *ANZ* warrants dismissal of the February 2008 Offering, the opinion did not address the present issue and presents absolutely no basis for dismissing the February 2008 Offering.

ANZ answered the question "whether §13 permits the filing of an individual complaint more than three years after the relevant securities offering, when a class-action complaint was timely filed, and the plaintiff filing the individual complaint would have been a member of the class ***but for opting out of it***."  137 S. Ct. at 2048.  In *ANZ*, around September 2008, "a putative class action concerning Lehman securities was filed against respondents in the United States District Court for the Southern District of New York . . . rais[ing] claims under §11, alleging that the registration statements for certain of Lehman's 2007 and 2008 securities offerings included material misstatements or omissions." *Id.*  CalPERS, the petitioner in *ANZ* and a member of the putative class action filed in the Southern District of New York, had not filed a complaint in the Southern District of New York, and was not a named plaintiff in the action filed in the Southern District of New York. *Id.*  The class action was consolidated with other securities suits against Lehman, and in February 2011, shortly before a settlement in the class action had been reached, CalPERS opted out and ***only then*** filed on its own behalf a separate complaint in another district (United States District Court for the Northern District of California). *Id.*[9]

Relying on *Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538 (1974), CalPERS maintained "its individual suit was timely because that 3-year [repose] period was tolled during the pendency of the class action filing." *ANZ*, 137 S. Ct. at 2048.  The district court and the Court of Appeals for the Second Circuit held CalPERS' opt-out lawsuit filed in the Northern District of California was not

---

[9]   CalPERS' opt-out complaint "was filed more than three years after the relevant transactions occurred, . . . alleged identical securities law violations as the class-action complaint, but the claims were on petitioner's own behalf."  *ANZ*, 137 S. Ct. at 2048.

timely filed within the three-year statute of repose.  *Id.*   The Supreme Court in *ANZ* affirmed, ruling the three-year statute in §13 is one of repose, which in "general" is not subject to equitable tolling. *Id*. at 2050.

ANZ thus clearly did not address the question at issue here.[10]   Indeed, *ANZ* did not even mention *IndyMac*.  Rather, *ANZ* merely purported to "affirm[]" the rule that "has been the law [in the Second Circuit] since 2013" (137 S. Ct. at 2054):  the three-year limit in Securities Act §13 (15 U.S.C. §77m) is a "statute of repose" which is "in general not subject to tolling."  *Id.* at 2050.  Here, Laiti neither seeks to, nor needs to, invoke the doctrine of equitable tolling to satisfy the statute of repose.

Laiti took the step of initiating one of the original suits in this District alleging claims arising from the February 2008 Offering.  *P. Stolz Family P'ship L.P. v. Daum*, 355 F.3d 92, 102 (2d Cir. 2004) ("a statute of repose acts to define temporally the right to ***initiate*** suit against a defendant after a legislatively determined time period").  In fact, the Supreme Court in *ANZ* acknowledged it takes even ***less*** than filing a complaint within the repose period to protect a class member's right to assert that claim later.  137 S. Ct. at 2054 ("A simple motion to intervene or request to be included as a named plaintiff in the class action complaint may well suffice.").  Thus, *ANZ* only provides additional support for the proposition that Laiti has taken every action reasonably expected of a member of a putative class to preserve her claim, and should be afforded the opportunity to continue

---

[10]   Defendants contend that because plaintiffs in an entirely unrelated action in another circuit ***voluntarily*** dismissed ***their*** claims following the *ANZ* decision, so should plaintiffs.  Memo. at 8 n.3. *N. Sound Capital LLC v. Merck & Co.*, No. 16-1367, 2017 WL 3278886, at *4 (3d Cir. Aug. 2, 2017).  Unlike here, the facts in *N. Sound* virtually mirrored those in *ANZ*: two members of a Securities Exchange Act of 1934 class action opted out of the class action and, after the repose period had expired, initiated four ***new*** district court actions against the same defendants with "essentially identical" allegations.  *Id.* at *2.  The parties in the opt-out actions ***agreed*** *ANZ* addressed "the precise question at issue" in those actions and the actions were dismissed.  *Id.* at *4.

to assert her claim by serving as a class representative for the February 2008 Offering.  *See In re Cobalt Int'l Energy, Inc. Sec. Litig.*, No. H-14-3428, 2017 U.S. Dist. LEXIS 134495, at *11 (S.D. Tex. Aug. 23, 2017) ("There is nothing in the Supreme Court's decision in *CalPERS* that suggests that the putative class action, filed within the three-year statute of repose, does not protect putative class members who remain in the class and do not opt out to pursue individual lawsuits.").

### 3.   *IndyMac* Does Not Bar Laiti's Claim

Finding no help from *ANZ*, defendants invite this Court to expand the scope of the Second Circuit's decision in *IndyMac*, to bar Laiti's timely filed and continuously litigated February 2008 Offering claim.  But *IndyMac* is distinguishable in important ways and does not support dismissal here.

In *IndyMac*, the district court consolidated two related securities class actions: one brought by Detroit PFRS, the other by two Wyoming entities, following a series of all 106 securities offerings.  *See IndyMac*, 721 F.3d at 102.  Detroit PFRS had purchased certificates in, and asserted a claim for, *just one* offering, INDX 2007-AR5.  **The Wyoming entities did not purchase Detroit PFRS's INDX 2007-AR5**.  The Wyoming entities were appointed lead plaintiffs, and, as the sole named plaintiffs in the consolidated complaint, attempted to assert claims for all 106 offerings, including many in which the Wyoming entities **did not participate**, the latter category including Detroit PFRS's INDX 2007-AR5.  *See id.* at 102-03.[11]  Thus, while it was evident to Detroit PFRS from the court record that the Wyoming entities lacked standing for the *one* offering in which Detroit PFRS **had** participated, the district court found "Detroit wittingly or otherwise took the

---

[11]   According to *In re IndyMac Mortg.-Backed Sec. Litig.*, 793 F. Supp. 2d 637 (S.D.N.Y. 2011), by October 2009, courts "had held that class plaintiffs lack standing to bring claims relating to securities that they themselves had not purchased."  *Id.* at 645.

chance that the class action would go forward without including claims with respect to those securities." *IndyMac Mortg.-Backed Sec.*, 793 F. Supp. 2d at 644.

Upon motion by defendants, on June 21, 2010, the district court "dismissed for lack of standing all claims in the Amended Complaint arising from the offerings of securities not purchased by the Wyoming entities." *IndyMac*, 721 F.3d at 103. The dismissed offerings included INDX 2007-AR5. In a subsequent decision, the district court denied motions to intervene to assert claims dismissed due to the Wyoming entities' lack of standing following from the Wyoming entities' failure to purchase in the same offerings as those proposed intervenors. *Id.* Three of the proposed intervenors – all of which were purchasers in offerings in which Wyoming did not participate, ***but none of which had filed their own initial complaints*** – appealed. *Id.* at 104.[12]

The Second Circuit held that, as to those entities that had appealed, the statue of repose had elapsed and they could not rely upon the equitable tolling doctrine of *American Pipe*. 414 U.S. 538. Moreover, the relation-back "doctrine does not permit members of a putative class, who are not named parties, to intervene in the class action as named parties in order to revive claims that were dismissed from the class complaint for want of jurisdiction." *IndyMac*, 721 F.3d at 110. *IndyMac*'s holding followed "the 'long recognized' rule that 'if jurisdiction is lacking at the commencement of a suit, it cannot be aided by the intervention of a plaintiff with a sufficient claim.'" *Id.* at 111. Because "[t]he District Court lacked jurisdiction over certain claims of the [Wyoming entities] – the very claims now asserted by the proposed intervenors . . . that defect may not be cured by later intervention." *Id.*

---

[12]  The three appellants were Los Angeles County Employees Retirement Association, the Public Employees' Retirement System of Mississippi, the Iowa Public Employees' Retirement System, and the General Retirement System of the City of Detroit ("Detroit Retirement"). ***Detroit PFRS is a separate legal entity from Detroit Retirement, and was not part of the appeal***. *IndyMac*, 721 F.3d at 103 n.8.

- 14 -

Laiti, of course, does not suffer from the same defect as the proposed intervenor-appellants in *IndyMac*. So defendants base their *IndyMac* argument on the ***district court's*** statement that Detroit PFRS had "abandoned" its claims. Memo. at 10, 18. But Detroit PFRS did not seek appeal of the lower court's ruling, and the Second Circuit's *IndyMac* opinion did not address the district court's determination that the INDX 2007-AR5 offering claim had been "abandoned." Nevertheless, defendants latch onto this language and argue Laiti too "abandoned" her claims by failing to take an active role in the litigation, and the class must now face the consequences for her failure to do so. But as explained herein (*see also supra* §III.A.1.). Laiti has taken every action reasonably expected of a consolidated plaintiff to preserve her claim while lead plaintiffs prosecuted the class's claims, including those from the February 2008 Offering. She never "wittingly or otherwise" accepted her claims would not be litigated. *IndyMac Mortg.-Backed Sec.*, 793 F. Supp. 2d at 644.

Indeed, the district court's finding that Detroit PFRS "abandoned" its claim turned on the fact that as a sophisticated intuitional investor, it knew from the filing of the consolidated complaint by the lead plaintiff Wyoming funds that the offering Detroit PFRS sued upon was ***not*** an offering that Wyoming had standing to bring. Detroit PFRS necessarily was aware that its claim was no longer being pursued in the consolidated complaint and accepted this fact. *IndyMac Mortg.-Backed Sec.*, 793 F. Supp. 2d at 644; *see also IndyMac*, 721 F.3d at 112 (proposed intervenors could have protected their interests through "minimal diligence").

But Laiti is not Detroit PFRS, and Laiti's claim was not "abandoned." The claim which Laiti seeks to pursue is a claim that ***was*** brought by a lead plaintiff with standing in the consolidated complaint, and ***was*** included in every complaint thereafter. During the entire time, Belmont was the court-appointed lead plaintiff ***and had standing to pursue the claim***. There is nothing in the record that suggested to Laiti or her counsel that Belmont somehow lost standing prior to her motion to be

- 15 -

appointed class representative in this case.  Indeed, defendants themselves never moved to dismiss the claim on that basis.[13]

Up until Belmont's voluntary dismissal of its claim, no class member could have known there was an issue as to that entity's ability or willingness to pursue the claim.  And when Belmont did dismiss its claim, it did so only after Laiti (with the Court's permission) sought to formally pursue the claim as a class representative.[14]

Defendants attempt to make this case look more like *IndyMac Mortg.-Backed Sec.* by arguing – even though there is no evidence in the record and defendants never filed a motion – that Belmont lost standing at some point in 2009 by transferring the February 2008 Offering securities at "original cost."  Even if that is true, defendants do not argue – again perhaps because there is no evidence to support such a point – that Laiti or her counsel were aware of that fact.  Because the issue of whether Laiti "abandoned" her claim under the *IndyMac* analysis turns on whether she was aware that her claim was not being pursued by the lead plaintiffs, and all the evidence in the case and on the docket suggests that she rightfully assumed just the opposite, defendants' argument lacks merit and should be rejected.

### 4.    *ING* Does Not Bar Laiti's Claim

Neither does the matter of *Freidus v. ING Group N.V.* compel a ruling against plaintiffs here. *See Freidus v. ING Group N.V.*, No. 09 Civ. 1049(LAK), 2012 WL 4857543 (S.D.N.Y. Oct. 11, 2012), *aff'd on other grounds*, 543 F. App'x 93 (2d Cir. 2013), *vacated in part and aff'd in part*, 601

---

[13]    Plaintiffs do not concede Belmont lost standing in this action at any time.

[14]    Laiti is an individual investor, not a "sophisticated" entity like the intervenors in *IndyMac*.  *See* 721 F.3d at 112 ("'the [PSLRA] was . . . certainly not intended to excuse sophisticated parties [such as proposed intervenors] from being diligent and keeping abreast of developments in the case, especially when the class is not certified'").

F. App'x 59 (2d Cir. 2015).  In *ING*, the district court denied the lead plaintiff's motion for class certification and dismissed the action, finding the lead plaintiff lacked standing to bring its claim on the securities at issue.  2012 WL 2878637, at *2 (denying certification).  Thereafter, third party (Joseph Silliman) moved to intervene after the repose period had expired.  *ING*, 2012 WL 4857543, at *3.  The district court denied Silliman's motion to intervene, stating "the claim of any alleged class member ***who has not yet appeared*** is time barred."  *Id*.  Importantly, ***unlike Laiti***, Silliman had never filed his own complaint asserting Securities Act claims, let alone "appeared" in the case.[15] Laiti, on the other hand, appeared in this action in 2009 by ***filing her own complaint***, which was consolidated and litigated.

Silliman appealed the district court's ruling, arguing before the Second Circuit *American Pipe* tolled the statute of repose, rendering his attempt to assert a claim for the first time in the action – after the repose period had expired – timely.  *See Silliman v. ING Groep*, No. 12-3748, Reply Brief at 1 (2d Cir. Mar. 7, 2013) ("this Court should hold that *American Pipe* tolling applies to the Securities Act's statute of repose") (Dkt. No. 80).  The Second Circuit, citing its decision in *IndyMac*, 721 F.3d at 110, rejected Silliman's argument that *American Pipe* tolled the statute of repose and, echoing *IndyMac*, rejected the argument that Rule 15(c)'s relation-back doctrine could be applied to "'revive claims that were dismissed from the class complaint for want of jurisdiction.'" *ING*, 543 F. App'x at 93.

Contrary to defendants' implication (*see* Memo. at 13-14), the Second Circuit expressly refused to consider Silliman's argument – ***which Silliman omitted entirely from his briefing before***

---

[15]   Silliman and two other purchasers moved ***as a group*** to be appointed lead plaintiffs, but never filed their own complaints pursuing their own claims.  *Freidus v. ING Groep N.V.*, No. 1:09-cv-01049-LAK, Notice of Motion of the Silliman Group for Consolidations of Actions, Appointment as Lead Plaintiff, and Approval of Selection of Counsel (S.D.N.Y. Apr. 6, 2009) (Dkt. No. 10).

*the district court and his initial appellate briefing* – that Silliman could demonstrate "class standing" under the Second Circuit's ruling in *NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, 693 F.3d 145 (2d Cir. 2012). *ING*, 543 F. App'x at 93 n.1 ("In supplemental briefing, Silliman raises the entirely new argument that under our decision in *NECA* . . . , claims by plaintiffs Marshall Freidus and Ray Ragan conferred class standing, allowing Silliman now to succeed them as putative class representatives even if he would otherwise be barred by the statute of repose from pursuing his own claim independently. *We do not entertain this argument* because Silliman could have raised it in the district court, or certainly in his initial brief on appeal and failed to do so.").[16]

Applying the Second Circuit's standard in *NECA*, courts in this District have found class standing for §11 claims – even where the proposed representative did not purchase in the impacted offering – where, like here, the same wrongful course of conduct was alleged to have impacted and injured the class, and the securities were issued by the same company. *See, e.g.*, *In re Lehman Bros. Sec. & ERISA Litig.*, No. 09 MD 2017 (LAK), 2013 U.S. Dist. LEXIS 13999, at *20 (S.D.N.Y. Jan. 23, 2013) ("[g]iven the substantial similarity in alleged misrepresentations across the class period, the current representatives' claims are sufficiently similar to permit them to represent adequately the investors" in the two note offerings in which those representatives did not participate); *Facebook*, 312 F.R.D. at 343 (certifying class alleging §11 violations, noting that "[d]efendants' arguments

---

[16]   *NECA* set forth "a broad standard for class standing," holding a purchaser in one offering can have "class standing" to represent purchasers of securities in another offering, *even if that plaintiff did not purchase the securities in that other offering*, as long as "(1) . . . he 'personally has suffered some actual . . . injury as a result of the putatively illegal conduct of the defendant,' and (2) that such conduct implicates 'the same set of concerns' as the conduct alleged to have caused injury to other members of the putative class by the same defendants." 693 F.3d at 162; *id*. at 164 (holding plaintiff-investment fund had "class standing to assert the claims of purchasers" of securities issued in offerings in which the plaintiff had not actually participated, because the plaintiff's "claims raise a sufficiently similar set of concerns to permit it to purport to represent" purchasers from the other offerings).

about lack of class standing are unavailing for the same reason: plaintiffs here all allege they suffered the same injury as a result of the same conduct, and that conduct implicates the same set of concerns as the allegedly illegal conduct that caused injury"); *In re Winstar Commc'ns Sec. Litig.*, 290 F.R.D. 437, 452 (S.D.N.Y. 2013) (plaintiff shareholders had class standing to assert claims on behalf of bondholders because "[w]hether Defendant's participation in issuing this alleged misstatement injured purchasers of Winstar securities is a question that implicates the same set of concerns for all investors in Winstar's securities, including stocks and bonds, because of their common concern for the company's financial health").

Under *NECA*, Kaess and Farruggio (purchasers in the November 2007 Offering) have class standing to represent purchasers in the February 2008 Offering because Kaess and Farruggio "suffered some actual . . . injury as a result of the putatively illegal conduct of the defendant" and the conduct implicated "'the same set of concerns as the conduct alleged to have caused injury to'" purchasers in the February 2008 Offering.  693 F.3d at 162. [17]  Indeed, the offering materials for these two offerings incorporated by reference virtually the same misleading SEC filings (*see* TCAC (Dkt. No. 98), ¶2) and failed to contain disclosures required under Items 303 and 503 of Regulation S-K.  *See, e.g.*, Dkt. No. 114 at 77.  Accordingly, even if Laiti was not permitted to serve as a class representative for the February 2008 offering, Kaess and Farruggio have class standing under *NECA* to represent purchasers in both offerings.[18]

---

[17]   Importantly, ***the Second Circuit in IndyMac explicitly recognized the class standing doctrine set forth in NECA*** and held its "decision today implicates only those claims and defendants as to which Wyoming would lack standing under [*NECA*]."  *IndyMac*, 721 F.3d at 111 n.19.

[18]   For the same reasons, *Police & Fire Ret. Sys. of City of Detroit v. Goldman, Sachs & Co.*, No. 10 Civ. 4429 (MGC), 2014 WL 1257782, at *9-*10 (S.D.N.Y. Mar. 27, 2014), is also inapposite.  In *Goldman*, the court denied the addition of new claims that arose from two additional securities offerings that (unlike the February 2008 Offering here) had not already been asserted by the plaintiff within the repose period.  *Id*. at *9.

- 19 -

**B.    Laiti Filed a Complaint Alleging February 2008 Offering Claims Within the Statute of Limitations**

Defendants argue in the alternative (and for the first time ever in this eight year-old case) that the one-year statute of limitations has run on Laiti's claims.  The statute of limitations is an affirmative defense, which defendants must plead and prove.  *N.Y. State Elec. & Gas Corp. v. FirstEnergy Corp.*, 766 F.3d 212, 230 (2d Cir. 2014) ("Because a statute of limitations is an affirmative defense, FirstEnergy bears the burden of proof to show it bars the claims.").  On October 18, 2011, the Deutsche Bank defendants filed an Answer to the 2CAC.  *See* Dkt. No. 67.  They asserted 20 Affirmative Defenses, but did not assert the statute of limitations as one of them.  *Id.* at 35-39.  On October 24, 2016, the Deutsche Bank defendants filed an Answer to the TCAC.  *See* Dkt. No. 124.  This time they pleaded 24 different Affirmative Defenses, but again did not include the statute of limitations as one of them.[19]  *Id.* at 75-81.  This defense has been waived.  *Litton Indus., Inc. v. Lehman Bros. Kuhn Loeb, Inc.*, 967 F.2d 742, 751-52 (2d Cir. 1992) ("A claim that a statute of limitations bars a suit is an affirmative defense, and, as such it is waived if not raised in the answer to the complaint.").

But even if it is not waived, defendants' argument fails for the same reasons as their statute of repose arguments, plus one more.  Defendants concede, as they must, that Laiti filed her original complaint within the statute of limitations period.[20]  As set forth above, her claims regarding the

---

[19]    The Deutsche Bank defendants stated in their Answer to the TCAC that they lacked "sufficient facts" to assert the affirmative defenses of statute of limitations or repose, but would "amend this Answer" in the event either defense presented itself.  Dkt. No. 124 at 80.  Defendants have never sought to amend their Answer to assert either of these defenses.

[20]    Defendants assert that because the Court found that plaintiffs did not adequately allege the 2007 20-F filed on March 26, 2008 did not comply with Items 303 and 503, the omissions in the February 2008 Offering were disclosed.  Plaintiffs disagree with defendants' characterization because the new disclosures did not inform investors of the complete truth.  Nevertheless, since plaintiffs alleged that discovery of these omissions did not occur until much later, this issue cannot be determined as a

- 20 -

February 2008 Offering were timely and have been continuously and vigorously litigated as a consolidated putative class action – even through appeals – ever since the consolidation order.

           1.        ***American Pipe* Has Tolled the Statute of Limitations Applicable to All Putative Class Members Since the First-Filed Class Action Complaint**

Like their statute of repose argument, defendants wrongly assert that Laiti "abandoned" her claims, and is thus trying to newly insert herself into this action. Memo. at 15-18. Even if defendants' contention that Laiti is not a plaintiff in the consolidated actions, one of which bears her name, is true, the statute of limitations has been tolled under *American Pipe*.

"'[T]he commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action.'" *Parker*, 462 U.S. at 353-54 (quoting *Am. Pipe*, 414 U.S. at 554). The tolling period doesn't expire until "'a definitive determination of the inappropriateness of class certification'" is made. *Betances v. Fischer*, 144 F. Supp. 3d 441, 457-58 (S.D.N.Y. 2015).

Under the plain language of *American Pipe* and *Parker*, the absence of any class certification decision in this action demonstrates the pendency of the class action and tolling still remains. The first-filed case, with which Laiti's action was consolidated, was filed on April 17, 2009. Until a class certification decision is rendered, *American Pipe* tolling continues.

           2.        **No Exception to *American Pipe* Applies**

Even though the Court has not ruled on class certification, defendants contend the dismissal of the action on August 10, 2012, Dkt. No. 70, marked the expiration of *American Pipe* tolling regardless of the immediate appeal (and subsequent vacatur of the Second Circuit's ruling).

---

matter of law. TCAC (Dkt. No. 98), ¶¶182-190. The Court need not decide this issue to resolve the current motion.

Defendants cite no controlling authority for this proposition and simply attempt to distort the long-standing holding of *American Pipe*.

*American Pipe* tolling is appropriate to avoid "a needless multiplicity of actions – precisely the situation that Federal Rule of Civil Procedure 23 and the tolling rule of *American Pipe* were designed to avoid." *Parker*, 462 U.S. at 351.  To balance out fairness to defendants, tolling is appropriate as long as the defendants have notice of "the substantive claims being brought against them, but also of the number of and generic identities of the potential plaintiffs who may participate in the judgment." *Am. Pipe*, 414 U.S. at 554-55.  Thus application of *American Pipe* "turns on the reasonableness of absent plaintiffs' reliance on the class action to advance their claims.  As a result, whether tolling continues . . . depends on the facts and circumstances of each case and is not amenable to a bright-line rule." *In re Initial Pub. Offering Sec. Litig.*, 617 F. Supp. 2d 195, 200 (S.D.N.Y. 2007).

Following these principles, courts have denied application of *American Pipe* in limited factual situations, none of which are present here.  In addition to the initial decision denying class certification, tolling may be found to end if there is a "stacking" of a series of class actions, in particular, to reargue class certification after it is denied, or if it is being used as a connivance to indefinitely extend the statute of limitations period. *See Korwek v. Hunt*, 827 F.2d 874, 879 (2d Cir. 1987) ("The Supreme Court . . . certainly did not intend to afford plaintiffs the opportunity to argue and reargue the question of class certification by filing new but repetitive complaints.").  These exceptions are inapplicable here because there has been no class certification decision, plaintiffs have not added new claims or defendants, and there has not been a series of unconsolidated complaints filed for the purpose of indefinitely extending the statute of limitations.

And while some courts have held *American Pipe* does not toll the statute of limitations during the appeal ***of a class certification decision***, even that holding is not absolute.  For example, "when class certification is denied solely on the ground that the representative is inadequate, such denial does not – and should not – trigger recommencement of the statute of limitations period."  *In re Nat'l Austl. Bank Sec. Litig.*, No. 03 Civ. 6537 (BSJ), 2006 U.S. Dist. LEXIS 94163, at *15-*17 (S.D.N.Y. Nov. 8, 2006).  Moreover, after the 1998 Federal Rules of Civil Procedure amendments adding the Rule 23(f) appeal, the traditional concern of a protracted resolution were alleviated because an appeal "will not cause defendants undue hardship . . . [and] makes it reasonable for putative class members to continue to rely on the class action as a means of redressing their claims."  *In re Vivendi Universal, S.A. Sec. Litig.*, 281 F.R.D. 165, 169 (S.D.N.Y. 2012).  For similar reasons, courts reject the blanket rule that "*American Pipe* tolling ends after a putative class action has been dismissed for any reason."  *Betances*, 144 F. Supp. 3d at 457.

The "minimal diligence" suggested by defendants for Laiti to otherwise preserve her claims is contrary to the spirit of *American Pipe*.  It would be a waste of court resources for Laiti to refile an identical lawsuit with the exact same cause of action as the lawsuit she already filed in order to pursue a separate appeal of the dismissal.  The absurdity of this process would be apparent when the second action would be consolidated with her previously filed action after the successful appeal.  The blatant duplication of actions flies in the face of *American Pipe*'s policy objectives.[21]  In the alternative, there was no need for Laiti to intervene to assure the class's rights were preserved in an appeal, because the lead plaintiffs immediately took the steps to appeal the entire case on behalf of the putative class.  There is nothing unreasonable about her conduct, and indeed, her conduct was

---

[21]   It also contradicts this Court's consolidation order, consolidating Laiti's claim "for all purposes, including pretrial proceedings, trial, ***and appeal***."  Dkt. No. 19 at 14.

reasonable because Rule 23 "permits and encourages class members to rely on the named plaintiffs to press their claims." *Parker*, 462 U.S. at 352-53.  Defendants have suffered no prejudice because they have been on continuous notice of the class allegations in this case, nor have they suffered the burdens of defending continually refiled actions.

While defendants cite a number of cases disallowing *American Pipe* tolling during appeals, only a couple of those cases analyze the tolling of a class action dismissed on its merits prior to a class certification order.  For the courts which have arguably reached the merits of whether or not an appeal of a dismissed putative class action tolls the statute of limitations, those cases do not mandate the same result here because they reference separately litigated lawsuits.[22]

In *LIBOR-Based Fin. Instruments Antitrust Litig.*, No. 11 MDL 2262 NRB, 2015 WL 6243526, at *151 (S.D.N.Y. Oct. 20, 2015), the court held, *sua sponte* and without briefing of the parties, that a prior class action which was dismissed ended the tolling as to the claims brought by plaintiffs in the prior case.  However, the same court in a footnote to the same paragraph of the opinion declined to follow the very same rule and continued tolling on a dismissed claim after plaintiffs "successfully moved for reconsideration." *Id.* at *151 n.172.  Accordingly, *LIBOR* actually

---

[22]   The remainder of defendants' citations stating that dismissal of a lawsuit with a putative class marks the end of *American Pipe* tolling are dicta irrelevant to the resolution of those cases, and do not alter or distinguish the long-standing holding of *American Pipe*.  *See, e.g.*, *Guy v. Lexington-Fayette Urban Cty. Gov't*, 488 F. App'x 9, 20 (6th Cir. 2012) (class action tolled claims asserted by individual plaintiffs); *Culver v. City of Milwaukee*, 277 F.3d 908, 915 (7th Cir. 2002) (decertification of a class ended tolling); *DPWN Holdings (USA), Inc. v. United Air Lines, Inc.*, 871 F. Supp. 2d 143, 150 (E.D.N.Y. 2012) (tolling of claims against one defendant runs until the "[defendant] was dropped from the . . . class action"); *Shak*, 156 F. Supp. 3d 462, 476 ("substantive differences" between the original class action and the present case precludes application of *American Pipe*).  In *Giovanniello v. ALM Media, LLC*, 726 F.3d 106 (2d Cir. 2013), the court held that "*American Pipe* tolling does not extend beyond the denial to class status." *Id*. at 116.  The court applied the "reasonable reliance" standard of *American Pipe* and held that "once class status has been disallowed, Rule 23 no longer operates to protect non-named plaintiffs." *Id.* at 118.  Class status has not been denied here and the lead plaintiffs have continuously acted to protect all of the putative class members.

supports plaintiffs' position here by holding that the successful challenge to a dismissal continues the tolling of the statute of limitations.

*Collins v. Vill. of Palatine*, 203 F. Supp. 3d 952 (N.D. Ill. 2016) (*see* Memo. at 17), is also inapposite. *Id*. at 957. In *Collins*, an out-of-circuit district court held that an appeal in a prior lawsuit did not toll the statute of limitations as it related to the present and ***separately filed lawsuit***. In addition to *Collins* not being binding on this Court, the limited exception to tolling relied upon in *Collins* – in which courts reject the application of *American Pipe* to refiled actions – is not present here, where the procedural history of this matter has been the single litigation of one group of consolidated class action cases.

## IV.    CONCLUSION

For the foregoing reasons, plaintiffs respectfully request this Court deny defendants' motion to dismiss in its entirety.

DATED:  September 14, 2017              Respectfully submitted,

ROBBINS GELLER RUDMAN
  & DOWD LLP
ANDREW J. BROWN
ERIC I. NIEHAUS
LUCAS F. OLTS
CHRISTOPHER D. STEWART
KEVIN S. SCIARANI


                                                           s/ ERIC I. NIEHAUS
                                                   ERIC I. NIEHAUS

- 25 -

655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
andrewb@rgrdlaw.com
ericn@rgrdlaw.com
lolts@rgrdlaw.com
cstewart@rgrdlaw.com
ksciarani@rgrdlaw.com

ROBBINS GELLER RUDMAN
   & DOWD LLP
SAMUEL H. RUDMAN
DAVID A. ROSENFELD
MARIO ALBA JR.
58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)
srudman@rgrdlaw.com
drosenfeld@rgrdlaw.com
malba@rgrdlaw.com

KAUFMAN, COREN & RESS, P.C.
DEBORAH R. GROSS
Two Commerce Square, Suite 3900
2001 Market Street
Philadelphia, PA 19103
Telephone:  215/735-8700
215/735-5170 (fax)
dgross@kcr-law.com

GLANCY PRONGAY & MURRAY LLP
BRIAN P. MURRAY
LEE ALBERT
122 East 42nd Street, Suite 2920
New York, NY  10168
Telephone:  212/682-5340
212/884-0988 (fax)
bmurray@glancylaw.com
lalbert@glancylaw.com

Co-Lead Counsel for Plaintiffs

- 26 -

KESSLER TOPAZ MELTZER & CHECK, LLP
ANDREW L. ZIVITZ
SHARAN NIRMUL
RICHARD A. RUSSO, JR.
MICHELLE M. NEWCOMER
JONATHAN NEUMANN
280 King of Prussia Road
Radnor, PA  19087
Telephone:  610/667-7706
610/667-7056 (fax)
azivitz@ktmc.com
snirmul@ktmc.com
rrusso@ktmc.com
mnewcomer@ktmc.com
jneumann@ktmc.com

Additional Counsel for Plaintiffs

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 14, 2017, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I caused to be mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on September 14, 2017.

s/ ERIC I. NIEHAUS
ERIC I. NIEHAUS

ROBBINS GELLER RUDMAN
   & DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA  92101-8498
Telephone:  619/231-1058
619/231-7423 (fax)

E-mail: ericn@rgrdlaw.com

1304554_1

## Mailing Information for a Case 1:09-cv-01714-DAB In Re Deutsche Bank AG Securities Litigation

### Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Mario Alba , Jr**
  malba@rgrdlaw.com,e_file_ny@rgrdlaw.com,e_file_sd@rgrdlaw.com,drosenfeld@rgrdlaw.com

- **Lee Albert**
  lalbert@glancylaw.com

- **Andrew J. Brown**
  andrewb@rgrdlaw.com,nhorstman@rgrdlaw.com,ldeem@rgrdlaw.com

- **Charles Alan Gilman**
  cgilman@cahill.com,mmcloughlin@cahill.com,nmarcantonio@cahill.com,managingattorney@cahill.com,MA@cahill.com

- **Deborah R Gross**
  DGross@kcr-law.com,JHannigan@kcr-law.com

- **Eva Hromadkova**
  evah@murrayfrank.com

- **David George Januszewski**
  managingattorney@cahill.com,MA@cahill.com,djanuszewski@cahill.com

- **Jay B. Kasner**
  jkasner@skadden.com

- **Matthew Montgomery**
  mattm@csgrr.com

- **Brian Philip Murray**
  bmurray@glancylaw.com

- **Scott D. Musoff**
  smusoff@skadden.com,aviva.nusbaum@skadden.com,emma.gardner@skadden.com

- **Eric I. Niehaus**
  ericn@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Sharan Nirmul**
  snirmul@ktmc.com,dpotts@ktmc.com,jenck@ktmc.com,ahankins@ktmc.com,mswift@ktmc.com

- **Lucas F. Olts**
  lolts@rgrdlaw.com,karenc@rgrdlaw.com,e_file_sd@rgrdlaw.com,susanw@rgrdlaw.com

- **Darren J. Robbins**
  e_file_sd@rgrdlaw.com

- **David Avi Rosenfeld**
  drosenfeld@rgrdlaw.com,e_file_ny@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Samuel Howard Rudman**
  srudman@rgrdlaw.com,e_file_ny@rgrdlaw.com,mblasy@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Kevin S. Sciarani**
  ksciarani@rgrdlaw.com,tdevries@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Christopher D. Stewart**
  cstewart@rgrdlaw.com,karenc@rgrdlaw.com,e_file_sd@rgrdlaw.com

**Manual Notice List**

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

**Harry            J. Weiss**
450 Fifth Street, N.W.
Mail Stop 4-2
Washington, DC 20549