**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

**IN RE DEUTSCHE BANK AG SECURITIES**
**LITIGATION**

Case No. 09 Civ. 1714 (DAB)

---

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
## MOTION TO DENY CLASS ACTION CERTIFICATION

SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP
    Jay B. Kasner
    Scott D. Musoff
    Emma S. Gardner
Four Times Square
New York, New York 10036
Tel: (212) 735-3000
Jay.kasner@skadden.com
Scott.musoff@skadden.com
Emma.gardner@skadden.com

*Attorneys for the Underwriter*
*Defendants*

CAHILL GORDON & REINDEL LLP
    Charles A. Gilman
    Susan Buckley
    David G. Januszewski
    Brent Andrus
    Samuel G. Mann
80 Pine Street
New York, New York 10005
Tel:  (212) 701-3000
cgilman@cahill.com
sbuckley@cahill.com
djanuszewski@cahill.com
bandrus@cahill.com
smann@cahill.com
*Attorneys for the Deutsche Bank Defendants*
*and the Individual Defendants*

February 21, 2018

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................................................................................... ii

PROCEDURAL HISTORY ........................................................................................ 1

THE RELEVANT FACTS .......................................................................................... 2

ARGUMENT ............................................................................................................. 8

I.      THE LEGAL STANDARD GOVERNING CLASS ACTION CERTIFICATION .......... 9

II.     KAESS AND FARRUGGIO ARE NOT PROPER CLASS REPRESENTATIVES ...... 11

     A.     Plaintiffs' Willful Spoliation of Evidence and Flagrant Violations of Their
Discovery Obligations Render Them Unfit to Represent a Class........................ 12

     B.     The Substantial Profits Realized by Plaintiff Defeats Typicality and Adequacy . 13

     C.     Plaintiffs Have Not Demonstrated They Purchased in a U.S. Market................. 16

     D.     Plaintiffs' Prosecution of This Action to Recover for Emotional Distress Is
Further Grounds for Denial of Class Certification ................................................ 18

     E.     Plaintiffs' Counsel Is Inadequate to Represent a Class in This Action ............... 19

III.    KAESS AND FARRUGGIO ARE NOT ENTITLED TO INVOKE "CLASS
STANDING" AND ALL CLAIMS AS TO THE FEBRUARY 2008 OFFERING
SHOULD BE DISMISSED IN THEIR ENTIRETY....................................................... 21

CONCLUSION.......................................................................................................... 24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Akaosugi* v. *Benihana National Corp.*,
  282 F.R.D. 241 (N.D. Cal. 2012) ........................................................................13n

*Amchem Prods., Inc.* v. *Windsor*,
  521 U.S. 591 (1997) ............................................................................ 10-11

*In re American Int'l Grp., Inc. Sec. Litig.*,
  265 F.R.D. 157 (S.D.N.Y. 2010) .....................................................13n

*Blatch* v. *Franco*,
  2002 WL 342453 (S.D.N.Y. Mar. 5, 2002) ...................................12n

*Brown* v. *Electrolux Home Products, Inc.*,
  817 F.3d 1225 (11th Cir. 2016) ......................................................10

*Buonasera* v. *Honest Co., Inc.*,
  208 F. Supp. 3d 555 (S.D.N.Y. 2016).............................................22n

*Carlisle Ventures, Inc.* v. *Banco Espanol de Credito, S.A.*,
  176 F.3d 601 (2d Cir. 1999).............................................................15n

*Centaur Classic Convertible Arbitrage Fund Ltd.* v. *Countrywide Financial Corp.*,
  793 F. Supp. 2d 1138 (C.D. Cal. 2011) ..........................................15n

*In re Cigna Corp. Sec. Litig.*,
  459 F. Supp. 2d 338 (E.D. Pa. 2006) ..............................................14n

*City of Pontiac Policeman's & Firemen's Ret. Sys.* v. *UBS AG*,
  752 F.3d 173 (2d Cir. 2014)..............................................................17

*Comcast Corp.* v. *Behrend*,
  569 U.S. 27 (2013)............................................................................ 9-11

*Commercial Union Assur. Co., plc* v. *Milken*,
  17 F.3d 608 (2d Cir. 1994)........................................................7n, 15n

*In re Commodity Exch., Inc.*,
  213 F. Supp. 3d 631 (S.D.N.Y. 2016)..............................................23n

*Cook Cnty. College Teachers Union* v. *Byrd*,
  456 F.2d 882 (7th Cir. 1972) .............................................................9n

*Darvin* v. *Int'l Harvester Co.*,
    610 F. Supp. 255 (S.D.N.Y. 1985) .................................................................12n

*In re Deutsche Bank AG Sec. Litig.*,
    2009 WL 4277202 (S.D.N.Y. Nov. 23, 2009)......................................................2n

*In re Deutsche Bank AG Sec. Litig.*,
    2011 WL 3664407 (S.D.N.Y. Aug. 19, 2011).........................................................1

*In re Deutsche Bank AG Sec. Litig.*,
    2012 WL 32997730 (S.D.N.Y. Aug. 10, 2012)......................................................1

*In re Deutsche Bank AG Sec. Litig.*,
    2016 WL 4083429 (S.D.N.Y. July 25, 2016) ..................................................1, 1n

*DiMuro* v. *Clinique Labs., LLC*,
    572 F. App'x 27 (2d Cir. 2014) ......................................................................23

*Dochak* v. *Polskie Linie Lotnicze LOT S.A.*,
    2017 WL 2362570 (N.D. Ill. May 30, 2017) ....................................................10n

*Falcon* v. *Philips Elecs. N. Am. Corp.*,
    304 F. App'x 896 (2d Cir. 2008) .....................................................................12

*Fedotov* v. *Peter T. Roach & Assocs.*,
    354 F. Supp. 2d 471 (S.D.N.Y. 2005).................................................................9n

*Freidus* v. *ING Groep N.V.*,
    2012 WL 2878637 (S.D.N.Y. July 10, 2012) ...................................................20n

*Freidus* v. *ING Groep N.V.*,
    2012 WL 4857543 (S.D.N.Y. Oct. 11, 2012) ...................................................20n

*Friedman-Katz* v. *Lindt & Sprungli (USA), Inc.*,
    270 F.R.D. 150 (S.D.N.Y. 2010) .....................................................................19

*Garcia* v. *City of New York*,
    2017 WL 1169640 (S.D.N.Y. Mar. 28, 2017) ...................................................9n

*Gary Plastic Packaging Corp.* v. *Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
    903 F.2d 176 (2d Cir. 1990)............................................................................11

*Gary Plastic Packaging Corp.* v. *Merrill Lynch, Pierce, Fenner and Smith, Inc.*,
    119 F.R.D. 344 (S.D.N.Y. 1988).....................................................................16n

*General Tel. Co. of the Southwest* v. *Falcon*,
    457 U.S. 147 (1982)..........................................................................................9

*Globus* v. *Law Research Service, Inc.*,
    418 F.2d 1276 (2d Cir. 1969)............................................................................18n

*Gordon* v. *Sonar Capital Mgmt., LLC*,
    92 F. Supp. 3d 193 (S.D.N.Y. 2015)...........................................................11, 16

*Grousman v. Motorola, Inc.*,
    2011 WL 5554030 (N.D. Ill. Nov. 15, 2011) .....................................................14n

*Halliburton Co.* v. *Erica P. John Fund, Inc.*,
    134 S. Ct. 2398 (2014)........................................................................................10

*IBEW Local 90 Pension Fund* v. *Deutsche Bank AG*,
    2013 WL 58115472 (S.D.N.Y. Oct. 29, 2013) ...................................................11

*In re IMAX Sec. Litig.*,
    2011 WL 1487090 (S.D.N.Y. Apr. 15, 2011) ....................................................19

*In re IMAX Sec. Litig.*,
    2012 WL 3133476 (S.D.N.Y. Aug. 1, 2012) ......................................................19

*In re Investors Funding Corp.*,
    523 F. Supp. 563 (S.D.N.Y. 1980) .....................................................................15

*Iron Workers Local No. 25 Pension Fund* v. *Credit-Based Asset Servicing & Securitization, LLC*,
    616 F. Supp. 2d 461 (S.D.N.Y. 2009)...............................................................19n

*Kaess* v. *Deutsche Bank AG*,
    572 F. App'x 58 (2d Cir. 2014) .............................................................................1

*Kline* v. *Wolf*,
    88 F.R.D. 696 (S.D.N.Y. 1981) .......................................................................12n

*Koppel* v. *4987 Corp.*,
    1999 WL 608783 (S.D.N.Y. Aug. 11, 1999).......................................................2n

*Koss* v. *Wackenhut Corp.*,
    2009 WL 928087 (S.D.N.Y. Mar. 30, 2009) ................................................12, 12n

*Kovaleff* v. *Piano*,
    142 F.R.D. 406 (S.D.N.Y. 1992) ......................................................................16n

*Kulig* v. *Midland Funding, LLC*,
    2014 WL 5017817 (S.D.N.Y. Sept. 26, 2014).....................................................19

*Lewis* v. *Casey*,
    518 U.S. 343 (1996)............................................................................................23

*Makor Issues & Rights, Ltd.* v. *Tellabs, Inc.*,
  256 F.R.D. 586 (N.D. Ill. 2009)........................................................................16

*Mooradian* v. *FCA US, LLC*,
  2017 WL 6379281 (N.D. Ohio Dec. 14, 2017) ...............................................13n

*Morrison* v. *National Australia Bank Ltd.*,
  547 F.3d 167 (2d Cir. 2008)...........................................................................17

*Morrison* v. *National Australia Bank Ltd.*,
  561 U.S. 247 (2010).........................................................................4n, 16, 21

*Morrow* v. *Ann, Inc.*,
  2017 WL 363001 (S.D.N.Y. Jan. 24, 2017) ..................................................22n

*NECA-IBEW Health & Welfare Fund* v. *Goldman Sachs & Co.*,
  693 F.3d 145 (2d Cir. 2012).............................................................21-23, 23n

*New Jersey Carpenters Health Fund* v. *Royal Bank of Scotland Group, PLC*,
  2015 WL 539446 (S.D.N.Y. Feb. 5, 2015)......................................................22

*Norman* v. *Arcs Equities Corp.*,
  72 F.R.D. 502 (S.D.N.Y. 1976) .....................................................................12

*In re NYSE Specialists Sec. Litig.*,
  240 F.R.D. 128 (S.D.N.Y. 2007) ..................................................................19n

*Oklahoma Police Pension & Ret. Sys.* v. *U.S. Bank Nat. Ass'n*,
  986 F. Supp. 2d 412 (S.D.N.Y. 2013)...........................................................23n

*In re Organogenesis Sec. Litig.*,
  241 F.R.D. 397 (D. Mass. 2007)....................................................................13

*Pagan* v. *Abbott Laboratories, Inc.*,
  287 F.R.D. 139 (E.D.N.Y. 2012) ...................................................................12

*In re Parmalat Sec. Litig.*,
  2007 WL 1815461 (S.D.N.Y. June 25, 2007) ..................................................7n

*In re Petrobras Securities*,
  862 F.3d 250 (2d Cir. 2017)........................................................................16-17

*Pilgrim* v. *Universal Health Card, LLC*,
  660 F.3d 943 (6th Cir. 2011) ..........................................................................9n

*In re Rail Freight Fuel Surcharge Antitrust Litig.*,
  287 F.R.D. 1 (D.D.C. 2012).........................................................................13n

v

*Randall* v. *Loftsgaarden*,
   478 U.S. 647 (1986)....................................................................................18n

*Reitan* v. *China Mobile Games & Entertainment Group, Ltd.*,
   68 F. Supp. 3d 390 (S.D.N.Y. 2014)........................................................19n

*In re REMEC Inc. Sec. Litig.*,
   702 F. Supp. 2d 1202 (S.D. Cal. 2010)....................................................14n

*In re Rent-Way Sec. Litig.*,
   218 F.R.D. 101 (W.D. Pa. 2003) ..............................................................14n

*Ret. Bd. of the Policemen's Annuity & Benefit Fund of the City of Chicago* v. *Bank of New York Mellon*,
   775 F.3d 154 (2d Cir. 2014)..............................................................2n, 23

*Richardson* v. *Bledsoe*,
   829 F.3d 273 (3d Cir. 2016).......................................................................9n

*Ross* v. *Warner*,
   1980 WL 1474 (S.D.N.Y. Dec. 11, 1980) .................................................15

*In re Royal Bank of Scotland Group PLC Sec. Litig.*,
   765 F. Supp. 2d 327 (S.D.N.Y. 2011)..................................................4n, 16

*Savino* v. *Computer Credit, Inc.*,
   173 F.R.D. 346 (E.D.N.Y. 1997) ...............................................................21

*Schulman* v. *Lumenis, Ltd.*,
   2003 WL 21415287 (S.D.N.Y. June 18, 2003) .........................................19

*Scotto* v. *Brady*,
   410 F. App'x 355 (2d Cir. 2010) .............................................................18n

*In re Smart Techs., Inc. S'holder Litig.*,
   295 F.R.D. 50 (S.D.N.Y. 2013) .................................................................17

*Spagnola* v. *Chubb Corp.*,
   264 F.R.D. 76 (S.D.N.Y. 2010) ..............................................................9n, 9

*Stadnick* v. *Vivint Solar, Inc.*,
   2015 WL 8492757 (S.D.N.Y. Dec. 10, 2015) ...........................................23

*In re Terayon Commn's Sys., Inc.*,
   2004 WL 413277 (N.D. Cal. Feb. 23, 2004) .............................................13

*In re U.S. Foodservice Inc. Pricing Litig.*,
   729 F.3d 108 (2d Cir. 2013)......................................................................10

*United States* v. *Zolin*,
   491 U.S. 554 (1989).................................................................4n

*Upjohn Company* v. *United States*,
   449 U.S. 383 (1981).................................................................4n

*Vinole* v. *Countrywide Home Loans, Inc.*,
   571 F.3d 935 (9th Cir. 2009).................................................9n

*In re Vivendi Universal, S.A. Sec. Litig.*,
   284 F.R.D. 144 (S.D.N.Y. 2012)........................................14n

*Wal-Mart Stores, Inc.* v. *Dukes*,
   564 U.S. 338 (2011)............................................................9-10

*Weiss* v. *Hayden Stone Inc.*,
   340 F. Supp. 1074 (E.D.N.Y. 1972)...................................18n

**Regulations**

17 C.F.R. § 229.303(a)(3)(ii)....................................................1

17 C.F.R. § 229.503(c)...............................................................1

**Rules**

Fed. R. Civ. P. 23..............................................................*passim*

Fed. R. Civ. P. 26..............................................................5, 7n

Fed. R. Civ. P. 36.......................................................7, 7n, 13

**Statutes**

§11, 15 U.S.C. § 77k...............................................................21n

§12(a)(2), 15 U.S.C. §77l(a)(2)..........................7n, 8n, 15n, 21n

**Treatises**

5-23 *Moore's Federal Practice 3d* § 23 (2017).........................8

7A Wright, Miller & Kane, *Fed. Prac. & Proc. Civ.* § 1785 n.3 (3d ed. 2017)............................8

*Federal Procedure, Lawyer's Edition* § 12:257 (2017)..................9

3 *Newberg on Class Actions*

    § 2.6 (5th ed. 2017) ..................................................................................22n

    § 7:1 (5th ed. 2017) ......................................................................................9

    § 7:22 (5th ed. 2017) ...............................................................................10n

Defendants move the Court for an order denying class action certification in this action.

## PROCEDURAL HISTORY

Plaintiffs sued under Sections 11, 12(a)(2) and 15 of the Securities Act of 1933 relating to six offerings between October 2006 and May 2008, alleging that Deutsche Bank (the "Bank") failed to disclose its true exposure to real estate-related assets (ECF 34).  The Court dismissed all claims.  *In re Deutsche Bank AG Sec. Litig.*, 2011 WL 3664407 (S.D.N.Y. Aug. 19, 2011) and 2012 WL 32997730 (S.D.N.Y. Aug. 10, 2012) (Batts, J.).  The Circuit unanimously affirmed the dismissal.  *Kaess* v. *Deutsche Bank AG*, 572 F. App'x 58, 59 (2d Cir. 2014).  Following remand from the Supreme Court to consider an intervening decision, the Court permitted Plaintiffs to file a Third Consolidated Amended Complaint ("TCAC") (ECF 98).  Defendants moved to dismiss.  The Court dismissed all claims as to the May 2007, July 2007 and May 2008 Offerings.  *In re Deutsche Bank AG Sec. Litig.*, 2016 WL 4083429, at *21, *22-*26, *36 (S.D.N.Y. July 25, 2016) (Batts, J.).[1]  After considering the disclosures made in the Bank's 2007 annual report, the Court concluded that "[r]eview of the 2007 20-F in total demonstrates that Plaintiffs have not plausibly alleged a material misstatement or omission." *Id*. at *28-*34.  The Court sustained the TCAC as to the November 2007 and February 2008 Offerings, but only as to:

1. an alleged failure to disclose "known trends and uncertainties that have had or that the registrant reasonably expects will have a material favorable or unfavorable impact on net sales or revenues or income from continuing operations" pursuant to Item 303 of Regulation S-K, 17 C.F.R. § 229.303(a)(3)(ii); and

2. an alleged failure to disclose "the most significant factors that make the offering speculative or risky" pursuant to Item 503 of Regulation S-K, 17 C.F.R. § 229.503(c).

*Id*. at *18-*19, *27-*28.  The Court held that "[t]o the extent Plaintiffs attempt to allege material misstatements or other omissions claims, those fail." *Id*. at *27.

---

[1] In filing the TCAC, Plaintiffs dropped all claims relating to the October 2006 Offering.  *Id*. at *4 n.3.

The Court appointed Norbert Kaess and Maria Farruggio, a married couple, as Lead Plaintiffs for the November 2007 Offering, and Belmont Holdings Corp. as Lead Plaintiff for the February 2008 Offering (ECF 27).[2]  When it turned out that Belmont lacked standing to sue, its claims were dismissed (ECF 139), leaving the February 2008 Offering without a plaintiff.

Kaess and Farruggio moved for class certification with respect to the November 2007 Offering (ECF 126).  Plaintiffs' counsel then filed an amended motion for class certification seeking to inject a new Plaintiff (Sylvia Laiti) with respect to both the November 2007 and the February 2008 Offerings (ECF 133).  The Court disqualified Laiti and struck the amended motion for class certification (ECF 163).  Lacking a plaintiff for the February 2008 Offering, Plaintiffs' counsel argued that Kaess and Farruggio should be permitted to proceed under the doctrine of "class standing."  The Court granted the motion (ECF 163),[3] and set a schedule (ECF 164).

The November 2007 and the February 2008 Offerings have both been fully redeemed at their original offering prices.  From issuance to redemption, the trust preferred securities paid interest on time and in full.  Anyone who bought those securities and held through redemption has no actual loss.  *See* Declaration of Charles A. Gilman ("Gilman Decl.") at ¶¶ 3-4.

## THE RELEVANT FACTS

On November 16, 2016, Defendants served document requests on Plaintiffs calling for documents concerning their purchases and sales of the trust preferred securities.  In response, Lead Plaintiffs did not produce a single document, but represented that "plaintiffs will conduct a

---

[2] The Court's preliminary assessment in appointing Kaess and Farruggio as Lead Plaintiffs in this action "does not prejudice defendants' capacity to contest plaintiff's adequacy on a motion for class certification." *In re Deutsche Bank AG Sec. Litig.*, 2009 WL 4277202, at *3 (S.D.N.Y. Nov. 23, 2009) (Batts, J.) (quoting *Koppel* v. *4987 Corp.*, 1999 WL 608783, at *8 (S.D.N.Y. Aug. 11, 1999) (Carter, J.)).

[3] The requirements of the class standing doctrine are "distinct from the criteria that govern whether a named plaintiff is an adequate class representative under Rule 23(a)." *Ret. Bd. of the Policemen's Annuity & Benefit Fund of the City of Chicago* v. *Bank of New York Mellon*, 775 F.3d 154, 161 (2d Cir. 2014).

reasonable search for responsive documents related to the securities at issue in this litigation and will produce relevant, non-privileged documents to the extent such documents exist." *See* Gilman Decl. ¶ 7.  It was not known for over a year – until the December 20, 2017 deposition of Lead Plaintiff Kaess – that the representation that Plaintiffs would conduct a reasonable search for responsive documents was false, and that, in fact, Plaintiffs had already destroyed all files relating to their purchases of the securities at issue in this lawsuit.  At his deposition (*see* Gilman Decl. ¶ 5), Kaess testified that he gave his counsel permission to speak with his brokers but otherwise Kaess and Farruggio did "nothing" to search in response to Defendants' requests for documents relevant to this lawsuit (*see* Kaess Tr. at 122:15-125:2).  Indeed, Kaess testified that,

█████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

██████████████████████████████████████████████

    **Q.**    Right around the time that this lawsuit was filed you took [all of your investment] files out of the United States to Italy.

    **A.**    Yes.

    **Q.**    And then you destroyed all those files?

    **A.**    Yeah, but later.

    **Q.**    But you destroyed all of them?

    **A.**    Yes I destroyed them; yes.

Kaess Tr. at 99:5-13.[4]

Kaess has no recollection of Plaintiffs' counsel ever telling him to retain files, and said he would have kept his files had he been told to keep them.  Kaess Tr. 129:12-18.  Kaess testified

---

[4] ███████████████████████████████████████████████████████████████████████████

that in intentionally shredding Plaintiffs' investment files he was not acting against the instructions of Plaintiffs' counsel, who at that point directed Kaess not to answer any further questions.

████████████████████████████████████████████████████████████

███████

**Q.** Is that because your lawyer didn't tell you to preserve them?

[PLAINTIFFS' COUNSEL] ". . . Norbert don't answer. . . . I direct him not to answer.

**Q.** Did any lawyer ever tell you to preserve any electronic or paper information that you might have relevant to any claims or defenses in this lawsuit?

[PLAINTIFFS' COUNSEL] All right. Norbert, again, privileged communication, and I direct you not to answer.

Kaess Tr. at 93:19-94:18.[5]

Because the federal securities laws do not apply to transactions outside the United States,[6] and because Plaintiffs appeared to reside outside the United States, Defendants asked Plaintiffs' counsel to confirm that the Court had jurisdiction over Plaintiffs' claims. On January 6, 2017, Plaintiffs' counsel represented in writing that "plaintiffs resided in the United States at the time of purchasing the November 2007 securities . . . . Thus, *Morrison* is irrelevant to this

---

[5] Kaess testified that he informed Plaintiffs' counsel of his shredding prior to his deposition. Kaess Tr. at 105:4-8. Plaintiffs' counsel did not inform Defendants or the Court. Gilman Decl. at ¶ 7. If Plaintiff's counsel instructed Plaintiffs to shred files, that would not be privileged. *United States* v. *Zolin*, 491 U.S. 554, 556 (1989) (crime/fraud exception). If Plaintiffs' counsel never discussed the subject with Plaintiffs, there would be no communication as to which privilege might attach. *Upjohn Company* v. *United States*, 449 U.S. 383, 395 (1981) ("[t]he privilege only protects disclosure of communications"). There is no third alternative because Kaess' shredding was not against the instructions of Plaintiffs' counsel.

In response to Orders of the Court, Plaintiffs had produced 44 sheets of paper (of which 21 were duplicates or translations), that appear to have been taken from documents that Plaintiffs did not produce. Over a month after the deposition, Plaintiffs produced ███████████████████████████████

███████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████

[6] *See Morrison* v. *National Australia Bank Ltd.*, 561 U.S. 247, 268 (2010); *In re Royal Bank of Scotland Group PLC Sec. Litig.*, 765 F. Supp. 2d 327, 338 (S.D.N.Y. 2011) (Batts, J.) ("Under *Morrison*, the Securities Act, like the Exchange Act, does not have extraterritorial reach.").

case." Gilman Decl. ¶ 8.  It was not known for a year that this representation also was false. 

In their Rule 26(a)(1) disclosures, Plaintiffs did not disclose they had an account at a German securities broker dealer (Commerzbank) in which they transacted in the Deutsche Bank trust preferred securities, despite

---

[7] Plaintiffs' expert, Dr. Stephen Feinstein, testified that the trust preferred securities at issue were eligible for trading outside the United States, that they did trade outside the United States, and that he too does not know whether any of Plaintiffs' purchases were made on a U.S. market.  *See* Gilman Decl. ¶ 16; Feinstein Tr. at 84:9-19 and 89:17-22.  None of the documents produced by Plaintiffs in this action show that any of their purchases of the trust preferred securities were made on a U.S. market.  Gilman Decl. at ¶ 17.

This pattern of obstruction continued with Plaintiffs' testifying expert, Dr. Stephen Feinstein. When asked about the terms of his engagement, Feinstein testified that he was retained over a year ago and "would be able to testify most accurately if I had [my engagement] letter in front of me." Feinstein Tr. at 8:13-9:15. But Plaintiffs' counsel refused to produce the letter.

> Q. Will you produce [Dr. Feinstein's engagement letter]?
>
> [PLAINTIFFS' COUNSEL]  No.

*Id*. at 10:2-3.[9]  Plaintiffs' counsel also blocked discovery of the terms of Feinstein's engagement.

> Q. Do you recall whether the engagement letter in this case requested you to do anything other than opine on whether or not there existed a damage methodology that could be commonly applied across the alleged class in this action with respect to claims under 11 and 12?  Did they engage you to do anything other than that?
>
> [PLAINTIFFS' COUNSEL]  I'm going to object.  Instruct the witness not to answer any questions about the contents of the engagement letter.  We've already made our opinion clear to you that we don't believe it's responsive, and it's not going to be produced. . .
>
> Q. What are the full terms of your engagement, as best as you can recall?
>
> [PLAINTIFFS' COUNSEL]  Same objection.  Instruct the witness not to answer."

*Id*. at 20:25-21:20; *see id*. at 30:2-22.  Plaintiffs' counsel was asked to reconsider, but refused:

> [DEFENDANTS' COUNSEL]  I don't want to belabor the deposition, but I do want to give you one last opportunity to reconsider your directions not to answer, and I would ask whether you will permit me to question the witness and permit him to fully answer the questions on the full terms of his engagement in this action. . . .
>
> [PLAINTIFFS' COUNSEL]  I'll stand on my previous objections.
>
> [DEFENDANTS' COUNSEL]  And direct him not to answer.
>
> [PLAINTIFFS' COUNSEL]  Any additional questions . . . yes.

---

[8] After a break in the deposition, on cross-examination by his own counsel, Kaess reluctantly said that he would retain those files.  Kaess Tr. at 232:23-233:6.  Kaess testified that he also has an email account that might contain correspondence concerning Plaintiffs' purchases and sales of the trust preferred securities, but that no one has ever reviewed those files for information relevant to this lawsuit.  Kaess Tr. at 40:12-15.  Within hours of the December 20, 2017 deposition, Defendants demanded the production of Plaintiffs' Commerzbank and email files.  To date, nothing has been produced.  *See* Gilman Decl. at ¶¶ 6, 13.

[9] Feinstein testified that in other actions where he had been retained by the Robbins Geller law firm, his engagement letters were "more likely than unlikely" marked as deposition exhibits.  Feinstein Tr. at 20:2-23.

*Id*. at 171:15-172:15.  Plaintiffs' counsel also refused to allow Feinstein to produce his invoices for work charged to this case.  *Id*. at 27:2-23.[10]

Defendants served Plaintiffs with Rule 36 Requests for Admissions.  In response, Plaintiffs admit that they purchased 13,850 shares issued in the November 2007 Offering for an investment of $244,026.66, that they sold all of those 13,850 shares for proceeds of $344,172.50, and that during their ownership of those securities they received an additional $88,307.19 in interest.[11]  That is a very substantial *profit*. ████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████████████████████[12]

---

[10] Feinstein has not been engaged by a defendant as a testifying expert in a securities case in the last 15 years.  "75 percent, maybe 80" percent of his annual income comes from providing reports to plaintiffs' counsel.  *Id*. at 75:17-21; 70:19-23.  In the last four years, Feinstein has rendered at least 23 reports (70% of all his reports) for the law firms representing Kaess and Farruggio in this case.  *See* Gilman Decl. at ¶ 15.  "Rule 26 provides for liberal discovery with respect to testifying experts.  Their compensation and the terms of their engagements obviously are relevant to the credibility of their testimony and should be discoverable, . . . .  [Plaintiff's expert] contends also that the information [the Bank] seeks is privileged.  He cites no authority for this proposition.  The reason is fairly obvious – the proposition is absurd.  The compensation and terms of engagement of a lawyer are not protected by the attorney-client privilege. . . .  *A fortiori* the compensation and terms of engagement of expert witnesses, which so plainly are relevant to credibility and bias, perhaps among other things, are not privileged."  *In re Parmalat Sec. Litig*., 2007 WL 1815461, at *1-*2 (S.D.N.Y. June 25, 2007) (Kaplan, J.).  *See also* Advisory Committee Note to Fed. R. Civ. P. 26 (Discovery of testifying experts "is not limited to compensation for work forming the opinions to be expressed, but extends to all compensation for the study and testimony provided in relation to the action.  Any communications about additional benefits to the expert, such as further work . . . would be included. . . .  The objective is to permit full discovery into such potential sources of bias.").

[11] Prior to filing suit, on November 7, 2007 Plaintiffs bought 7,000 shares at $25.00 per share and on February 19, 2009 Plaintiffs bought an additional 6,400 shares at $9.03 per share.  Plaintiffs sold all 13,400 shares on February 8, 2012 at $24.85 per share.  After filing suit, Plaintiffs bought an additional 200 shares on June 8, 2011 at $25.52 per share and 250 shares on June 17, 2011 at $24.41 per share, and sold those 450 shares on February 8, 2012 at $24.85 per share.  Plaintiffs invested a total of $244,026.66 and on sale they received a total of $344,172.50, for a profit of $100,145.84.  In addition, they received $88,307.19 in interest.  These facts, admitted by Lead Plaintiffs pursuant to Rule 36, are "conclusively established" for this action.  Fed. R. Civ. P. 36(b).  *See* Gilman Decl. at ¶ 11.

[12] Section 12(a)(2) mandates that the $88,307.19 that Plaintiffs admit receiving on the November 2007 securities be taken into account.  *See Commercial Union Assur. Co., plc* v. *Milken,* 17 F.3d 608, 615 (2d



But Plaintiffs did not sell the securities, they bought more, and the price fully recovered (*id*. at 78:6-16), at which point they sold, making a profit of more than $100,000 on the November 2007 Offering (not counting over $88,000 in interest).

This suit is being prosecuted because of emotional distress.

Plaintiffs never disclosed this when proposing Farruggio as Lead Plaintiff or when twice proposing her as a class representative.

## ARGUMENT

While generally it is the plaintiff who moves for an order certifying a plaintiff class, it is well-settled that the defendant may move for an order denying class certification.

> In actions involving a proposed plaintiff class, the named plaintiff generally moves for an order certifying the class. The defendant need not wait for the plaintiff to act, however. The defendant may move for an order denying class certification. Rule 23 does not specify which party must make the motion, but rather places on the court the duty to ensure that certification is considered "at an early practicable time" (see § 23.81).

*See* 5-23 *Moore's Federal Practice 3d* § 23.82 (2017) (collecting cases); *see also* 7A Wright, Miller & Kane, *Fed. Prac. & Proc. Civ*. § 1785 n.3 (3d ed. 2017) ("a defendant need not wait for

---

Cir. 1994) (any income received upon the securities at issue must be offset against any purported losses under Section 12(a)(2)). Feinstein confirmed that anyone who bought the November 2007 or February 2008 Offerings and held through redemption has "zero damage." Feinstein Tr. at 90:24-91:14.

plaintiff to act and may, in fact, move preemptively for an order denying class certification"); 6A *Federal Procedure, Lawyer's Edition* § 12:257 (2017) ("a defendant may move to deny class certification before a plaintiff files a motion to certify a class"); 3 *Newberg on Class Actions* § 7:1 (5th ed. 2017) ("[a] defendant may initially move for an order denying class certification").[13]

One can hardly envision a case more appropriate for a motion to deny class certification.

## I.   THE LEGAL STANDARD GOVERNING CLASS ACTION CERTIFICATION

There is no right to be certified as a class representative; it is a privilege and is not to be bestowed lightly.  "The class action is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only."  *Wal-Mart Stores, Inc*. v. *Dukes*, 564 U.S. 338, 348 (2011).  "To come within the exception, a party seeking to maintain a class action must affirmatively demonstrate his compliance with Rule 23." *Comcast Corp.* v. *Behrend*, 569 U.S. 27, 33 (2013).  Class certification is proper only "if the trial court, is satisfied, after a rigorous analysis, that the prerequisites" of Rule 23 are met.  *General Tel. Co. of the Southwest* v. *Falcon*, 457 U.S. 147, 161 (1982).

"Even though the issue of class certification thus comes before the Court on Defendants' motion, the burden remains on Plaintiffs to prove that each of the required elements for class cer-

---

[13] In circumstances far less problematic than those here presented, this Court has granted motions by Defendants to deny class action certification. *See Garcia* v. *City of New York*, 2017 WL 1169640, at *5 n.11 (S.D.N.Y. Mar. 28, 2017) (Ramos, J.); *Spagnola* v. *Chubb Corp.*, 264 F.R.D. 76, 99 (S.D.N.Y. 2010) (Baer, J.); *Fedotov* v. *Peter T. Roach & Assocs.*, 354 F. Supp. 2d 471, 477 (S.D.N.Y. 2005) (Haight, J.) ("The defendant need not wait for the plaintiff to act, however.  The defendant may move for an order denying class certification.").  All Circuits to have considered the issue agree that defendants may affirmatively move to have class action certification denied.  *See Richardson* v. *Bledsoe*, 829 F.3d 273, 288 (3d Cir. 2016) ("a per se rule requiring the plaintiff to move for certification is improper"); *Pilgrim* v. *Universal Health Card, LLC*, 660 F.3d 943, 949 (6th Cir. 2011) ("either plaintiff or defendant may move for a determination of whether the action may be certified under Rule 23(c)(1)"); *Vinole* v. *Countrywide Home Loans, Inc.*, 571 F.3d 935, 941 (9th Cir. 2009) ("A defendant may move to deny class certification before a plaintiff files a motion to certify a class."); *Cook Cnty. College Teachers Union* v. *Byrd*, 456 F.2d 882, 885 (7th Cir. 1972) ("One opposing a class action may move for an order that the action may not be maintained as a class suit.").

tification under Rule 23 has been satisfied." *Spagnola* v. *Chubb Corp.*, 264 F.R.D. 76, 92 (S.D.N.Y. 2010) (Baer, J.).[14]  "[P]laintiffs wishing to proceed through a class action must actually *prove* – not simply plead – that their proposed class satisfied each requirement of Rule 23." *Halliburton Co.* v. *Erica P. John Fund, Inc.*, 134 S. Ct. 2398, 2412 (2014).  "To certify a class, a district court must make a definitive assessment of Rule 23 requirements . . . and must find that each requirement is established by at least a preponderance of the evidence."  *In re U.S. Food-service Inc. Pricing Litig.*, 729 F.3d 108, 117 (2d Cir. 2013); *Wal-Mart,* 564 U.S. at 350-51.

Gone are the days when courts simply erred on the side of granting class certification:

> [T]he district court misstated the law when it said that it "resolves doubts related to class certification in favor of certifying the class." . . .  The party *seeking* class certification has the burden of proof. . . .  And the entire point of a burden of proof is that, if doubts remain about whether the standard is satisfied, "the party with the burden of proof loses." . . .  All else being equal, the presumption is against class certification because class actions are an exception to our constitutional tradition of individual litigation. . . .  A district court that has doubts about whether "the requirements of Rule 23 have been met should refuse certification until they have been met."

*Brown* v. *Electrolux Home Products, Inc.*, 817 F.3d 1225, 1233-34 (11th Cir. 2016).

Rule 23(a) provides that a class may be certified only if Plaintiffs prove by a preponderance of evidence that four prerequisites have been met: numerosity, commonality, typicality and adequacy of representation.  *Wal-Mart,* 564 U.S. at 349.  These are "threshold requirements," *Amchem Prods., Inc.* v. *Windsor*, 521 U.S. 591, 613 (1997), that "effectively limit the class claims to those fairly encompassed by the named plaintiff's claims." *Wal-Mart*, 564 U.S. at 349.

In addition to carrying their burden of satisfying Rule 23(a)'s prerequisites, Plaintiffs must establish that the class meets the prerequisites of at least one of the three types of class ac-

---

[14] *See also Dochak* v. *Polskie Linie Lotnicze LOT S.A.*, 2017 WL 2362570, at *3 (N.D. Ill. May 30, 2017) ("When a defendant moves to deny class certification at the close of discovery . . . Plaintiffs still bear the burden of demonstrating that class certification is appropriate.") (citations omitted); 3 *Newberg on Class Actions* § 7:22 (5th ed. 2017) (Even where defendants move to deny class action certification, "[t]he burden of demonstrating compliance with the requirements of Rule 23 remains with the plaintiff.").

tions set forth in Rule 23(b).  Fed. R. Civ. P. 23(b); *Comcast*, 569 U.S. at 33.  Plaintiffs seek cer-

tification under Rule 23(b)(3), which provides that a class action may be maintained only if "the

court finds that the questions of law or fact common to class members predominate over any

questions affecting only individual members, and that a class action is superior to other available

methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  This

predominance criterion is "far more demanding" than the "rigorous analysis" mandated under

Rule 23(a).  *Amchem Prods.,* 521 U.S. at 624; *Comcast*, 569 U.S. at 33.

## II.   <u>KAESS AND FARRUGGIO ARE NOT PROPER CLASS REPRESENTATIVES</u>

It is well-settled that "class certification is inappropriate where a putative class repre-

sentative is subject to unique defenses which threaten to become the focus of the litigation."

*Gary Plastic Packaging Corp*. v. *Merrill Lynch, Pierce, Fenner & Smith, Inc*., 903 F.2d 176, 180

(2d Cir. 1990) (affirming denial of class action certification; citing *Kline* v. *Wolf*, 88 F.R.D. 696,

700 (S.D.N.Y. 1981) (Weinfeld, J.), *aff'd in relevant part*, 702 F.2d 400, 403 (2d Cir. 1983)).

This is so "[r]egardless of whether the issue is framed in terms of the typicality of the

representative's claims . . . or the adequacy of the representation."  *IBEW Local 90 Pension Fund*

v. *Deutsche Bank AG*, 2013 WL 58115472, at *19 (S.D.N.Y. Oct. 29, 2013) (Forrest, J.).  "[T]he

defendant need not show at the certification stage that the unique defense will prevail, only that it

is meritorious enough to require the plaintiff to devote considerable time to rebut."  *Gordon* v.

*Sonar Capital Mgmt., LLC*, 92 F. Supp. 3d 193, 200-01 (S.D.N.Y. 2015) (Rakoff, J.).

Writing for the Circuit in *Gary Plastic*, Judge Pierce noted that Gary Plastic "was the on-

ly plaintiff to come forward and seek to represent the class" but nevertheless found that class cer-

tification was not appropriate because unique defenses threatened to become the focus of litiga-

tion.  903 F.2d at 180.  That Kaess and Farruggio are the only plaintiffs seeking to represent a class is not a consideration relevant to whether the requirements for class certification are met.

A.  **Plaintiffs' Willful Spoliation of Evidence and Flagrant Violations of Their Discovery Obligations Render Them Unfit to Represent a Class**

"A class representative is a fiduciary to the entire class and bears a responsibility to comply with discovery requests." *Koss* v. *Wackenhut Corp.*, 2009 WL 928087, at *7 (S.D.N.Y. Mar. 30, 2009) (Robinson, J.).  "One who will not comply wholeheartedly and fully with the discovery requirements of modern federal practice, is not to be regarded by this Court as one to whom the important fiduciary obligation of acting as a class representative should be entrusted." *Norman* v. *Arcs Equities Corp.*, 72 F.R.D. 502, 506 (S.D.N.Y. 1976) (Brieant, J.).[15]

Plaintiffs have not merely failed to respond to discovery requests.  They have not merely failed to search for and produce relevant documents.  Here, Plaintiffs Kaess and Farruggio have intentionally – not accidentally, but willfully – shredded all documents relevant to their purchases of the securities at issue in this lawsuit.  This intentional misconduct is, in and of itself, sufficient to find them inadequate to represent a class.  We are not aware of any court ever certifying, as adequate class action representatives, plaintiffs who, after filing suit, intentionally destroyed relevant evidence.  *See Falcon* v. *Philips Elecs. N. Am. Corp.*, 304 F. App'x 896, 897 (2d Cir. 2008) (affirming denial of class certification where, as here, the proposed class representative

---

[15] *See Koss*, 2009 WL 928087, at *8 ("[Plaintiffs] have also failed to respond to numerous of Defendants' discovery requests. . . . In light of their apparent disregard for their role as fiduciaries to the entire class, they are disqualified from serving as class representatives."); *Blatch* v. *Franco*, 2002 WL 342453, at *4 (S.D.N.Y. Mar. 5, 2002) (Swain, J.) ("[Plaintiff] is subject to being cross-examined on the reasons for her recalcitrance and is also subject to the fact-finder's drawing an adverse inference from her failure to submit to discovery.  Striking her as a class representative eliminates these issues."); *Darvin* v. *Int'l Harvester Co.*, 610 F. Supp. 255, 257 (S.D.N.Y. 1985) (Sprizzo, J.) ("[P]laintiff's failure to fully comply with reasonable discovery requests . . . indicate that he is not suitable to fulfill the fiduciary obligations of a class representative."); *Kline* v. *Wolf*, 88 F.R.D. 696, 700 (S.D.N.Y. 1981) (Weinfeld, J.) ("[F]ailure to comply with proper discovery inquiry may be considered on the issue as to whether a class representative lives up to its fiduciary obligation"), *aff'd*, 702 F.2d 400 (2d Cir. 1983).

would be defending against a charge of willful spoliation); *Pagan* v. *Abbott Laboratories, Inc.*, 287 F.R.D. 139, 150 (E.D.N.Y. 2012) (Spatt, J.) (denying class certification where, as here, the proposed class representative would be defending against a charge of willful spoliation).[16]

## B. The Substantial Profits Realized by Plaintiff Defeats Typicality and Adequacy

Plaintiffs' gamesmanship in not disclosing all of their purchases and sales (and the substantial profits realized by them in connection therewith) is also sufficient, in and of itself, to deny class certification. *See In re Terayon Commn's Sys., Inc.*, 2004 WL 413277, at *9 (N.D. Cal. Feb. 23, 2004) (Patel, J.) (disqualifying lead plaintiff from representing a class where the court was "greatly troubled by an apparent attempt to mislead the court as to the scope and nature of lead plaintiffs' holdings in [defendant] stock" and "counsel made no effort to update the certifications so that they would accord to the requirements of 15 U.S.C. § 78u-4(a)(2)(A)(iv)"); *see also In re Organogenesis Sec. Litig.,* 241 F.R.D. 397, 410 (D. Mass. 2007) (Tauro, J.) (plaintiffs' counsel "has also given the court reason to question its ability to adequately present truthful factual information to the court," including incorrect and omitted information on the lead plaintiffs' PSLRA certifications that was only uncovered by Defendants' subsequent discovery).

It is "conclusively established" pursuant to Rule 36(b) that Plaintiffs realized a *profit* of over $100,000 on their purchases and sales of the securities issued in the November 2007 Offering, and, on top of that, Plaintiffs received over $88,000 in interest. *See* footnote 11, *supra*.

---

[16] *See also Mooradian* v. *FCA US, LLC,* 2017 WL 6379281, at *3-*4 (N.D. Ohio Dec. 14, 2017) (Gwin, J.) ("[Plaintiff's spoliation] have made him an atypical member of the class by giving [defendant] numerous possible defenses against him that would not apply to the class as a whole"); *In re Rail Freight Fuel Surcharge Antitrust Litig.,* 287 F.R.D. 1, 33 (D.D.C. 2012) ("Spoliation of evidence constitutes a unique defense, and . . . defending against a charge of spoliation of evidence can render a plaintiff an inadequate class representative."), *vacated on other grounds,* 725 F.3d 244 (D.C. Cir. 2013); *Akaosugi* v. *Benihana National Corp.,* 282 F.R.D. 241, 257 (N.D. Cal. 2012) (Alsup, J.) (plaintiff unfit to be class representative where subject to charge of spoliation). *Cf. In re American Int'l Grp., Inc. Sec. Litig.,* 265 F.R.D. 157, 172 (S.D.N.Y. 2010) (Batts, J.) (requiring "evidence that relevant documents were actually destroyed"), *vacated on other grounds,* 689 F.3d 229 (2d Cir. 2012). Plaintiffs admit willful spoliation.

13

As they have in the past, Plaintiffs will no doubt ask the Court to ignore this substantial profit and look only to a *de minimis* 15 cents per share loss on 7,000 of their 13,850 share purchases, arguing that the Court has already addressed this issue.  In fact, the Court postponed addressing the issue, and certainly did not prejudge Plaintiffs' adequacy to represent a class.[17]  Any argument that only 7,000 of Plaintiffs' 13,850 share purchases of the November 2007 securities should be considered in connection with class certification fails for three reasons.

First, the class proposed in the TCAC (and in both of Plaintiffs' prior motions for class action certification) is defined as "all purchasers of securities pursuant to or traceable to the Offering Documents" *regardless of the date of purchase.  See* TCAC ¶ 191.  All of Plaintiffs' purchases occurred within a class period so defined – and 13,400 shares were purchased before this lawsuit was filed.  Plaintiffs cannot seek certification of a class so defined and simultaneously assert that some of their purchases and sales of the November 2007 securities within the relevant time period should be counted in evaluating their claims while others should not.[18]

_____

[17] *See* Order dated April 6, 2017 (ECF 151): "ORDER: With regards to the 2007 Offerings, the documents provided to the Court show that during the relevant class period, lead Plaintiffs purchased shares at one price and sold for a minimal loss at another price. It does not matter that lead Plaintiffs subsequently bought other shares and made a profit. A Motion to Dismiss is an inappropriate reason to prolong the litigation at this point. Defendants' arguments can be addressed at the Summary Judgment stage."

[18] *See In re Vivendi Universal, S.A. Sec. Litig.*, 284 F.R.D. 144, 159 (S.D.N.Y. 2012) (Scheindlin, J.) ("gains resulting from transactions occurring between the first materialization date and the end of the Class Period will be used to offset losses incurred during that very same period"); *Grousman* v. *Motorola, Inc.*, 2011 WL 5554030, at *5 (N.D. Ill. Nov. 15, 2011) (Der-Yeghiayan, J.) ("Defendants have shown that it is likely that a portion of the proposed class members actually acquired a net gain during the class period as a result of the investments in Motorola stock.").  Those courts that have found additional purchases were not relevant to the Rule 23 analysis generally make clear the irrelevant purchases are those that took place *outside the class period.  See, e.g., In re REMEC Inc. Sec. Litig.*, 702 F. Supp. 2d 1202, 1265 (S.D. Cal. 2010) (Anello, J.); *In re Cigna Corp. Sec. Litig.*, 459 F. Supp. 2d 338, 355 (E.D. Pa. 2006) (Bayleson, J.); *In re Rent-Way Sec. Litig.*, 218 F.R.D. 101, 114 (W.D. Pa. 2003) (McLaughlin, J.)

Second, Plaintiffs did not suffer a loss even as to the first 7,000 shares they bought because Plaintiffs received substantially more than 15 cents a share in interest income on every one of those shares.



Plaintiffs made far more in interest than 15 cents a share.[19]

Third, "it would be patently absurd to award the plaintiffs any damages on these facts." *Ross* v. *Warner*, 1980 WL 1474, at *10 (S.D.N.Y. Dec. 11, 1980) (Tenny, J.) ("[T]he Court doubts whether plaintiffs who are challenging the adequacy of a registration statement are entitled to keep investing in the defendant's stock while enjoying a baseline price, locked in by the original complaint, as a guaranty against losses."). *See also In re Investors Funding Corp.*, 523 F. Supp. 563, 566 (S.D.N.Y. 1980) (Conner, J.) ("Section 11 provides for damages for purchasers who incurred losses as a result of false registration statements, and does not provide an additional windfall to persons who actually profited overall . . . .").[20]

---

[19] Plaintiffs' expert testified that Plaintiffs received on time and in full every interest payment on every share of their trust preferred securities, totaling 7.35% of $25.00 (or $1.83) per share per year for as long as they owned the securities, far more than 15 cents.  Feinstein Tr. at 91:15-23; *see also id.* at 159:13-19.  It is well-settled this income received must be offset against any purported losses under Section 12(a)(2).  *See Commercial Union Assur. Co. plc* v. *Milken,* 17 F.3d 608, 615 (2d Cir. 1994).

[20] *See Carlisle Ventures, Inc.* v. *Banco Espanol de Credito, S.A.*, 176 F.3d 601, 606-07 (2d Cir. 1999) ("Carlisle did not suffer compensable damages because it recouped its entire investment as well as a small profit, when it resold the Banesto shares."); *Milken*, 17 F.3d at 615 ("The net result of these computations is that [plaintiffs] have not suffered compensable damages under § 12(2).  Allowing them to maintain a cause of action under such circumstances would constitute a waste of judicial resources and a thwarting of Congress' aim in enacting § 12(2)."); *Centaur Classic Convertible Arbitrage Fund Ltd.* v. *Countrywide Financial Corp.*, 793 F. Supp. 2d 1138, 1143-44 (C.D. Cal. 2011) (Pfaelzer, J.) ("The Court agrees with

15

The prevailing approach is to offset losses by any gains relating to the same securities purchased and sold within the alleged class period.  The mere existence of this defense renders Plaintiffs atypical and inadequate to serve as class representatives.  *See Gordon* v. *Sonar Capital Mgmt.*, *LLC*, 92 F. Supp. 3d 193, 200-01 (S.D.N.Y. 2015) (Rakoff, J.) (denying class certification because, netting gains and losses, "the Court finds that [plaintiff] is subject to the potentially meritorious defense that he suffered no economic loss attributable to defendants' alleged wrongdoing. . . . The Court need not resolve this question here, however, as the inquiry at this stage is whether [plaintiff] is subject to unique defenses which threaten to become the focus of this litigation."); *Makor Issues & Rights, Ltd.* v. *Tellabs, Inc.*, 256 F.R.D. 586, 600 (N.D. Ill. 2009) (St. Eve, J.) (denying class certification because plaintiff's gains "may far and away offset his loss," resulting in a defense that was "non-frivolous and unique to [the plaintiff]").[21]

### C.   Plaintiffs Have Not Demonstrated They Purchased in a U.S. Market

The federal securities laws do not apply to transactions outside the United States.  *See Morrison* v. *National Australia Bank Ltd.*, 561 U.S. 247, 267-68 (2010); *In re Petrobras Securities*, 862 F.3d 250, 262 (2d Cir. 2017); *In re Royal Bank of Scotland Group PLC Sec. Litig.*, 765 F. Supp. 2d 327, 338 (S.D.N.Y. 2011) (Batts, J.) ("Under *Morrison*, the Securities Act, like the Exchange Act, does not have extraterritorial reach.").

---

Defendants that it is appropriate to measure damages by netting the gains and losses from a Plaintiff's 'ongoing trading strategy,' and to find a Plaintiff was not injured if the strategy netted a profit.").

[21] The fact that Plaintiffs made substantial additional purchases of the securities at issue after what the Court found to be adequate disclosure in dismissing all claims as to the May 2008 Offering also subjects them to unique defenses.  *See Kovaleff* v. *Piano*, 142 F.R.D. 406, 408 (S.D.N.Y. 1992) (Sprizzo, J.) (denying class certification in Section 11 and 12(a)(2) action in which plaintiffs increased their holdings in the securities after disclosure, holding that the "defenses that can be asserted against the putative class action plaintiffs would likewise adversely impact the interest of the class"); *see also Gary Plastic Packaging Corp.* v. *Merrill Lynch, Pierce, Fenner and Smith, Inc.*, 119 F.R.D. 344, 348-49 (S.D.N.Y. 1988) (Haight, J.), *aff'd*, 903 F.2d 176 (2d Cir. 1990) (affirming denial of class certification).

It is Plaintiffs' burden to show by a preponderance of the evidence that their purchases at issue took place on a U.S. market.  *Morrison* v. *National Australia Bank Ltd*., 547 F.3d 167, 170 (2d Cir. 2008), *aff'd*, 561 U.S. 247 (2010).

It is the location of the relevant securities transactions that matter.  *See In re Petrobras Securities*, 862 F.3d at 262.  "[T]o the extent that a plaintiff seeks to impose liability under sections 11 or 12(a)(2), that individual must have purchased a security listed on a domestic exchange or engaged in a "domestic transaction in other securities."  *In re Smart Techs., Inc. S'holder Litig.*, 295 F.R.D. 50, 56 (S.D.N.Y. 2013) (Forrest, J.).  The mere listing on a domestic exchange is not sufficient to establish domesticity if the relevant securities transaction did not occur on a domestic exchange.  *See City of Pontiac Policeman's & Firemen's Ret. Sys.* v. *UBS AG*, 752 F.3d 173, 180 (2d Cir. 2014) (rejecting theory that securities purchased on a foreign exchange but cross-listed in the U.S. are within the purview of the securities laws).



None of the documents produced by Plaintiffs in this action identify the market on which Plaintiffs purchased the Deutsche Bank trust preferred securities at issue in this lawsuit.  Gilman Decl. at ¶ 17.

Plaintiffs' expert testified that the Deutsche Bank trust preferred securities were eligible for trading outside the United States, that they in fact did trade outside the United States, and that he too does not know whether or not Plaintiffs' securities purchases were made on a market in the United States.  Feinstein Tr. at 84:9-85:3; 89:17-22.

Plaintiffs have not satisfied their burden of demonstrating that the federal securities laws apply to their claims.  It is their burden to do so.  This failure as well precludes them from representing a class in this action.

### D.   Plaintiffs' Prosecution of This Action to Recover for Emotional Distress Is Further Grounds for Denial of Class Certification

████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████████  But Plaintiffs did not sell on the drop; they bought 6,400 more shares of the November 2007 Deutsche Bank trust preferred securities *before* they filed this lawsuit.  The market price of those securities fully recovered before Plaintiffs sold, at which time they made a profit of more than $100,000 on the securities issued in the November 2007 Offering.  *See* footnote 11.  ██████

████████████████████████████████████

Plaintiffs have no monetary loss.  This lawsuit is being prosecuted because of alleged emotional distress.  ████████████████████████████████

████████████████████  But non-economic damages such as emotional distress are not available in securities actions.[22]  The conclusive Rule 36 admission that Plaintiffs profited on their securities transactions coupled with the assertion that this action is being prosecuted because of emotional distress further serves to preclude the certification of Plaintiffs as class action representatives.

---

[22] *See Randall* v. *Loftsgaarden*, 478 U.S. 647, 663 (1986); *Scotto* v. *Brady*, 410 F. App'x 355, 359 (2d Cir. 2010); *Globus* v. *Law Research Service, Inc.*, 418 F.2d 1276, 1284 (2d Cir. 1969); *Weiss* v. *Hayden Stone Inc.*, 340 F. Supp. 1074, 1075 (E.D.N.Y. 1972) (Bruchhausen, J.) ("There has been no case submitted or found by this Court that allows recovery for mental anguish . . . pursuant to a violation of the Federal Securities Law.").

### E.   Plaintiffs' Counsel Is Inadequate to Represent a Class in This Action

"The purpose behind the [Private Securities Litigation Reform Act] is to prevent 'lawyer-driven' litigation."  *Schulman* v. *Lumenis, Ltd.*, 2003 WL 21415287, at *2 (S.D.N.Y. June 18, 2003) (Batts, J.).[23]  While Plaintiffs' counsel are well known, and have been found adequate to represent classes in other cases, in those cases they did not engage in the disturbing conduct presented here.  It is their conduct in *this* action that must be considered with respect to whether the Court should certify them as adequate to represent a class in *this* action.  *See* Fed. R. Civ. P. 23(g); *Friedman-Katz* v. *Lindt & Sprungli (USA), Inc*., 270 F.R.D. 150, 160 n. 15 (S.D.N.Y. 2010) (Gwin, J.) ("regardless of the qualifications of proposed class counsels, in assessing their fitness to serve as class counsels the Court finds that their misconduct in this case far outweighs any of their positive attributes"); *Kulig* v. *Midland Funding, LLC*, 2014 WL 5017817, at *2 (S.D.N.Y. Sept. 26, 2014) (Castel, J.) ("in determining the adequacy of counsel, the court looks beyond reputation built upon past practice and examines counsel's competence displayed by present performance").  Where the same counsel has failed to make appropriate disclosures in connection with class certification, this Court has found them inadequate to represent a class.  *In re IMAX Sec. Litig.*, 2011 WL 1487090, at *8-9 (S.D.N.Y. Apr. 15, 2011) and 2012 WL 3133476, at *2–3 (S.D.N.Y. Aug. 1, 2012) (Buchwald, J.).  The facts presented are too troubling to ignore.

1. The PSLRA Certification attached to their complaint did not disclose the vast majority of Plaintiffs' transactions in the trust preferred securities.  It has never been updated.

2. In their mandatory Rule 26(a)(1) initial disclosures, Plaintiffs did not disclose the identity of their German securities broker dealer (Commerzbank) where Plaintiffs then had their securities account despite Plaintiffs having previously informed counsel of that account.

---

[23] *See also Reitan* v. *China Mobile Games & Entertainment Group, Ltd.*, 68 F. Supp. 3d 390, 395 (S.D.N.Y. 2014) (Wood, J.); *Iron Workers Local No. 25 Pension Fund* v. *Credit-Based Asset Servicing & Securitization, LLC*, 616 F. Supp. 2d 461, 463 (S.D.N.Y. 2009) (Rakoff, J.); *In re NYSE Specialists Sec. Litig.*, 240 F.R.D. 128, 133 (S.D.N.Y. 2007) (Sweet, J.).

3. On the Lead Plaintiff motion, Plaintiffs' counsel represented to the Court that the November 2007 and February 2008 Offerings were so different that the same plaintiffs could not adequately represent purchasers of both Offerings, and Kaess and Farruggio would seek to represent only purchasers of the November 2007 Offering.  (ECF 7 & 13)

4. Only Belmont Holdings sought to represent purchasers of the February 2008 Offering, but for seven years Belmont lacked standing to sue.  Plaintiffs' counsel knew this, but failed to inform the Court.[24]

5. After Belmont's dismissal and without Court permission, Plaintiffs' counsel sought to add a new plaintiff (Sylvia Laiti) in an amended motion for class certification.  The Court disqualified Laiti and struck the amended motion, whereupon Plaintiffs' counsel reversed course and proposed Kaess and Farruggio to represent purchasers in the February 2008 Offering, the opposite of what they had successfully argued at the outset of the case.

6. In proposing them to represent purchasers of the February 2008 Offering, counsel neglected to inform the Court that Kaess and Farruggio ███████████████████████ ████████████████████████████████████████████

7. Plaintiffs' counsel did not instruct Plaintiffs to preserve files relevant to this lawsuit, and they did not review Plaintiffs' documentary or electronic files for documents and information responsive to Defendants' discovery requests in this action.

8. Shortly after first meeting with Plaintiffs' counsel, Lead Plaintiff Kaess removed all of Plaintiffs' investment files from the United States and, while this lawsuit was pending, Kaess intentionally shredded all documents relating to Plaintiffs' purchases of the securities at issue in this lawsuit.  Kaess informed Plaintiffs' counsel of this willful spoliation of relevant evidence, but Plaintiffs' counsel did not inform Defendants or the Court.

9. When Kaess' intentional shredding first came to light at his deposition, Plaintiffs' counsel blocked the examination by directing Kaess not to testify further on the subject.

10. Plaintiffs' counsel also blocked discovery of Plaintiffs' testifying expert, directing him not to produce his engagement letter and invoices for work charged to this action, and directing him not to testify as to the full terms of his engagement in this action.

---

[24] Belmont sold its entire investment portfolio *at original cost* in August 2009.  In *Freidus* v. *ING Groep N.V.*, 2012 WL 2878637, at *2 (S.D.N.Y. July 10, 2012) (Kaplan, J.) and 2012 WL 4857543, at *1 (S.D.N.Y. Oct. 11, 2012) (Kaplan, J.), *aff'd* 543 F. App'x 93 (2d Cir. 2013)  the Court held that Belmont had no loss on the sale of its portfolio and could not represent a class asserting claims under the Securities Act.  The lawyers for Belmont in *ING* are the same lawyers who represented it in this action, and who now represent Kaess and Farruggio.  For seven years after Belmont's sale of its entire portfolio at original cost, and for five years after Judge Kaplan's decisions, those attorneys prosecuted this action with respect to the February 2008 Offering without disclosing Belmont's lack of standing to the Court.  When caught, Plaintiffs' counsel complained that Defendants "never raised the issue."  Transcript of Proceedings (ECF 166), at 18:3-19:16; 21:3-10.

11. Based on the false representation of Plaintiffs' counsel that Plaintiffs resided in the United States when they purchased the securities at issue in this lawsuit, Plaintiffs' counsel asserted that *Morrison* v. *National Australia Bank Ltd*., 561 U.S. 247 (2010), is not relevant to this action.  Lead Plaintiff Kaess testified that, in truth, at no time relevant to this lawsuit have Plaintiffs resided in the United States.

12. Plaintiffs have produced nothing – not a single document nor a snippet of testimony – showing that Plaintiffs' purchases of the Deutsche Bank trust preferred securities at issue in this action occurred on a market in the United States and that the Court has jurisdiction over their claims in this action.

13. Plaintiffs have no actual loss.  They have a *profit* of over $100,000 (not including over $88,000 in interest) in connection with their purchases of the securities issued in the November 2007 Offering.  They also profited in trading the securities issued in the February 2008 Offering. Plaintiffs seek to recover for emotional distress, but that is non-compensable under the Securities Act of 1933.  This suit is "without merit."[25]

"[W]hether [Plaintiff], or his counsel, or both, are responsible for the inconsistencies outlined above, the result is clear, neither the plaintiff, nor his attorney meet the requirements of Rule 23(a)(4) 'to fairly and adequately protect the interests of the class.'"  *Savino* v. *Computer Credit, Inc.*, 173 F.R.D. 346, 356 (E.D.N.Y. 1997) (Spatt, J.), *aff'd,* 164 F.3d 81 (2d Cir. 1998).

**III.    Kaess and Farruggio Are Not Entitled to Invoke "Class Standing" and All Claims as to the February 2008 Offering Should Be Dismissed in Their Entirety**

Relying upon *NECA-IBEW Health & Welfare Fund* v. *Goldman Sachs & Co.*, 693 F.3d 145, 165 (2d Cir. 2012), on October 16, 2017 the Court ruled that Kaess and Farruggio, despite not having asserted any individual claims with respect to the securities issued in the February 2008 Offering, had standing as Lead Plaintiffs to seek to represent those who did.  *See* ECF 163. However, the Court made its determination without having been informed that Plaintiffs not only purchased the February 2008 securities but ███████████████████ – facts Plaintiffs did

---

[25] The last sentence of Section 11(e) of the Securities Act provides that "the cost of such suit, including reasonable attorney's fees," may be assessed against Plaintiffs if the Court believes the suit to have been "without merit."  15 U.S.C. § 77k(e).  The provision applies to any suit under Section 11 "or any other section of this subchapter," and thus applies to claims alleged under both Sections 11 and 12.  The conduct of Plaintiffs and Plaintiffs' counsel set forth herein is deserving of scrutiny.  Defendants reserve all rights.

not disclose to the Court despite repeated opportunities to do so.[26]  Even setting aside Plaintiffs'

deception, which by itself is sufficient to deny class action certification, the Court did not pre-

judge the adequacy of Kaess and Farruggio to represent purchasers of the February 2008 Offer-

ing and is free, based on the more developed record, to revisit its determination under the class

standing doctrine.  *See New Jersey Carpenters Health Fund* v. *Royal Bank of Scotland Group,*

*PLC,* 2015 WL 539446, at *2 (S.D.N.Y. Feb. 5, 2015) (Batts, J.) (the Court's consideration of

class standing issues "properly must be reserved for the class certification stage").[27]

The class standing doctrine allows a plaintiff to seek to represent others related to securi-

ties it had not purchased if the plaintiff can demonstrate (i) "he personally has suffered some ac-

tual . . .injury as a result of the putatively illegal conduct of the defendant" and (ii) that conduct

implicates the "same set of concerns" that caused the actual injury.  *NECA-IBEW*, 693 F.3d at

162.

Here, Plaintiffs profited from their purchases of the securities issued in the November

2007 Offering; they have no actual injury.  Thus the first requirement for class standing is not

satisfied.  As regards the February 2008 Offering, the class standing doctrine was never intended

---

[26] Defendants served Plaintiffs with interrogatories calling for information concerning their purchases and sales of, and income received on, the securities issued in the February 2008 Offering.  Despite their seeking to represent a class with respect to that Offering, Plaintiffs provided no information, asserting that discovery with respect to their own transactions of those securities "is irrelevant to any claim, defense or

███████████████████████████████████████████████████████████████████

[27] *See also Morrow* v. *Ann, Inc.*, 2017 WL 363001, at *5-*6 (S.D.N.Y. Jan. 24, 2017) (Oetken, J.) (reviewing authorities and determining it prudent to defer consideration of "class standing" to the class certification stage); *Buonasera* v. *Honest Co., Inc.*, 208 F. Supp. 3d 555, 563 (S.D.N.Y. 2016) (Marrero, J.) (class standing may be raised again "at the class certification stage" with "the benefit of further discovery"); *3 Newberg on Class Actions* § 2.6 (5th ed. 2017) (describing approaches and concluding that it is preferable to address "class standing" at the class certification stage).  Class certification orders may be altered or amended at any time. Fed. R. Civ. P. 23(c)(1)(C).  *A fortiori* class standing may be reconsidered at the time the court considers class action certification.

to apply where, as here, plaintiffs actually bought the security for which they seek to invoke class standing doctrine ████████████████ .

*NECA-IBEW* holds that, in the class action context, Article III standing requires that "for every named defendant there must be at least one named plaintiff who can assert a claim directly against that defendant." *Id.* at 159. Since *NECA-IBEW*, the Circuit has refused opportunities to expand its reach, cognizant of "the murky line between traditional Article III standing and so-called class standing." *Retirement Board of the Policemen's Annuity & Ben. Fund of the City of Chicago* v. *Bank of New York Mellon*, 775 F.3d 154, 160 (2d Cir. 2014); *DiMuro* v. *Clinique Labs., LLC*, 572 F. App'x 27, 29 (2d Cir. 2014).

> The Court has found that *NECA-IBEW* is frequently misread, usually, as here, in an attempt to create standing where standing does not exist. It does not stand for the sweeping proposition that an individual may represent absent class members with regard to claims as to which he or she has no individual standing, although that is how it is now sometimes cited.

*Stadnick* v. *Vivint Solar, Inc.*, 2015 WL 8492757, at *17–18 (S.D.N.Y. Dec. 10, 2015) (Forrest, J.), *aff'd,* 861 F.3d 31 (2d Cir. 2017); *see Lewis* v. *Casey*, 518 U.S. 343, 357 (1996) ("That a suit may be a class action . . . adds nothing to the question of standing, for even named plaintiffs who represent a class 'must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.'").[28]

Plaintiffs have no injury in connection with their purchases and sales of the November 2007 securities. That, and the fact that Plaintiffs also bought the February 2008 securities and

---

[28] *See also In re Commodity Exch., Inc.*, 213 F. Supp. 3d 631, 677 (S.D.N.Y. 2016) (Caproni, J.) (*NECA-IBEW* "may express some willingness to liberalize concepts of standing" but it does not expand it far enough to encompass a plaintiff who clearly cannot make out the elements of a claim); *Oklahoma Police Pension & Ret. Sys.* v. *U.S. Bank Nat. Ass'n*, 986 F. Supp. 2d 412, 418–20 (S.D.N.Y. 2013) (Koeltl, J) ("there is no case law supporting the plaintiff's theory that a plaintiff can pursue a claim that it does not have on behalf of a class simply because the plaintiff suffered a 'similar injury' for a different claim").

made a profit, fundamentally alters the class standing analysis.  We know of no court ever apply-ing "class standing" to plaintiffs such as those here who realized a *profit* from trading in the se-curities at issue.  Because Plaintiffs are not asserting any individual claims as to the February 2008 Offering, all claims arising from the February 2008 Offering should be dismissed.

## CONCLUSION

Kaess and Farruggio have no claim relating to the November 2007 Offering (because of their $100,000 profit in the purchase and sale of those securities, and their receipt of an addition-al $88,000 in interest).  Kaess and Farruggio cannot represent purchasers of the February 2008 Offering under the doctrine of "class standing" (because they have no actual loss on the Novem-ber 2007 Offering, and because they bought and profited in their trading of the February 2008 securities as well).  Kaess and Farruggio have been unable (through document production, their own sworn testimony, or through the sworn testimony of their expert) to demonstrate that their purchases of the Deutsche Bank trust preferred securities at issue took place on a U.S. market and that the Court has jurisdiction over their claims.  All of that, coupled with their intentional destruction of relevant evidence and their total disregard of their discovery obligations, present substantial and unique defenses to their claims and render Plaintiffs Kaess and Farruggio unfit to represent a class in this action.  Based on their conduct in this action, Plaintiffs' counsel are not adequate to represent a class in this action.

Class action certification should be denied as to both the November 2007 and the Febru-ary 2008 Offerings.  Because Kaess and Farruggio are not asserting any individual claims as to the February 2008 Offering, all claims arising from the February 2008 Offering should be dis-missed.  Following its ruling on this motion, the Court should set a scheduling conference to de-termine whether further proceedings in this matter are necessary.

24

Dated: February 21, 2018

  /s/ Scott D. Musoff

SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP
    Jay B. Kasner
    Scott D. Musoff
    Emma S. Gardner
Four Times Square
New York, New York 10036
Tel: (212) 735-3000
Jay.kasner@skadden.com
Scott.musoff@skadden.com
Emma.gardner@skadden

*Attorneys for the Underwriter
Defendants*

Respectfully submitted,

  /s/ Charles A. Gilman

CAHILL GORDON & REINDEL LLP
    Charles A. Gilman
    Susan Buckley
    David G. Januszewski
    Brent Andrus
    Samuel G. Mann
80 Pine Street
New York, New York 10005
Tel:  (212) 701-3000
cgilman@cahill.com
sbuckley@cahill.com
djanuszewski@cahill.com
bandrus@cahill.com
smann@cahill.com

*Attorneys for the Deutsche Bank Defendants
and the Individual Defendants*