UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————— x

In re DEUTSCHE BANK AG SECURITIES
LITIGATION

————————————————————

This Document Relates To:

    ALL ACTIONS.

————————————————————

:
:
:
:
:
:
:
:
:
x

Master File No. 1:09-cv-01714-DAB

CLASS ACTION

MEMORANDUM OF LAW IN SUPPORT
OF PLAINTIFFS' MOTION FOR CLASS
CERTIFICATION AND OPPOSITION TO
DEFENDANTS' MOTION TO DENY
CLASS CERTIFICATION

# TABLE OF CONTENTS

**Page**

I.   PRELIMINARY STATEMENT ............................................................................1

II.  RELEVANT PROCEDURAL HISTORY ..........................................................5

III. BRIEF STATEMENT OF FACTS......................................................................7

IV.  ARGUMENT ....................................................................................................10

      A.   This Action Satisfies the Requirements of Rule 23(a)..........................11

             1.   The Class Is Sufficiently Numerous ..........................................11

             2.   There Are Questions of Law and Fact Common to the Class....................12

             3.   Plaintiffs' Claims Are Typical of Those of the Class ...............13

             4.   Plaintiffs Will Fairly and Adequately Protect the Interests of the Class ............................................................................14

      B.   This Action Satisfies the Requirements of Rule 23(b)(3)....................15

             1.   Common Questions of Law and Fact Predominate ...................15

             2.   A Class Action Is Superior to Other Litigation Methods .........17

      C.   Class Counsel Satisfies Rule 23(g) .....................................................18

      D.   Plaintiffs Have a Legally Recognizable Injury....................................19

      E.   Plaintiffs' Purchase in the November 2007 Offering Satisfies *Morrison* ..............21

      F.   This Court Has Already Correctly Found that Class Standing Applies................23

V.   CONCLUSION..................................................................................................25

1383980_1

# TABLE OF AUTHORITIES

Page

## CASES

*Absolute Activist Master Value Fund, Ltd. v. Ficeto*,
   No. 09 Civ. 8862 (GBD), 2013 WL 1286170
   (S.D.N.Y. Mar. 28, 2013) ...........................................................................................22

*Absolute Activist Value Master Fund Ltd. v. Ficeto*,
   677 F.3d 60 (2d Cir. 2012)..........................................................................................22

*Ackerman v. Oryx Commcn's, Inc.*,
   810 F.2d 336 (2d Cir. 1987).........................................................................................4

*Amchem Prods. v. Windsor*,
   521 U.S. 591 (1997)...............................................................................................10, 15

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,
   568 U.S. 455 (2013)....................................................................................................16

*Banyai v. Mazur*,
   205 F.R.D. 160 (S.D.N.Y. 2002) ...............................................................................11

*Bd. of Trs. of the AFTRA Ret. Fund. v. JPMorgan Chase Bank, N.A.*,
   269 F.R.D. 340 (S.D.N.Y. 2010) ...............................................................................17

*CalPERS v. ANZ Sec., Inc.*,
   _U.S. _, 137 S. Ct. 2042 (2017)...............................................................................5, 6

*City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*,
   752 F.3d 173 (2d Cir. 2014).......................................................................................23

*Consol. Rail Corp. v. Town of Hyde Park*,
   47 F.3d 473 (2d Cir. 1995).........................................................................................11

*Cosmas v. DelGiorno*,
   No. CV-94-1974, 1995 WL 62598
   (E.D.N.Y. Feb. 8, 1995)..............................................................................................19

*Dodona I, LLC v. Goldman, Sachs & Co.*,
   296 F.R.D. 261 (S.D.N.Y. 2014) ...............................................................................13

*Dura-Bilt Corp. v. Chase Manhattan Corp.*,
   89 F.R.D. 87 (S.D.N.Y. 1981) ...................................................................................15

*Fogarazzo v. Lehman Bros.*,
   232 F.R.D. 176 (S.D.N.Y. 2005) ...............................................................................10

- ii -

**Page**

*In re Barclays Bank PLC Sec. Litig.*,
No. 09 Civ. 1989 (PAC), 2016 U.S. Dist. LEXIS 75663
(S.D.N.Y. June 9, 2016)..................................................................................3, 10

*In re Deutsche Bank AG Sec. Litig.*,
No. 09 CV 1714 (DAB), 2016 U.S. Dist. LEXIS 96741
(S.D.N.Y. July 25, 2016)........................................................................2, 8, 9, 24

*In re Drexel Burnham Lambert Grp.*,
960 F.2d 285 (2d Cir. 1992)..................................................................................11

*In re Facebook, Inc.*,
312 F.R.D. 332 (S.D.N.Y. 2015) ..........................................................................21

*In re Facebook, Inc.*,
986 F. Supp. 2d 487 (S.D.N.Y. 2013)...................................................................18

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
574 F.3d 29 (2d Cir. 2009).............................................................................13, 14

*In re IndyMac Mortg.-Backed Sec. Litig*,
286 F.R.D. 226 (S.D.N.Y. 2012) ..........................................................................16

*In re Initial Pub. Offering Sec. Litig.*,
227 F.R.D. 65 (S.D.N.Y. 2004), *vacated on other grounds*,
471 F.3d 24 (2d Cir. 2006)....................................................................................10

*In re Inv'rs Funding Corp.*,
523 F. Supp. 563 (S.D.N.Y. 1980) .......................................................................20

*In re MF Glob. Holdings Ltd. Inv. Litig.*,
310 F.R.D. 230 (S.D.N.Y. 2015) .....................................................................12, 13

*In re Moody's Corp. Sec. Litig.*,
274 F.R.D. 480 (S.D.N.Y. 2011) ..........................................................................20

*In re NYSE Specialists Sec. Litig.*,
260 F.R.D. 55 (S.D.N.Y. 2009) ............................................................................15

*In re Organogenesis Sec. Litig.*,
241 F.R.D. 397 (D. Mass. 2007).........................................................................19

- iii -

**Page**

*In re Prestige Brands Holdings, Inc.*,
   No. 05 Civ. 6924 (CLB), 2007 U.S. Dist. LEXIS 66199
   (S.D.N.Y. Sept. 5, 2007) ...................................................................................................11

*In re Sanofi-Aventis Sec. Litig.*,
   293 F.R.D. 449 (S.D.N.Y. 2013) .......................................................................................19

*In re Terayon Commcn's Sys., Inc.*,
   No. C 00-01967 MHP, 2004 WL 413277
   (N.D. Cal. Feb. 23, 2004) ...................................................................................................19

*In re Vivendi Universal, S.A. Sec. Litig.*,
   242 F.R.D. 76 (S.D.N.Y. 2007) .........................................................................................14

*Korn v. Franchard Corp.*,
   456 F.2d 1206 (2d Cir. 1972) .............................................................................................12

*Marisol A. by Forbes v. Giuliani*,
   126 F.3d 372 (2d Cir. 1997) ..........................................................................................12, 13

*McMahan & Co. v. Wherehouse Entm't*, 65 F.3d 1044 (2d Cir. 1995),
   *aff'd sub nom. N.J. Carpenters Health Fund v. Rali Series 2006-QO1*,
   477 F. App'x 809 (2d Cir. 2012) ........................................................................................16

*Morrison v. Nat'l Austl. Bank Ltd.*,
   561 U.S. 247 (2010) ............................................................................................................21

*N.J. Carpenters Health Fund v. DLJ Mortg. Capital, Inc.*,
   No. 08 Civ 5653 (PAC), 2010 WL 1473288
   (S.D.N.Y. Mar. 29, 2010) ...................................................................................................20

*N.J. Carpenters Health Fund v. DLJ Mortg. Capital, Inc.*,
   No. 08 Civ 5653 (PAC), 2011 U.S. Dist. LEXIS 92597
   (S.D.N.Y. Aug. 16, 2011), *modified on other grounds*,
   2014 U.S. Dist. LEXIS 35326 (S.D.N.Y. Mar. 17, 2014) ......................................12, 13, 17

*N.J. Carpenters Health Fund v. DLJ Mortg. Capital, Inc.*,
   No. 08 Civ 5653 (PAC), 2014 U.S. Dist. LEXIS 35326
   (S.D.N.Y. Mar. 17, 2014) .................................................................................................3, 10

*N.J. Carpenters Health Fund v. Residential Capital, LLC*,
   272 F.R.D. 160 (S.D.N.Y. 2011) .......................................................................................16

**Page**

*NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*,
   693 F.3d 145 (2d Cir. 2012)...............................................................6, 20, 23, 25

*Orbit One Commc'ns, Inc. v. Numerex Corp.*,
   271 F.R.D. 429 (S.D.N.Y. 2010) .........................................................................1

*Pub. Emps. Ret. Sys. of Miss. v. Goldman Sachs Grp., Inc.*,
   280 F.R.D. 130 (S.D.N.Y. 2012) ...............................................................10, 15, 16

*Ret. Sys. of Miss. v. Merrill Lynch & Co.*,
   277 F.R.D. 97 (S.D.N.Y. 2011) ................................................................... *passim*

*Roach v. T.L. Cannon Corp.*,
   778 F.3d 401 (2d Cir. 2015)..............................................................................4, 16

*Robidoux v. Celani*,
   987 F.2d 931 (2d Cir. 1993)............................................................................11, 13

*Ross v. Warner*,
   No. 77 Civ 243, 1980 WL 1474
   (S.D.N.Y. Dec. 11, 1980)...................................................................................20

*Salim Shahriar v. Smith & Wollensky Rest. Grp., Inc.*,
   659 F.3d 234 (2d Cir. 2011)...............................................................................11

*SEC v. Tourre*,
   No. 10 Civ 3229 (KBF), 2013 WL 2407172
   (S.D.N.Y. June 4, 2013)......................................................................................22

*Teamsters Local 445 Freight Div. Pension Fund v. Bombardier, Inc.*,
   546 F.3d 196 (2d Cir. 2008)...............................................................................10

*Tsereteli v. Residential*,
   283 F.R.D. 199 (S.D.N.Y. 2012) .......................................................................16

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011).............................................................................................12

Page

## STATUTES, RULES AND REGULATIONS

15 U.S.C.
§77k ............................................................................................................. *passim*
§77k(e) ..............................................................................................................4, 16
§77k(e)(3) ..............................................................................................................20
§77l ......................................................................................................1, 10, 14, 17
§77l(a) ............................................................................................................20, 21
§77l(a)(2) ........................................................................................................16, 21
§77o ............................................................................................................. *passim*

Federal Rules of Civil Procedure
Rule 23 ......................................................................................................10, 11, 1
Rule 23(a) .................................................................................................... *passim*
Rule 23(a)(1) ..........................................................................................................11
Rule 23(a)(2) ..........................................................................................................12
Rule 23(a)(3) ....................................................................................................13, 14
Rule 23(a)(4) ..........................................................................................................14
Rule 23(b) .......................................................................................................10, 15
Rule 23(b)(3) ............................................................................................... *passim*
Rule 26(f) ..................................................................................................................6
Rule 23(g) ..........................................................................................................4, 18
Rule 26 ..................................................................................................................18

17 C.F.R.
§229.303 ...................................................................................................................7
§229.503 ...................................................................................................................7

## I.    PRELIMINARY STATEMENT

Frustrated by their failed attempts to defeat this case on the merits, defendants resort to inappropriate attacks on the adequacy of Lead Plaintiffs Kaess and Farruggio (collectively, "plaintiffs") and their counsel.  Defendants' latest smears are pure gamesmanship and violate a good faith agreement on a class certification discovery and briefing schedule.  Instead of abiding by the agreed-upon schedule, defendants ambushed plaintiffs with a preemptive Motion to Deny Class Certification, which distorts the record and casts false aspersions on the integrity of plaintiffs and their counsel.[1]  As demonstrated herein, defendants' Motion is meritless and should be denied.[2]

Setting aside defendants' deceitful rhetoric, this case is ideal for class treatment, and the Court should grant plaintiffs' motion.[3]  Defendants are liable under strict liability and negligence standards for violations of §§11, 12, and 15 of the Securities Act of 1933 (the "Securities Act")

---

[1]      Due to defendants' decision to ignore the agreed-upon schedule and preemptively move "to deny class certification," plaintiffs are forced to both oppose defendants' Motion and affirmatively move for certification.  Instead of burdening the Court with two sets of papers, plaintiffs are filing this single memorandum of law both (1) in support of their motion to certify the class; and (2) in opposition to defendants' Motion.

[2]      Plaintiffs' document production and deposition testimony, coupled with their detailed responses to defendants' Interrogatories and Requests for Admission, are more than adequate to address the relevant issues at class certification.  Plaintiffs have demonstrated they purchased U.S.-traded securities in the November 6, 2007 Offering (through HSBC New York) at $25 per share and sold at a loss at $24.85 per share.  ECF No. 151.  Defendants' continuous requests for additional information and statements from plaintiffs concerning other trades, made after corrective information related to the alleged misstatements entered the market, results in an unnecessary fishing expedition (of approximately five years of monthly brokerage statements maintained by Commerzbank in German language on backup microfiche film) and is pure gamesmanship and harassment by defendants of retired individual plaintiffs who have been cooperative and diligent throughout the discovery process.

[3]      Defendants' baseless assertion of "willful spoliation" is nonsense.  *See* Memorandum of Law in Support of Defendants' Motion to Deny Class Action Certification ("Defs.' Mem.") at 12.  As stated by plaintiff Kaess during his deposition, the monthly brokerage statements "shredded" by plaintiffs did not contain any handwriting or notations and could easily be produced through his broker HSBC.  Declaration of Charles A. Gilman in Support of Defendants' Motion to Deny Class Certification ("Gilman Decl."), Ex. C at 232:23-234:6.  On January 23, 2018, shortly after plaintiff Kaess' deposition, ***these HSBC statements were indeed produced to defendants and did not contain any new relevant information not already in the evidentiary record*** (nor have these documents been relied upon by defendants to deny class certification).  *See* Defs.' Mem. at 4 n.5; *Orbit One Commc'ns, Inc. v. Numerex Corp.*, 271 F.R.D. 429, 436, 444 (S.D.N.Y. 2010) (a party need not preserve "'multiple identical copies'" and thus there is no spoliation when there is "insufficient evidence that any relevant information has been destroyed").  Moreover, defendants have had every opportunity to serve subpoenas on any brokers they deemed relevant in this action but have not done so – despite being specifically told by plaintiffs the precise names of the brokers at HSBC and Commerzbank and account numbers held by plaintiffs.

based upon misstatements and omissions they made in connection with the November 6, 2007 and February 14, 2008 Offerings (together, the "Offerings").  At a time when Deutsche Bank's ("DB") credit-related exposures and capital position took on heightened importance to investors because of the dislocation in the credit markets, the Offering Materials[4] misrepresented and omitted material information relating to the investment risks attendant to the Offerings, including, *inter alia*, DB's credit market exposures, capital position, risk management practices, and compliance with applicable accounting and reporting standards.

With respect to the November 2007 Offering, the Court held the TCAC properly alleges "DB knew of trends or uncertainties that would be reasonably likely to have a material impact on DB" and defendants "failed to 'disclose[ the] known trend[s] and the manner in which [they] might reasonably be expected to materially impact [the] company's overall financial position.'" *In re Deutsche Bank AG Sec. Litig.*, No. 09 CV 1714 (DAB), 2016 U.S. Dist. LEXIS 96741, at *98 (S.D.N.Y. July 25, 2016).[5]  The Court also held the TCAC sufficiently alleged the November 2007 Offering and February 2008 Offering did not comply with Item 503 for failing to discuss "the most significant factors that make the offering speculative or risky." *Id.* at *99.  DB used these materially misstated and incomplete Offering Materials to raise approximately $2.5 billion from unsuspecting investors in the Offerings.  ¶2.

Plaintiffs now seek certification of this action as a class action pursuant to Fed. R. Civ. P. 23(a) and (b)(3).  As this Court and numerous others have observed, suits alleging Securities Act

---

[4]    The "Offering Materials" include, *inter alia*, the prospectus supplement filed on or about November 6, 2007 (the "November 2007 Prospectus Supplement"), the prospectus supplement filed on or about February 14, 2008 (the "February 2008 Prospectus Supplement"), and certain U.S. Securities and Exchange Commission ("SEC") filings incorporated by reference therein. *See, e.g.*, ¶2.  Paragraph references ("¶__" and "¶¶__") are to the Third Consolidated Amended Complaint for Violation of the Federal Securities Laws ("TCAC") (ECF No. 98).

[5]    Unless otherwise noted, citations and footnotes are omitted and emphasis is added throughout.

claims "'are "especially amenable" to class action certification and resolution,'" as they largely depend on establishing that omissions from and statements set forth in a common set of offering materials were materially misleading. *N.J. Carpenters Health Fund v. DLJ Mortg. Capital, Inc.*, No. 08 Civ. 5653 (PAC), 2014 U.S. Dist. LEXIS 35326, at \*11-\*12 (S.D.N.Y. Mar. 17, 2014).  Indeed, in a factually analogous action, Judge Crotty certified a class of preferred stock investors who asserted Securities Act claims against Barclays Bank PLC and others due to the bank's failure to disclose material facts regarding its subprime credit market exposures prior to an April 2008 public offering.  *See In re Barclays Bank PLC Sec. Litig.*, No. 09 Civ. 1989 (PAC), 2016 U.S. Dist. LEXIS 75663, at \*5-\*6 (S.D.N.Y. June 9, 2016).

Here, the Class readily meets the four prerequisites under Rule 23(a) – numerosity, commonality, typicality, and adequacy – as well as the predominance and superiority requirements of Rule 23(b)(3).

Numerosity is easily satisfied:  DB issued 32,200,000 and 70,000,000 shares in the November 2007 Offering and February 2008 Offering, respectively, to likely hundreds (if not thousands) of investors.  Commonality is also demonstrated, as all Class members' claims arise out of a common set of alleged misstatements and omissions contained in the Offering Materials. Common questions of law and fact, include whether: (i) the Offering Materials misstated or omitted material facts; and (ii) the Class was damaged as a result of defendants' actions.  Typicality is satisfied because Kaess and Farruggio, like other Class members, acquired the respective securities pursuant or traceable to the Offerings and were damaged thereby, and will make the same legal arguments, based on the same course of events and generalized evidence, as would absent Class members in proving defendants' liability.  And Kaess and Farruggio's adequacy to serve as Class Representatives is unassailable.  As husband and wife, these Class members have collectively

1383980_1

demonstrated their commitment to this action and the Class by, among other things, reviewing pleadings and other documents, communicating with counsel, providing documents, deposition testimony and detailed responses to defendants' discovery requests, and retaining qualified counsel with significant experience prosecuting complex securities matters.

Predominance is fulfilled under Rule 23(b)(3) because common questions of law or fact predominate over individual ones. Section 11 requires a plaintiff to show only that a defendant made a materially false and misleading statement or omission of fact – the proof of which will be the same for all Class members. Moreover, even though "certification pursuant to Rule 23(b)(3)" does not require "a finding that damages are measureable on a classwide basis," *Roach v. T.L. Cannon Corp*., 778 F.3d 401, 405 (2d Cir. 2015), here the class-wide methodology for calculating damages is ***fixed by statute*** and therefore common to all Class members. *See* Declaration of Eric I. Niehaus ("Niehaus Decl.") filed herewith, Ex. A ("Feinstein Report"), ¶¶19, 29-40.[6]  Finally, given the number of putative Class members and the commonality of issues and their associated proof, the class action device is superior to the alternative prospect of putative Class members pursuing thousands of direct actions based on their individual claims.

In addition, the Court should appoint Robbins Geller Rudman & Dowd LLP ("Robbins Geller") and Glancy Prongay & Murray LLP ("Glancy Prongay") as Class Counsel under Rule 23(g), because the firms have significant experience prosecuting complex securities matters such as this, and have dedicated substantial time and resources to prosecuting this action since 2009.

Accordingly, plaintiffs respectfully request that the Court: (1) certify this action as a class action, on behalf of a Class as defined in plaintiffs' Motion for Class Certification, filed herewith;

---

[6]     *See also* 15 U.S.C. §77k(e); *Ackerman v. Oryx Commcn's, Inc.*, 810 F.2d 336, 340 (2d Cir. 1987) (plaintiffs are "entitled to recover the difference between the original purchase price and the value of the stock at the time of the suit").

(2) appoint Kaess and Farruggio as Class Representatives;  (3) appoint Robbins Geller and Glancy

Prongay as Class Counsel; and (4) deny defendants' Motion in its entirety.

## II.    RELEVANT PROCEDURAL HISTORY

On December 22, 2016, just days after responses and objections were due for the DB

Defendants' First Set of Requests for Production, plaintiffs produced documents establishing their

relevant transactions and standing.[7]  Plaintiffs' trade confirmation demonstrated their purchase of

7,000 shares of the November 2007 securities at the offering price of $25 a share, through HSBC

Securities (USA), Inc.[8] on November 7, 2007, and their sale of their entire inventory of November

2007 shares on February 8, 2012 at $24.85, for a realized loss of $1,050 on those 7,000 shares.  *See*

ECF No. 136 at Page 7-8 of 16.

On February 8, 2017, two days before a discovery status conference, DB's counsel wrote to

the Court asserting that its client (a German bank) informed them that plaintiffs' German language

documents did not represent a sale of the November 2007 shares on February 8, 2012 at $24.85 per

share.  ECF No. 136.  Defendants also argued for dispositive relief of the February 2008 Offering,

citing the pending Supreme Court decision in *CalPERS v. ANZ Sec., Inc.*, _U.S. _, 137 S. Ct. 2042

(2017).  The Court stayed the action until *ANZ* was decided, and ordered a translation of plaintiffs'

transaction documents.  Upon receiving translation, defendants abandoned their assertion that the

February 8, 2012 transaction was not a sale, and pivoted to new issues concerning later purchases of

---

[7]    Defendants' sworn assertion that "Lead Plaintiffs did not produce a single document" in response to DB's First Set of Requests for Production is demonstrably false and should be stricken from the record.  Defs.' Mem. at 2; Gilman Decl., ¶7.  Plaintiffs produced the documents which were ultimately sufficient to establish plaintiffs' purchase and sale of the November 2007 shares to DB on December 22, 2016.  *See* February 9, 2017 letter from Niehaus to Judge Batts (filed under seal), Ex. A (Gilman e-mail to Niehaus).

[8]    In addition to being plaintiffs' broker for the purchase of the November 2007 securities at issue in this case, HSBC Securities (USA) is a U.S.-based underwriter that was allocated 93,000 shares for the November 2007 Offering.  *See* Niehaus Decl., Ex. B at S-59.  Plaintiffs' purchase of the 7,000 November 2007 shares did not settle within three business days because, as represented in the Offering Materials, the Offering shares were delivered for the first time when issued on November 15, 2007.  *Id.* at 1, S-6, S-60.

November 2007 Offering securities by plaintiffs that are not at issue in this case. The first of these later purchases occurred on February 19, 2009, more than a year after the Offering and after corrective disclosures identified in the complaint had been released to the public. ¶¶182-187. At the time of plaintiffs' later purchases, the corrective information had caused the November 2007 Offering securities to suffer catastrophic losses of over 60% of the Offering price. As such, plaintiffs represented in response to DB's discovery that these shares "are not at issue in this litigation and do not form the basis of Lead Plaintiffs' claim" and the purchases were "new investment decision[s] unrelated to" their relevant purchase of the securities in November 2007. Gilman Decl., Ex. I. This Court agreed and held:

> [L]ead Plaintiffs purchased shares at one price and sold for a minimal loss at another price. *It does not matter that [L]ead Plaintiffs subsequently bought other shares and made a profit*. A Motion to Dismiss is an inappropriate reason to prolong the litigation at this point. *Defendants' arguments can be addressed at the Summary Judgement stage*.

ECF No. 151.

After the Supreme Court issued the *ANZ* opinion, defendants moved to dismiss the February 2008 Offering. ECF No. 158. Upon carefully considering the parties' respective arguments, the Court held the case could proceed with plaintiffs representing purchasers of the February 2008 Offering under the class standing doctrine set forth in *NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, 693 F.3d 145 (2d Cir. 2012) ("*Goldman Sachs*"). ECF No. 163. After receiving the parties' Rule 26(f) report, the Court ordered that "Motions for Class Action Certification shall not be filed until *all class certification discovery has been completed* . . . includ[ing] both fact and expert class certification discovery." ECF No. 164. With this guidance, the parties then agreed on a class discovery schedule which staggered expert disclosures and depositions and contemplated expert discovery to close on April 20, 2018. Niehaus Decl., Ex. C.

- 6 -

Instead of communicating to plaintiffs their intent to deviate from this agreed-upon schedule, defendants filed a preemptive Motion to Deny Class Certification on February 21, 2018.

## III.    BRIEF STATEMENT OF FACTS

Between May 2007 and May 2008, DB issued over $5.4 billion in preferred securities via five separate offerings, pursuant to a Form F-3 Shelf Registration Statement filed with the SEC on October 10, 2006.  ¶2.  DB issued these securities using offering materials which materially misrepresented information concerning, *inter alia*, DB's exposure to subprime and nonprime residential mortgage markets, the value of DB's subprime and nonprime related assets, and the riskiness and quality of the mortgages underlying mortgage-backed securities.

This Court upheld claims with respect to two of DB's offerings, the first of which occurred on November 6, 2007, when DB issued 32,200,000 preferred securities at $25 per share, taking in a total of $805 million.  ¶2.  The second offering at issue occurred on February 14, 2008, when DB issued 70,000,000 preferred securities for $25 per share, totaling $1.75 billion.  Both Offerings incorporated by reference substantially the same documents.  *Id.*

SEC Regulations, including Items 303 and 503 of Regulation S-K, required the Offering Materials to include specific information for investors considering DB's securities.  ¶¶81-82.  Item 303 (17 C.F.R. §229.303) required DB to, *inter alia*, "describe" in the Offering Materials "any known trends or uncertainties that have had or that the registrant reasonably expects will have a material favorable or unfavorable impact on net sales or revenues or income from continuing operations."  ¶82.  Item 503 of Regulation S-K (17 C.F.R. §229.503) required the Offering Materials to include for investors a "discussion of the most significant factors that make the offering speculative or risky."  ¶81.

The Offering Materials failed to comply with these regulations.  By the time of the November 2007 Offering, various risks known within DB were already adversely impacting DB's

- 7 -

financial results and operations.  Unbeknownst to investors, DB was bracing for impact in the mortgage-backed securities market.

In violation of Items 303 and 503, the Offering Materials failed to disclose the true extent of the risks and uncertainties facing DB posed by its exposure to extremely risky nonprime and subprime assets.  DB had more than €20 billion in highly risky subprime/nonprime exposure to the U.S. real estate market by November 2007.  ¶¶101, 103-106, 119(b)-(d), 120.

Instead of disclosing such information, DB sought to counter its massive exposure to these assets through a $5 billion short position against the U.S. mortgage-related securities market.  ¶15.  DB relied on this $5 billion bet against the market to counteract the pain that was expected to be inflicted on DB when the "pigs" and "crap" in the market (and on DB's balance sheet) would "'massively blow[] up.'"  ¶¶13, 163, 166.

By the end of summer 2007, DB was offloading its subsidiaries' long positions in the mortgage-related securities market, because of the risks posed by those assets.  *Deutsche*, 2016 U.S. Dist. LEXIS 96741, at *27.  One of ***DB's*** head traders, Gregg Lippmann, specifically described the RMBS created by ***DB's own*** subsidiaries as "horrible."  ¶13.

The ABX and TABX indices, which tracked RMBS value and estimated the value of CDOs and other subprime assets, and which defendants closely monitored, demonstrated the value of DB's subprime/nonprime-backed securities and other related assets had also declined significantly prior to the Offerings.  ¶¶99-106.  By the time of the Offerings, other banks were publicly announcing tremendous write-downs of tens of billions of dollars to their own mortgage-related assets.  By November 2007, DB itself was just weeks shy of realizing internally a $4.5 billion loss on its mortgage-related holdings for the year 2007.  DB failed to disclose this information to investors in the Offerings.

- 8 -

DB also knew, but failed to disclose, the risks and uncertainties caused by DB's improper mortgage underwriting and securitization practices. By July 2006, 16 months before the November 2007 Offering, DB had acquired a number of loan originators, including MortgageIT, which issued mortgages that would be securitized by DB into RMBS. ¶174.

DB knew MortgageIT had issued billions of dollars in extremely risky mortgages that failed to comply with stated lending practices, and misrepresented borrowers' ability to repay the loans and their likelihood to default. ¶174. For the first half of 2007, DB had retained outside vendor Clayton Holdings, Inc. ("Clayton"), to review the quality of samples of loans that DB planned to securitize. ¶170. Clayton's reports revealed to DB nearly 35% of the mortgages submitted to Clayton for review did not comply with the stated underwriting guidelines and did not have compensating factors otherwise justifying approval of the loans. ¶171. Nonetheless, of the mortgages that Clayton found defective, **50%** were subsequently "waived" ***back into*** the RMBS by DB, while falsely representing that the loans complied with the stated underwriting guidelines. ¶¶17, 171.

Furthermore, prior to the Offerings, DB had grown exponentially its proprietary trading positions, which further exposed DB to substantial risk. ¶142. Indeed, by early 2008, DB's proprietary trading group (which in 2006 generated as much as **20%** of company-wide revenue) was leveraged around 300% and exposed DB to $30 billion in market risk. ¶¶138, 142.

After the Offerings, on January 14, 2009, DB announced it anticipated a loss after taxes of €4.8 billion for fiscal 2008 fourth quarter. ¶21. On February 5, 2009, DB further announced its first annual net loss since World War II of €5.7 billion for fiscal 2008. *Id.* For the full fiscal year 2008, DB recorded €5.3 billion in write-downs on debt securities and other mortgage-related products, including leveraged loans and loan commitments, RMBS/CDOs, monoline insurers, and commercial real estate. *Id.* By February 24, 2009, the date of first suit, the value of the November 2007 Offering

- 9 -

securities was $8.35 per share, while the February 2008 Offering securities traded at $8.99 per share. ¶¶22-23.

## IV.   ARGUMENT

To certify a class action under Rule 23, the Court must find, by a preponderance of the evidence, that each of the prerequisites under Rule 23(a), as well as one of the requirements of Rule 23(b) – here, Rule 23(b)(3) – are satisfied.  *See* Fed. R. Civ. P. 23; *Amchem Prods. v. Windsor*, 521 U.S. 591, 615 (1997); *Teamsters Local 445 Freight Div. Pension Fund v. Bombardier, Inc.*, 546 F.3d 196, 201-02 (2d Cir. 2008).  While the Court's analysis must be "rigorous," "[t]he Second Circuit requires a 'liberal' construction of Rule 23," especially in actions arising under the federal securities laws.  *See Fogarazzo v. Lehman Bros.*, 232 F.R.D. 176, 178-79 & n.8 (S.D.N.Y. 2005); *In re Initial Pub. Offering Sec. Litig.*, 227 F.R.D. 65, 90 & n.211 (S.D.N.Y. 2004) (same), *vacated on other grounds*, 471 F.3d 24 (2d Cir. 2006).

Suits alleging violations of §§11, 12, and 15 of the Securities Act "'are "especially amenable" to class action certification and resolution.'"  *N.J. Carpenters*, 2014 U.S. Dist. LEXIS 35326, at *11-*12; *Pub. Emps.' Ret. Sys. of Miss. v. Merrill Lynch & Co.*, 277 F.R.D. 97, 101 (S.D.N.Y. 2011).  This action is no exception.

In *Barclays*, Judge Crotty certified a class of preferred stock investors who alleged Securities Act claims that are very similar to those at issue here.  2016 U.S. Dist. LEXIS 75663, at *27.  Like here, the claims at issue in *Barclays* related to the bank's failure to disclose, in advance of a public offering that occurred in early 2008, the full extent of its subprime credit market positions, including its true exposure to CDO assets and assets backed by monoline insurance.  *Id*. at *7.  In granting the plaintiffs' motion for class certification, Judge Crotty held that the proposed class of Securities Act plaintiffs readily met the requirements of Rule 23(a) and Rule 23(b)(3).  *Id*. at *16-*17 & n.2. For the reasons discussed below, this action readily satisfies the requirements for certification under Rule

- 10 -

23.  All the requirements of Rule 23 are met, and defendants' personal attacks on plaintiffs and arguments concerning jurisdiction are erroneous and misplaced.

### A.      This Action Satisfies the Requirements of Rule 23(a)

There are four requirements under Rule 23(a) to certify a class: (1) the class must be "so numerous that joinder of all members is impracticable"; (2) there must be "questions of law or fact common to the class"; (3) "the claims or defenses of the representative parties" must be "typical of the claims or defenses of the class"; and (4) "the representative parties" must "fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a).  Each of the Rule 23(a) requirements is met here.

### 1.      The Class Is Sufficiently Numerous

Rule 23(a)(1) contemplates class certification where "the class is so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1); *see also In re Drexel Burnham Lambert Grp.*, 960 F.2d 285, 290 (2d Cir. 1992); *Banyai v. Mazur*, 205 F.R.D. 160, 163 (S.D.N.Y. 2002) (numerosity satisfied where "joinder of all members would make litigation needlessly complicated and inefficient").  The Second Circuit has held that "numerosity is presumed at a level of 40 members."  *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995); *accord Salim Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 252 (2d Cir. 2011).

Where claims are based on misstatements made in connection with a public offering of securities, courts may infer numerosity if a large number of shares are issued.  *See In re Prestige Brands Holdings, Inc.*, No. 05 Civ. 6924 (CLB), 2007 U.S. Dist. LEXIS 66199, at *9 (S.D.N.Y. Sept. 5, 2007) (numerosity satisfied because 32.2 million shares were purchased in IPO).  Here, DB issued 32,200,000 and 70,000,000 shares in the November 2007 Offering and February 2008 Offering, respectively.  The proposed Class likely contains hundreds, if not thousands, of investors, whose widespread distribution renders joinder impractical.  *Robidoux v. Celani*, 987 F.2d 931, 936

- 11 -

(2d Cir. 1993) ("[r]elevant considerations include . . . geographic dispersion of class members"). The Class is sufficiently numerous.

### 2. There Are Questions of Law and Fact Common to the Class

Commonality exists where "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2); *Marisol A. by Forbes v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997). Courts liberally construe this element, and "'"[e]ven a single [common] question'" will do" to satisfy Rule 23(a)(2). *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011); *see also id.* at 350 (commonality only requires a showing that the claims "depend upon a common contention . . . that it is capable of classwide resolution"); *In re MF Glob. Holdings Ltd. Inv. Litig.*, 310 F.R.D. 230, 235 (S.D.N.Y. 2015) (noting commonality requirement has been characterized as a "'low hurdle'").

Commonality is satisfied for Securities Act claims where "[t]he members of the proposed class were all allegedly damaged by the same alleged misstatements and omissions in the Offering Documents." *N.J. Carpenters Health Fund v. DLJ Mortg. Capital, Inc.*, No. 08 Civ. 5653 (PAC), 2011 U.S. Dist. LEXIS 92597, at *7 (S.D.N.Y. Aug. 16, 2011), *modified on other grounds*, 2014 U.S. Dist. LEXIS 35326 (S.D.N.Y. Mar. 17, 2014); *see also MF Glob.*, 310 F.R.D. at 235 (commonality is "'plainly-satisfied' in securities cases where 'the alleged misrepresentations in the prospectus relate to all the investors, [because the] existence and materiality of such misrepresentations obviously present important common issues'") (quoting *Korn v. Franchard Corp.*, 456 F.2d 1206, 1210 (2d Cir. 1972)).

Here, all members of the Class were harmed by the same misstatements and omissions in the Offering Materials. Accordingly, numerous common questions of law and fact exist, including, "'whether Defendants violated the Securities Act; and whether the Offering Documents issued by Defendants to the investing public omitted and/or misstated material facts.'" *N.J. Carpenters*, 2011

U.S. Dist. LEXIS 92597, at *7; *Merrill Lynch*, 277 F.R.D. at 106 ("whether the Offering Documents were false or misleading in one or more respects – are clearly susceptible to common answers"). The commonality element is met.

### 3.    Plaintiffs' Claims Are Typical of Those of the Class

To establish typicality under Rule 23(a)(3), a plaintiff must show that "'each class member's claim arises from the same course of events and [that] each class member makes similar legal arguments to prove the defendant's liability.'" *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 35 (2d Cir. 2009); *MF Glob.*, 310 F.R.D. at 235.  Typicality "tend[s] to merge" with commonality, "so that similar considerations animate analysis of Rules 23(a)(2) and (3)." *Marisol A.*, 126 F.3d at 376.  Like commonality, the typicality element is "'not demanding'" and "'does not require factual identity between the named plaintiffs and the class members, only that the disputed issues of law or fact occupy essentially the same degree of centrality to the named plaintiff's claim as to that of other members of the proposed class.'" *Dodona I, LLC v. Goldman, Sachs & Co.*, 296 F.R.D. 261, 267 (S.D.N.Y. 2014).  "When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met . . . ." *Robidoux*, 987 F.2d at 936-37.

Here, plaintiffs' claims and those of absent Class members arise out of a common course of events and the same material misstatements and omissions in the Offering Materials, are based on identical legal theories, and will be proven using the same evidence on a class-wide basis.[9]  *See N.J.*

---

[9]    Defendants take Kaess' testimony out of context to strangely claim that plaintiffs are suing for emotional distress. Defs.' Mem. at 18.  Defendants are wrong.  Plaintiffs sued for violations of federal securities laws and economic damages.  *See generally* TCAC.  That Kaess and Farruggio seek to hold defendants accountable for their alleged material misstatements and omissions (*see, e.g.*, Gilman Decl., Ex. C at 214:2-22) even though their damages may be relatively small, only further supports that these plaintiffs are adequate Class Representatives.  Ensuring that corporations are held responsible for wrongdoing even though losses to individual plaintiffs may be minimal is a bedrock principal of class action litigation.  Defendants' real argument is to further their already debunked theory that plaintiffs have not suffered an injury.  It should be ignored.  *See* §IV.D., *infra*.

*Carpenters*, 2011 U.S. Dist. LEXIS 92597, at *11-*12 (typicality satisfied where "[a]ll of the potential class members were allegedly damaged by the same actions by Defendants, and all will make similar legal arguments to support their claims").  The typicality requirement is satisfied.

### 4.    Plaintiffs Will Fairly and Adequately Protect the Interests of the Class

Rule 23(a)(4) requires a showing that "the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  "Adequacy 'entails inquiry as to whether: 1) plaintiff's interests are antagonistic to the interest of other members of the class and 2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation.'"  *Flag Telecom*, 574 F.3d at 35; *see also In re Vivendi Universal, S.A. Sec. Litig*., 242 F.R.D. 76, 85 (S.D.N.Y. 2007) (adequacy is satisfied if "the proposed class representatives have no 'interests [that] are antagonistic to the interest of the other members of the class'").  Courts have found that a showing of typicality under Rule 23(a)(3) provides strong evidence that the plaintiffs' interests are not antagonistic to those of the class.  *See, e.g*., *Merrill Lynch*, 277 F.R.D. at 109 ("A finding that a proposed class representative satisfies the typicality inquiry constitutes 'strong evidence that [its] interests are not antagonistic to those of the class . . . .'").

Here, Kaess and Farruggio have no interests that are adverse or antagonistic to the putative Class; instead, their interests are directly aligned with those of the putative Class.  Kaess and Farruggio, and members of the Class, all purchased securities pursuant or traceable to the Offerings, and have an interest in establishing defendants' liability under Securities Act §§11, 12, and 15 for the misstatements and omissions in the Offering Materials.  This alone constitutes strong evidence of adequacy.  *Merrill Lynch*, 277 F.R.D. at 109.

As husband and wife, Lead Plaintiffs have collectively carried out their duties to the Class and will continue to do so as Class Representatives.  Lead Plaintiffs have demonstrated their

- 14 -

1383980_1

commitment to monitoring the prosecution of this action on behalf of the Class by, *inter alia*, reviewing pleadings and other documents, communicating with counsel, providing documents, deposition testimony and detailed responses to defendants' discovery requests, and retaining qualified counsel with significant experience prosecuting complex securities matters.  Despite defendants' baseless assertions, Kaess and Farruggio have fully cooperated in the discovery process and demonstrated to the Court their adequacy as Class Representatives.  *See supra* nn.2, 3 & 7.

### B.    This Action Satisfies the Requirements of Rule 23(b)(3)

In addition to satisfying the requirements of Rule 23(a), plaintiffs must show "[a] class action may be maintained" by satisfying one of the provisions under Rule 23(b).  Fed. R. Civ. P. 23(b). Under Rule 23(b)(3), certification is appropriate where common questions of law or fact predominate over individual questions, and the class action is superior to other available means of adjudication.  Both requirements are satisfied here.

### 1.    Common Questions of Law and Fact Predominate

Predominance exists where the "'"proposed class[] [is] sufficiently cohesive to warrant adjudication by representation.'"'"  *Pub. Emps. Ret. Sys. of Miss. v. Goldman Sachs Grp., Inc.*, 280 F.R.D. 130, 136 (S.D.N.Y. 2012) (quoting *Amchem*, 521 U.S. at 623); *see also Merrill Lynch*, 277 F.R.D. at 110-11 ("'Class-wide issues predominate if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof.'").  "[P]redominance does not require a plaintiff to show that there are no individual issues."  *In re NYSE Specialists Sec. Litig.*, 260 F.R.D. 55, 75 (S.D.N.Y. 2009).  Neither does Rule 23(b)(3) "require that all questions of law or fact be common; it only requires that the common questions predominate over individual questions."  *Dura-Bilt Corp. v. Chase Manhattan Corp.*, 89 F.R.D. 87, 93 (S.D.N.Y. 1981).  Where, as here, "issues of liability are 'common to the

- 15 -

class, common questions are held to predominate over individual questions.'" *Tsereteli v. Residential*, 283 F.R.D. 199, 210 (S.D.N.Y. 2012); *see also Goldman*, 280 F.R.D. at 136.

Here, common questions of law or fact predominate over any individual questions affecting this action.  Plaintiffs and the Class will establish defendants' liability by proving that the Offering Materials misstated or omitted material facts, and that the Individual Defendants are "control persons" of DB.  *See* 15 U.S.C. §§77k, 77o.  The evidence needed to prove these claims will be the same for all Class members, a fact that strongly favors a finding of predominance.  *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 466-67 (2013).

Further, while Rule 23(b)(3) does not require plaintiffs to show that damages are capable of measurement on a class-wide basis, *see Roach*, 778 F.3d at 402, damages in this matter will be calculated using a common statutory formula set forth in the text of the Securities Act, and thus are especially susceptible to class-wide measurement.  *See* Feinstein Report, ¶¶19, 29-42; *see also* 15 U.S.C. §§77k(e), 77l(a)(2); *N.J. Carpenters Health Fund v. Residential Capital, LLC*, 272 F.R.D. 160, 167 (S.D.N.Y. 2011) ("'[t]he plain language of section 11(e) prescribes the method of calculating damages . . . and the statutory scheme requires courts to apply the prescribed formula in every section 11 case'") (quoting *McMahan & Co. v. Wherehouse Entm't*, 65 F.3d 1044, 1048 (2d Cir. 1995)), *aff'd sub nom. N.J. Carpenters Health Fund v. Rali Series 2006-QO1*, 477 F. App'x 809 (2d Cir. 2012).  Moreover, although the specific amount of damages may vary among Class members, it is well-established that "any differences in damages awards do not defeat class certification."  *In re IndyMac Mortg.-Backed Sec. Litig*, 286 F.R.D. 226, 235 (S.D.N.Y. 2012); *see also Roach*, 778 F.3d at 405 ("'the fact that damages may have to be ascertained on an individual basis is not sufficient to defeat class certification' under Rule 23(b)(3)") (collecting cases).

### 2.     A Class Action Is Superior to Other Litigation Methods

Rule 23(b)(3) also requires that the class action device be superior to other methods of adjudication.  Fed. R. Civ. P.23(b)(3).  Courts consider four factors in determining whether superiority is met: (1) the interests of members of the Class in individually controlling the prosecution of separate actions; (2) whether other litigation has already commenced; (3) "the desirability or undesirability of concentrating the litigation of the claims in [one] forum"; and (4) the difficulties likely to be encountered in management of a class action.  Fed. R. Civ. P. 23(b)(3).

"'[S]ecurities suits . . . easily satisfy the superiority requirement of Rule 23'" because they "'inflict economic injury on large numbers of geographically dispersed persons such that the cost of pursuing individual litigation to seek recovery is often not feasible.'"  *Merrill Lynch*, 277 F.R.D. at 120 (explaining that "courts in this District have observed [that] . . . '[m]ultiple lawsuits would be costly and inefficient, and the exclusion of class members who cannot afford separate representation would neither be "fair" nor an adjudication of their claims'").

Here, there is no conceivable interest by individual Class members to litigate their claims in separate actions.  Indeed, individualized litigation would be extremely costly and time-consuming, and the vast majority of putative Class members are unlikely to possess the resources or economic incentive to pursue their own individual actions.  *See Bd. of Trs. of the AFTRA Ret. Fund. v. JPMorgan Chase Bank, N.A.*, 269 F.R.D. 340, 355 (S.D.N.Y. 2010).

Finally, this Court is unlikely to face difficulties in managing this action as a class action. *See N.J. Carpenters*, 2011 U.S. Dist. LEXIS 92597, at *29 ("as securities actions such as this are commonly brought as class actions, there does not seem to be any particular difficulty in administering such an action").  Class actions predicated on federal securities law claims, particularly those arising under §§11, 12, and 15 of the Securities Act, are relatively simple to

- 17 -

manage because they focus solely on the existence of material misrepresentations and omissions, involve damages calculated according to statutory formulas, and do not require proof of scienter, reliance or loss causation. *See In re Facebook, Inc.*, 986 F. Supp. 2d 487, 506 (S.D.N.Y. 2013) ("Neither scienter, reliance nor loss causation is an element of [§]11 . . . claims."). Accordingly, the superiority requirement is satisfied.

### C. Class Counsel Satisfies Rule 23(g)

Plaintiffs also seek appointment of Robbins Geller and Glancy Prongay as Class Counsel pursuant to Rule 23(g). Under Rule 23(g), the Court must consider counsel's work in investigating and identifying claims in the action; counsel's experience with complex class actions and the types of claims asserted; counsel's knowledge of the applicable law; and the resources counsel will commit to the case. *See* Fed. R. Civ. P. 23(g).

Robbins Geller and Glancy Prongay meet this test. The firms, both individually and collectively, possess significant experience prosecuting complex securities class actions to successful resolution. *See* Niehaus Decl., Exs. D-E (firm résumés). They have specialized knowledge of the federal securities laws, and have committed substantial resources to prosecuting this action, as demonstrated through their efforts in, *inter alia*, investigating and drafting the complaints, opposing defendants' multiple motions to dismiss, facilitating plaintiffs' discovery responses and seeking class certification.[10]

---

[10]    Defendants' ad hominem attacks on plaintiffs' counsel's adequacy are completely meritless. Defs.' Mem at 19-21. Defendants' litany of alleged misdeeds are either entirely fabricated (*i.e.*, that plaintiffs have produced "nothing" to show where they purchased the shares at issue, *see* n.7, *supra*), have no legal basis or relevancy (*i.e.*, the claim that counsel "blocked" Mr. Feinstein's testimony regarding issues outside the scope of his report, which is not discoverable under Fed. R. Civ. P. 26, and for which defendants have never moved to compel), or have already been deemed irrelevant by the Court (*i.e.*, defendants' recycled arguments regarding Belmont and the amount of plaintiffs' damages (*see* ECF No. 151; §IV.D., *infra*).

### D.      Plaintiffs Have a Legally Recognizable Injury

Disregarding the Court's prior holding specifically rejecting their argument and finding that "Defendants' arguments can be addressed at the Summary Judgement stage" (ECF No. 151), defendants rehash their "net-gainer" argument by pointing to plaintiffs' later transactions unrelated to this action to suggest plaintiffs are inadequate Class Representatives with atypical claims. Defs.' Mem. at 13-16.  Defendants' argument should again be rejected.  March 27, 2017 Niehaus letter (filed under seal) at 3-5.  Plaintiffs allege claims relating to their purchase of 7,000 shares in the November 2007 Offering. ¶29.  As the Court has already recognized, any subsequent purchases are unrelated to this lawsuit as they: (1) occurred more than a year after the November 2007 Offering; (2) occurred after the corrective information had been made public; (3) and constituted new investment decisions unrelated to plaintiffs' purchase of the 7,000 shares in the November 2007 Offering that form the basis of their claims in this case.  ECF No. 151.  Long after all alleged corrective information had entered the market, plaintiffs sold their 7,000 shares for a loss at $24.85 per share.

Kaess testified he made the subsequent transactions to "protect those investments" by "buying also at lower rates to compensate."  Gilman Decl., Ex. C at 61:7-13.[11]  These post-disclosure transactions are an averaging down strategy which "[t]he courts have recognized that the use of such an investment strategy does not create an atypical defense . . . in determining whether a class should be certified."  *Cosmas v. DelGiorno*, No. CV-94-1974, 1995 WL 62598, at *4 (E.D.N.Y. Feb. 8, 1995) (collecting cases); *In re Sanofi-Aventis Sec. Litig.*, 293 F.R.D. 449, 455 (S.D.N.Y. 2013) ("'it

---

[11]    Defendants' baseless accusations here are inapposite and dwarfed in comparison to the circumstances in *In re Terayon Commcn's Sys., Inc.*, No. C 00-01967 MHP, 2004 WL 413277 (N.D. Cal. Feb. 23, 2004), and *In re Organogenesis Sec. Litig.*, 241 F.R.D. 397 (D. Mass. 2007).  Both cases involved undisclosed securities transactions relevant to the plaintiffs' claims – along with criminal or market manipulation allegations asserted against plaintiffs and/or its counsel.  Here, based on the allegations in the TCAC, the only transaction required to be disclosed under the PSLRA was the November 7, 2007 purchase of 7,000 November 2007 Offering shares.  Plaintiffs in this case have not misrepresented anything.

- 19 -

1383980_1

would be improper to offset gains that the plaintiff recovers after the fraud becomes known against losses caused by the revelation of the fraud if the stock recovers value for completely unrelated reasons'"); *In re Moody's Corp. Sec. Litig.*, 274 F.R.D. 480, 488 (S.D.N.Y. 2011) ("the strategy of cost averaging down is a common investment strategy" that does not render a class representative inadequate).

Defendants' Motion also incorrectly assumed the proposed Class definition would include the words "regardless of the date of purchase." Defs.' Mem. at 14. But no such phrase exists in the Class definition.[12]

Finally, defendants insist that interest payments plaintiffs expected to receive when they purchased their shares serve to offset their losses. Defs.' Mem. at 15-16. But, plaintiffs' §11 damages are determined under the statutory formula of offering price minus sales price, which does not consider interest payments. 15 U.S.C §77k(e)(3); Feinstein Report, ¶¶29-32. Even if plaintiffs were assessing the securities' value at the time of suit for §11 purposes, the receipt of all interest payments which were expected when the shares were purchased does not constitute a gain on the investment. *Goldman Sachs*, 693 F.3d at 166; *N.J. Carpenters Health Fund v. DLJ Mortg. Capital, Inc.*, No. 08 Civ. 5653 (PAC), 2010 WL 1473288, at *5 (S.D.N.Y. Mar. 29, 2010) (rejecting defendants' argument that holder of RMBS certificate that continued to receive monthly payments had no injury as "too cramped a reading of damages"). Although income received may be relevant to the rescission remedy under §12(a), plaintiffs' interest payments are likewise irrelevant to

---

[12]    Defendants' citation to *Ross v. Warner*, No. 77 Civ. 243, 1980 WL 1474, at *10 (S.D.N.Y. Dec. 11, 1980), stands for the unremarkable proposition that damages cannot be awarded "[f]or those shares purchased after the original suit was filed." Shares purchased after the filing of this lawsuit may likewise be disregarded. Similarly, defendants omit key language from the holding in *In re Inv'rs Funding Corp.*, 523 F. Supp. 563, 566 (S.D.N.Y. 1980), which only excluded damages if the purchaser profited overall "from such [false] statements." Here, plaintiffs did not sell until after the omitted information was disclosed and could not have gained from defendants' misstatements and omissions.

damages under §12(a) as they "no longer own[] the security."  15 U.S.C §77l(a)(2); Feinstein Report, ¶¶41-42.

E.    **Plaintiffs' Purchase in the November 2007 Offering Satisfies *Morrison***

Unlike *Morrison v. Nat'l Austl. Bank Ltd.*, this is not a case that involves "'(1) *foreign* plaintiffs . . . suing (2) a *foreign* issuer in an American court for violations of American securities laws based on securities transactions in (3) *foreign* countries.'"  561 U.S. 247, 283 n.11 (2010) (Stevens, J., concurring in the judgment) (emphasis in original).  The issuer, defendant Deutsche Bank Capital Funding Trust X, is a Delaware statutory trust with its principal place of business located in New York.  Niehaus Decl., Ex. B at S-4; ECF No. 167, ¶36.  The November 2007 Offering was conducted in the United States pursuant to offering documents filed with the SEC.  *See* Niehaus Decl., Ex. F at i, F-141.  The underwriters that distributed the securities are U.S. investment banks.  *See* Niehaus Decl., Ex. B at S-59–S-60 (listing banks).  The securities were intended to be and were in fact traded on the New York Stock Exchange.  Niehaus Decl., Ex. B at S-10; Feinstein Report, ¶23.  There is no evidence that the securities in the November 2007 Offering were listed on any exchange outside the United States.  This alone is sufficient to demonstrate the domesticity of plaintiffs' purchase in the November 2007 Offering, as plaintiffs "'participated in a strictly U.S. IPO of a U.S. company in order to receive shares registered in the United States with the SEC that would trade exclusively on an American exchange.'"  *In re Facebook, Inc.*, 312 F.R.D. 332, 351 (S.D.N.Y. 2015).

In addition, plaintiffs' trade confirmation shows they purchased 7,000 shares in the November 2007 Offering on November 7, 2007 through their brokerage account maintained in the United States with HSBC Securities (USA) Inc., an underwriter in the Offering, located at 452 Fifth Avenue, New York, New York.  ECF No. 136 at Page 7 of 16.  Matt Morea, plaintiffs' advisor and account executive at HSBC, was also located in New York.  Gilman Decl., Ex. C at 25:10-17, 31:7-

- 21 -

10.   Mr. Morea's name appears on trade confirmations, including for plaintiffs' purchase in the November 2007 Offering, in which "Matt" enclosed the prospectus for the Offering.  ECF No. 136 at Pages 6-7 of 16.  Plaintiffs' purchase was then paid for in U.S. Dollars with funds from their account at HSBC on the settlement date.  These facts also sufficiently demonstrate that plaintiffs' purchase was domestic.  *See SEC v. Tourre*, No. 10 Civ. 3229 (KBF), 2013 WL 2407172, at \*12 (S.D.N.Y. June 4, 2013); *Absolute Activist Master Value Fund, Ltd. v. Ficeto*, No. 09 Civ. 8862 (GBD), 2013 WL 1286170, at \*17 (S.D.N.Y. Mar. 28, 2013) (securities traded through a broker located in the United States were "domestic transactions"); *see also Absolute Activist Value Master Fund Ltd. v. Ficeto,* 677 F.3d 60, 70 (2d Cir. 2012) (examples of the types of allegations that might satisfy the test for what qualifies as a domestic securities transaction include "facts concerning the formation of the contracts, the placement of purchase orders, the passing of title, or the exchange of money").

Every piece of evidence demonstrates plaintiffs' purchase in the November 2007 Offering occurred in the United States, and defendants provide zero evidence suggesting otherwise. Plaintiffs' discovery responses have ***always*** maintained (correctly) that they did not reside in the United States at the time of their purchase in the November 2007 Offering.  Gilman Decl., Ex. I at 10.  But, plaintiffs' residency is inconsequential.  *Absolute Activist*, 677 F.3d at 69 ("'[a] purchaser's citizenship or residency does not affect where a transaction occurs; a foreign resident can make a purchase within the United States, and a United States resident can make a purchase outside the United States'").

Moreover, that plaintiffs' expert, Dr. Feinstein, testified he was unaware of where plaintiffs' purchase in the November 2007 Offering took place is not evidence that the purchase took place outside the United States.  *See* Defs.' Mem. at 17.  Dr. Feinstein simply never made such an assessment, as it was outside the scope of his report.  Gilman Decl., Ex. N at 85:4-10.  The same can

- 22 -

1383980_1

be said for Dr. Feinstein's testimony that the November 2007 Offering securities traded outside the United States, which was also outside the scope of his report.  The Offering Materials  show that the securities were intended to be traded on a market *inside* the United States, and were in fact traded on a U.S. market.  Niehaus Decl., Ex. B at S-10; Feinstein Report, ¶23 ("Following their respective offerings, the Preferred Securities traded on the New York Stock Exchange . . . .").  Dr. Feinstein's comment that they were eligible to trade outside the United States is not evidence that they actually *did* trade on markets outside the United States, and defendants offer none.[13]

Defendants cite no cases where, as here, a plaintiff purchasing in a U.S. public offering by a U.S. issuer through a U.S. broker in an account located in the United States did not satisfy *Morrison*.[14]  As the evidence demonstrates, plaintiffs' purchase in the November 2007 Offering occurred domestically and therefore in accordance with *Morrison*, defendants' Motion should be denied.

## F.    This Court Has Already Correctly Found that Class Standing Applies

The Court has already held that "Kaess and Farruggio have class standing for the 2008 Offerings under *NECA-IBEW [Health] & Welfare Fund v. Goldman Sachs & Co.*, 693 F.3d 145 (2d Cir. 2012)."  ECF No. 163.  Plaintiffs have class standing to represent purchasers in the February 2008 Offering because they (1) "'suffered some actual . . . injury as a result of the putatively illegal conduct of the defendant'" and (2) the conduct implicated "'the same set of concerns' as the conduct alleged to have caused injury to" purchasers in the February 2008 Offering.  *Goldman Sachs*, 693

---

[13]    Taken as a whole, defendants' line of questioning is ambiguous.  A foreign person outside the United States can buy or sell a U.S. security on a U.S. market, but that does not mean the transaction occurred on a market outside the United States, as defendants suggest.

[14]    Defendants' case law is readily distinguishable.  Defendants cite *City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173, 180 (2d Cir. 2014), for the proposition that listing on a domestic exchange is not enough to establish domesticity.  But that case involved a foreign-issued security purchased on a foreign exchange that was merely cross-listed on a domestic exchange.  *Id.*  Here there is no evidence that the securities at issue were listed anywhere outside the United States.

F.3d at 162.  The Court reached its decision after hearing argument on this issue from defendants both in briefing and at oral argument, holding "under these circumstances, it seems to me that the 2007 plaintiffs three months later can represent the 2008 plaintiffs because it was omissions that were lacking in 2007, lacking in 2008." ECF No. 166 at 35:14-21.  There is absolutely no reason for the Court to reconsider its holding.

Contrary to defendants' unsupported suggestion, the class standing analysis is not impacted by whether or not plaintiffs purchased February 2008 Offering securities at some point after this lawsuit was filed, only whether plaintiffs' injury in the November 2007 Offering implicates the same set of concerns as the conduct that caused injury to purchasers in the February 2008 Offering. Plaintiffs met that standard.  First, the November 2007 and February 2008 Offering Materials incorporated by reference virtually the same misleading SEC filings (*see* ¶2) and failed to contain disclosures required under Items 303 and 503 of Regulation S-K.  *See, e.g.*, *Deutsche Bank*, 216 U.S. Dist. LEXIS 96741, at *98-*100.  Second, plaintiffs suffered an injury.  Defendants' attempt to re-litigate standing by again claiming plaintiffs do not have an injury with respect to their purchase of securities in the November 2007 Offering has already been rejected by the Court.  *See* §IV.D., *supra*; ECF No. 151.

Defendants' claim that the Court should reconsider its holding because plaintiffs later purchased securities sold in the February 2008 Offering for a purported profit is similarly baseless. Defendants offer no case law and make no argument regarding why or how plaintiffs' purchase of those securities might affect the Court's class standing reasoning.  Nor could they, as plaintiffs' well-after-the-fact purchase of the February 2008 Offering securities is wholly irrelevant, as it occurred long after the corrective information relating to the misstatements alleged in the TCAC entered the market.  *See* Gilman Decl., ¶17 (describing 431 pages of HSBC brokerage statements produced to

- 24 -

defendants, which reflect that at no time through at least October 2009 did plaintiffs hold securities from the February 2008 Offering). Plaintiffs' later purchase therefore constitutes a new investment decision made well *after* the misstatements in the Offering Materials became known. *See* §IV.D., *supra*. And as defendants acknowledge, plaintiffs have not asserted any individual claims as to the February 2008 Offering. Defs.' Mem. at 24. Plaintiffs' purchase of the February 2008 Offering securities is therefore irrelevant to this litigation and class certification.[15] Accordingly, plaintiffs have class standing under *Goldman Sachs* to represent purchasers in both offerings, as the Court has already found.

## V.   CONCLUSION

For the foregoing reasons, defendants' Motion should be denied, and plaintiffs respectfully request the Court: (1) certify this action as a class action pursuant to Rules 23(a) and 23(b)(3); (2) appoint Kaess and Farruggio as Class Representative(s); and (3) appoint Robbins Geller and Glancy Prongay as Class Counsel.

DATED: March 7, 2018                     Respectfully submitted,

                                         ROBBINS GELLER RUDMAN
                                            & DOWD LLP
                                         LUCAS F. OLTS
                                         ERIC I. NIEHAUS
                                         CHRISTOPHER D. STEWART
                                         KEVIN S. SCIARANI
                                         KEVIN A. LAVELLE


                                         s/ ERIC I. NIEHAUS
                                         ERIC I. NIEHAUS

---

[15]    Plaintiffs have been wholly forthcoming with their position on this issue. Defendants' claims of deception are flatly wrong and totally irrelevant. If defendants truly believed plaintiffs' transactions in those securities were relevant, they could have subpoenaed or moved to compel the production of documents concerning those transactions. They have done neither.

655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
lolts@rgrdlaw.com
ericn@rgrdlaw.com
cstewart@rgrdlaw.com
ksciarani@rgrdlaw.com
klavelle@rgrdlaw.com

ROBBINS GELLER RUDMAN
   & DOWD LLP
SAMUEL H. RUDMAN
58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)
srudman@rgrdlaw.com

GLANCY PRONGAY & MURRAY LLP
BRIAN P. MURRAY
LEE ALBERT
GARTH A. SPENCER
230 Park Avenue, Suite 530
New York, NY  10169
Telephone:  212/682-5340
212/884-0988 (fax)
bmurray@glancylaw.com
lalbert@glancylaw.com
gspencer@glancylaw.com

Co-Lead Counsel for Plaintiffs

- 26 -

KESSLER TOPAZ MELTZER & CHECK, LLP
ANDREW L. ZIVITZ
SHARAN NIRMUL
RICHARD A. RUSSO, JR.
MICHELLE M. NEWCOMER
JONATHAN NEUMANN
280 King of Prussia Road
Radnor, PA  19087
Telephone:  610/667-7706
610/667-7056 (fax)
azivitz@ktmc.com
snirmul@ktmc.com
rrusso@ktmc.com
mnewcomer@ktmc.com
jneumann@ktmc.com

Additional Counsel for Plaintiffs

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 7, 2018, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I caused to be mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on March 7, 2018.

s/ ERIC I. NEIHAUS
ERIC I. NIEHAUS

ROBBINS GELLER RUDMAN
   & DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA  92101-8498
Telephone:  619/231-1058
619/231-7423 (fax)

E-mail:  ericn@rgrdlaw.com

1383980_1

# Mailing Information for a Case 1:09-cv-01714-DAB In Re Deutsche Bank AG Securities Litigation

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Mario Alba , Jr**
  malba@rgrdlaw.com,e_file_ny@rgrdlaw.com,e_file_sd@rgrdlaw.com,drosenfeld@rgrdlaw.com

- **Lee Albert**
  lalbert@glancylaw.com

- **Andrew J. Brown**
  andrewb@rgrdlaw.com,nhorstman@rgrdlaw.com,ldeem@rgrdlaw.com

- **Charles Alan Gilman**
  cgilman@cahill.com,mmcloughlin@cahill.com,nmarcantonio@cahill.com,managingattorney@cahill.com,MA@cahill.com

- **Deborah R Gross**
  DGross@kcr-law.com,JHannigan@kcr-law.com

- **Eva Hromadkova**
  evah@murrayfrank.com

- **David George Januszewski**
  managingattorney@cahill.com,MA@cahill.com,djanuszewski@cahill.com

- **Jay B. Kasner**
  jkasner@skadden.com

- **Kevin A. Lavelle**
  klavelle@rgrdlaw.com

- **Matthew Montgomery**
  mattm@csgrr.com

- **Brian Philip Murray**
  bmurray@glancylaw.com

- **Scott D. Musoff**
  smusoff@skadden.com,aviva.nusbaum@skadden.com,emma.gardner@skadden.com

- **Eric I. Niehaus**
  ericn@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Sharan Nirmul**
  snirmul@ktmc.com,dpotts@ktmc.com,jenck@ktmc.com,ahankins@ktmc.com,mswift@ktmc.com

- **Lucas F. Olts**
  lolts@rgrdlaw.com,karenc@rgrdlaw.com,e_file_sd@rgrdlaw.com,susanw@rgrdlaw.com

- **Darren J. Robbins**
  e_file_sd@rgrdlaw.com

- **David Avi Rosenfeld**
  drosenfeld@rgrdlaw.com,e_file_ny@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Samuel Howard Rudman**
  srudman@rgrdlaw.com,e_file_ny@rgrdlaw.com,mblasy@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Kevin S. Sciarani**
  ksciarani@rgrdlaw.com,tdevries@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Christopher D. Stewart**
  cstewart@rgrdlaw.com,karenc@rgrdlaw.com,e_file_sd@rgrdlaw.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

```
Harry         J. Weiss
450 Fifth Street, N.W.
Mail Stop 4-2
Washington, DC 20549
```