UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In re DEUTSCHE BANK AG SECURITIES LITIGATION | : | Master File No. 1:09-cv-01714-DAB |
| | : | CLASS ACTION |
| This Document Relates To: | : | REPLY MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION |
| ALL ACTIONS. | : | |

# TABLE OF CONTENTS

**Page**

I. Plaintiffs Have Fully Cooperated in Discovery and Produced All Relevant Documents ....1

II. Plaintiffs Have Established a Loss and an Injury-in-Fact....4

III. Because There Is Nothing Extraterritorial About Plaintiffs' Purchase in the November 2007 Offering, *Morrison* Is Not Implicated....5

IV. Defendants Provide No Reason for the Court to Reconsider Its Decision that Plaintiffs Have Class Standing for the February 2008 Offering....8

V. Maria Farruggio Is an Adequate Class Representative....9

VI. Conclusion ....10

## TABLE OF AUTHORITIES

**Page**

**CASES**

*Absolute Activist Master Value Fund Ltd. v. Ficeto*,
677 F.3d 60 (2d Cir. 2012)....................6, 7

*Absolute Activist Master Value Fund, Ltd. v. Ficeto*,
No. 09 Civ. 8862 (GBD), 2013 WL 1286170
(S.D.N.Y. Mar. 28, 2013) ....................6

*AIG Glob. Sec. Lending Corp. v. Banc of Am. Sec. LLC*,
646 F. Supp. 2d 385, 403 (S.D.N. Y. 2009), *aff'd*, 386 F. App'x 5
(2d Cir. 2010)....................4

*City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*,
752 F.3d 173 (2d Cir. 2014)....................6

*In re Facebook, Inc.*,
312 F.R.D. 332 (S.D.N.Y. 2015) ....................6

*In re Initial Pub. Offering Sec. Litig.*,
671 F. Supp. 2d 467 (S.D.N.Y. 2009)....................4

*In re Petrobras Sec. Litig.*
862 F.3d 250 (2d Cir. 2017)....................6

*In re Pfizer Sec. Litig.*,
282 F.R.D. 38 (S.D.N.Y. 2012) ....................2, 5

*In re Royal Bank of Scot. Grp. PLC Sec. Litig.*,
765 F. Supp. 2d 327 (S.D.N.Y. 2011)....................6

*Koss v. Wackenhut Corp.*,
No. 03 Civ. 7679 (SGR), 2009 WL 928087
(S.D.N.Y. Mar. 30, 2009) ....................3

*McDaniel v. Cty. of Schenectady*,
No. 1:04cv757, 2005 WL 1745566
(N.D.N.Y. July 21, 2005)....................3

*Morrison v. Nat'l Austl. Bank Ltd.*,
561 U.S. 247 (2010)....................5, 6, 7

*N.J. Carpenters Health Fund v. DLJ Mortg. Capital, Inc.*,
No. 08 Civ 5653 (PAC), 2010 WL 1473288
(S.D.N.Y. Mar. 29, 2010)

**Page**

*NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*,
693 F.3d 145 (2d Cir. 2012)....................8

*Norman v. Arcs Equities Corp.*,
72 F.R.D. 502 (S.D.N.Y. 1976)....................4

*SEC v. Tourre*,
No. 10 Civ. 3229 (KBF), 2013 WL 2407172
(S.D.N.Y. June 4, 2013)....................6

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011)....................5

**SECONDARY AUTHORITIES**

Federal Rules of Civil Procedure
Rule 23....................1
Rules 23(a)....................10
Rule 23(b)(3)....................10
Rule 26....................2

Defendants attempt one last hail-mary (ECF No. 178 ("Defs.' Reply"); ECF No. 179 ("Defs.' Opp.") to defeat class certification by simply rehashing their baseless attacks on the adequacy of Lead Plaintiffs Kaess and Farruggio ("plaintiffs") and their counsel, Robbins Geller Rudman & Dowd LLP ("Robbins Geller") and Glancy Prongay & Murray LLP ("Glancy Prongay"). But despite their efforts to shift the claims of omissions in this case from Deutsche Bank and the underwriters to plaintiffs, defendants' arguments are more procedurally appropriate for a motion to compel (which they deliberately never brought, as any such motion would have been denied) than a motion to defeat class certification. The Court should certify the proposed Class.[1]

## I. Plaintiffs Have Fully Cooperated in Discovery and Produced All Relevant Documents

Defendants fail to rebut the arguments and evidence provided by plaintiffs which belies defendants' baseless claims of misconduct. Plaintiffs have remained committed to this litigation for nine years, produced all the relevant documents in their possession and control, and have testified that they are committed to representing the interests of the absent Class members in this case. Plaintiffs are more than adequate to serve as Class Representatives in this matter.

First, defendants continue to assert that plaintiffs have engaged in sanctionable spoliation. Such unsupported claims should be summarily rejected and admonished, as defendants offer no more than conclusory assertions and fail to even set forth the elements of a spoliation claim. The reason is obvious – defendants cannot point to a single piece of missing evidence that was allegedly spoliated. Plaintiffs produced the exact official copies of all of the purportedly spoliated documents

---

[1] Contrary to defendants' assertions, plaintiffs are certainly ***not*** "desperately asking the Court to kick the can" on a class certification ruling. Defs.' Reply at 5. Plaintiffs have been eagerly trying to file a class certification motion in this case for over a year now and had their present motion nearly ready for submission but for the agreed-upon schedule by the parties. *See* ECF Nos. 127, 134; Niehaus Decl. (ECF No. 177), Ex. C. As a result of defendants' gamesmanship, the Court is now forced to review more pages of briefing than necessary on class certification – much of which does not even address the Rule 23 elements at issue here.

(monthly brokerage statements) which were obtained directly from the best and original source, plaintiffs' broker HSBC Securities (USA) Inc.

Moreover, defendants have been in possession of these HSBC monthly brokerage statements for months –well before they filed their Motion. Tellingly, defendants do not attempt to argue how the monthly brokerage statements are relevant in any way, other than the fact that plaintiffs did not retain copies, and that they were subsequently produced from plaintiffs' broker. As such, defendants have not been prejudiced by this supplemental production and their attempt to use it as basis for denial of class certification is baseless.[2]

Second, defendants conflate routine discovery disputes between the parties with misconduct and accuse plaintiffs and their counsel of improperly withholding relevant evidence. The Federal Rules of Civil Procedure only require plaintiffs to produce non-privileged, relevant, non-duplicative evidence that is proportionate to the needs of the case. Fed. R. Civ. P. 26. Accordingly, a party's "demand," as defendants characterize it, is insufficient to require production of documents irrelevant to the remaining issues in the case. As an accommodation, plaintiffs attempted to compromise with defendants by meeting some of their demands, but stood on certain objections for specific categories of documents of specious relevance and other documents not in the possession or control of plaintiffs.

[2] Defendants also continue to cast false aspersions on plaintiffs' counsel. "When assessing the adequacy of counsel, courts are generally skeptical of defendants' ethical attacks on class counsel." *In re Pfizer Sec. Litig.*, 282 F.R.D. 38, 47 (S.D.N.Y. 2012). Such skepticism is warranted here, as defendants' assertions that plaintiffs' counsel hid "spoliation" from defendants is nonsense – as no relevant information was destroyed or improperly withheld. Mr. Kaess was entirely forthcoming during his deposition that his HSBC monthly statements could be obtained from HSBC. Declaration of Charles A. Gilman in Support of Defendants' Motion to Deny Class Certification ("Gilman Decl."), Ex. C at 233:18-21. Furthermore, defendants falsely represent that plaintiffs' counsel "instructed Kaess not to testify further on the subject at his deposition." Defs.' Reply at 2. Counsel did nothing of the sort, and as ethically obligated, merely instructed their client Kaess not to reveal confidential communications protected by the attorney-client privilege, after he had already provided ample testimony regarding his HSBC monthly statements. Gilman Decl., Ex. C at 93:19-95:9.

Defendants' position that they have not received all documents they requested from plaintiffs is contradictory given their assertion that class discovery was complete when they filed their Motion. Defs.' Reply at 1 n.1.[3] Indeed, defendants had ample time under the negotiated class certification discovery schedule to subpoena non-parties for the requested documents but deliberately chose not to.

Plaintiffs continue to have a good-faith basis for objecting to the production of documents relating to purchases of securities not at issue in this case. *See* Pltfs.' Mot./Opp. (ECF No. 176) at 1 n.2. Plaintiffs have made reasonable efforts to reach a resolution on all discovery disputes, notwithstanding defendants' claims to the contrary.[4] Defendants' failure to seek relief from the Court does not implicate otherwise – as defendants made a deliberate decision not to serve subpoenas on plaintiffs' brokers and/or file a motion to compel certain Commerzbank documents (unrelated to plaintiffs' purchase in the November 2007 Offering) and cannot now claim to be prejudiced for their failure to do so.[5]

---

[3] Defendants' nonsensical assertion that class discovery closed on January 26, 2018 is a complete fabrication and contrary to the agreed-upon schedule by the parties. Defendants never communicated in any way to plaintiffs that they were not submitting expert testimony in connection with class certification, nor did defendants convey they were done conducting class discovery. At most, defendants merely informed plaintiffs that they were willing to stipulate to some facts in lieu of Dr. Feinstein's report and deposition, but the parties never reached an agreement. Declaration of Eric I. Niehaus in Further Support of Plaintiffs' Motion for Class Certification ("Niehaus Reply Decl."), Ex. 1.

[4] By defendants' own standards, Deutsche Bank and the underwriters have engaged in serious discovery "misconduct" as they have stymied plaintiffs' discovery requests by failing ***for months*** to produce basic foundational documents such as organizational charts and board/committee materials to assist plaintiffs in identifying relevant document custodians, targeting ESI search terms and defining the scope of discovery. Niehaus Reply Decl., Exs. 2-3. Defendants' discovery "misconduct" forced plaintiffs to propose ESI search terms and custodians without the benefit of that information, which defendants now conveniently characterize as overbroad and "expansive." Defs.' Reply at 5 n.8. Defendants' blatant delay tactics in this litigation should be cautioned by this Court.

[5] Defendants try to equate plaintiffs, who have made a rightful assertion of timely objections to producing irrelevant or duplicate documents or a request to accommodate recent medical issues, to rejected proposed class representatives in other cases who engaged in potentially fraudulent or manipulative behavior, failed to appear at scheduled depositions or answer questions at depositions, disregarded court orders, or failed to timely serve responses to discovery – none of which occurred here. *See, e.g.*, *McDaniel v. Cty. of Schenectady*, No. 1:04cv757 GLS/RFT, 2005 WL 1745566, at *6 (N.D.N.Y. July 21, 2005) (plaintiff dismissed as a class representative for "fail[ing] on at least three occasions, to make an effort to appear for her deposition, without apology or explanation" and her "[p]ersistent refusals to comply with discovery orders"); *Koss v. Wackenhut Corp.*, No. 03 Civ. 7679 (SGR), 2009 WL 928087, at *7-*8

## II. Plaintiffs Have Established a Loss and an Injury-in-Fact

Defendants' assertion that by omitting the phrase "and who were damaged thereby" from the Class definition, plaintiffs have "acknowledge[d] that Kaess and Farruggio are not members of the class proposed in this action" is absurd. Defs.' Reply at 3. Plaintiffs excluded this language from their Class definition given that the "phrase is simply superfluous because an investor who is not damaged would not have a viable claim." *In re Initial Pub. Offering Sec. Litig.*, 671 F. Supp. 2d 467, 492 (S.D.N.Y. 2009). "It is therefore of little consequence that the class definition contains [or does not contain] the 'and were damaged thereby' phrase." *Id.* Furthermore, the Court has already found that plaintiffs have been sufficiently damaged under the applicable standing requirements and any attempt by defendants to re-litigate this issue should be ignored. ECF No. 151.

Notwithstanding the Court's holding, defendants continue to incorrectly argue that the interest/dividend payments plaintiffs received in connection with the November 2007 securities should be viewed as an offset to plaintiffs' losses – rendering plaintiffs "net-gainers" without actual damages. Defs.' Reply at 3-4. But defendants' repetition of this argument, without any authority, does not make it true. Indeed, defendants ignore plaintiffs' authority on this issue – which explicitly belies their assertion and holds that these interest/dividend payments are irrelevant to plaintiffs' stock loss claims. *See* Pltfs.' Mot./Opp. at 20. The receipt of interest payments that were expected at the time of purchase does not change the fact that plaintiffs suffered a cognizable loss of market value on the securities at issue. *See, e.g.*, *N.J. Carpenters Health Fund v. DLJ Mortg. Capital, Inc.*, No. 08 Civ 5653 (PAC), 2010 WL 1473288, at *4-*5 (S.D.N.Y. Mar. 29, 2010) (discussing, in the

(S.D.N.Y. Mar. 30, 2009) (plaintiffs were inadequate for failing to appear at deposition or timely serve responses to discovery request); *see also* Pltfs.' Mot./Opp. at 19 n.11. *Norman v. Arcs Equities Corp.*, 72 F.R.D. 502, 504-05 (S.D.N.Y. 1976), is peculiar and inapposite because there the court found a plaintiff pension fund inadequate because its beneficiary was paying for its litigation expenses and that the beneficiary either lied or failed to properly vet his attorneys.

context of fixed-income securities, the "legal presumption applicable in typical securities cases that shares are purchased for the purpose of investment and that their true value to the investor is the price at which they may later be sold" and distinguishing a "failure to realize cash-flow" case, *AIG Glob. Sec. Lending Corp. v. Banc of Am. Sec. LLC*, 646 F. Supp. 2d 385, 403 (S.D.N.Y. 2009), *aff'd*, 386 F. App'x 5 (2d Cir. 2010), from cases, such as the present case, "alleg[ing] a drop in market value").

Finally, defendants continue to try to distract the Court with transactions completely irrelevant to plaintiffs' claims. Plaintiffs ***never*** asserted individual claims for their latter purchases of shares in the November 2007 and February 2008 Offerings. The purchases of these securities after the first-filed complaint are clearly irrelevant to plaintiffs' typicality and constitute new investment decisions. Likewise, the February 19, 2009 purchase of the November 2007 securities, made after substantially all corrective information had entered the market, does not render plaintiffs atypical. *Pfizer*, 282 F.R.D. at 46. To the extent defendants believe those shares are relevant to the claims in this case, those transactions can be addressed at summary judgment, as this Court noted. ECF No. 151.[6]

## III. Because There Is Nothing Extraterritorial About Plaintiffs' Purchase in the November 2007 Offering, *Morrison* Is Not Implicated

*Morrison v. Nat'l Austl. Bank Ltd.*, 561 U.S. 247 (2010), and its progeny concern the extraterritorial application of U.S. securities laws. But there is nothing extraterritorial about the transaction at issue in this case. Defendants do not dispute that plaintiffs purchased the November 2007 securities directly in a public offering conducted in the United States by a U.S. issuer. Pltfs.'

[6] Defendants' last-ditch assertion that the February 19, 2009 purchase creates unique defenses should also be rejected. Determining the cut-off date for Class purchases in this matter applies equally to every proposed Class member and is thus a common issue "capable of classwide resolution . . . in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).

Mot./Opp. at 21. Nor do defendants dispute that the only exchange the November 2007 securities traded on was the New York Stock Exchange. *Id.*; Niehaus Decl., Ex. A (Feinstein Report), ¶23. Defendants themselves – who issued the securities at issue – do not claim (or provide any evidence) that they traded on any market outside the United States. Defs.' Reply at 5-6. None of defendants' purported authorities hold federal securities laws should not apply under these circumstances.[7] Accordingly, defendants' suggestion that federal securities laws do not apply to a U.S. public offering of securities by a U.S. issuer that traded on a U.S. exchange stretches *Morrison* far beyond its breaking point and should not be followed.

Moreover, the documentary evidence produced by plaintiffs (and wholly ignored by defendants) demonstrates that they purchased the November 2007 securities domestically. Pltfs.' Mot./Opp. at 21-22. Plaintiffs' trade confirmation shows they purchased the 7,000 shares at issue directly in the November 2007 Offering through their broker in New York, HSBC, which was also an underwriter in the Offering. *Id.* Plaintiffs purchased the securities on November 7, 2007, the date of the Final Prospectus Supplement, and the trade settled on November 15, 2007, the date at which the underwriters, who were also located in the United States, delivered the securities issued in the Offering. *Id.*; Niehaus Decl., Ex. B at I, S-6.[8] Defendants offer no explanation as to how the

---

[7] *See Morrison*, 561 U.S. at 251 (concerning ***foreign*** securities issued by a ***foreign*** company that traded on a ***foreign*** exchange); *In re Petrobras Sec. Litig.* 862 F.3d 250, 258 (2d Cir. 2017) (concerning debt securities offered by a ***foreign*** issuer that "***[did] not trade on any U.S. exchange***") (emphasis added); *City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173, 181 (2d Cir. 2014) (concerning "***foreign-issued*** shares on a ***foreign*** exchange" that were merely cross-listed on a U.S. exchange) (emphasis added); *In re Royal Bank of Scot. Grp. PLC Sec. Litig.*, 765 F. Supp. 2d 327, 339 (S.D.N.Y. 2011) (Batts, J.) (concerning ***foreign*** securities listed on a ***foreign*** exchange and specifically noting *Morrison* was dispositive as "***no*** U.S. public offering is present") (emphasis added). None of those circumstances are present here – the November 2007 securities were issued in a domestic offering by a domestic issuer and traded domestically. *See In re Facebook, Inc.*, 312 F.R.D. 332, 351 (S.D.N.Y. 2015) (*Morrison* satisfied in a "'U.S. IPO of a U.S. company'" of "'shares registered in the United States with the SEC that would trade exclusively on an American exchange'") (citation omitted).

[8] *See SEC v. Tourre*, No. 10 Civ. 3229 (KBF), 2013 WL 2407172, at *12 (S.D.N.Y. June 4, 2013); *Absolute Activist Master Value Fund, Ltd. v. Ficeto*, No. 09 Civ. 8862 (GBD), 2013 WL 1286170, at *17 (S.D.N.Y. Mar. 28, 2013) (securities traded through a broker located in the United States were "domestic transactions"); *see also Absolute Activist Master Value Fund Ltd. v. Ficeto*, 677 F.3d 60, 70 (2d Cir. 2012) ("facts concerning the formation of the

purchase of securities through a U.S. broker in an offering conducted in the United States by a U.S. issuer could be anything but a domestic transaction.

Defendants' attempts to sow doubt regarding the application of federal securities laws in this case are nothing more than red herrings. First, plaintiffs' sworn interrogatory responses and testimony have consistently maintained that plaintiffs did not reside in the United States at the time of purchase, Pltfs.' Mot./Opp. at 22, but that fact is irrelevant. *Absolute Activist*, 677 F.3d at 69.

Second, the New York Stock Exchange is the only exchange Dr. Feinstein identified the securities trading on in his report. Niehaus Decl., Ex. A, ¶23. Dr. Feinstein never testified that plaintiffs' purchase of the securities at issue took place on a market outside the United States; that was outside the scope of his report. Pltfs.' Mot./Opp. at 21-22. Nor did Dr. Feinstein testify that the November 2007 securities traded on any ***market*** outside the United States, and defendants have produced ***no*** evidence, or even themselves claimed, that they traded on any market outside the United States. *Id*. The fact that foreign persons outside the United States, like plaintiffs, could trade the November 2007 securities does not demonstrate, let alone prove, those trades were extraterritorial under *Morrison*. *Absolute Activist*, 677 F.3d at 69.

Third, that trades ***may*** have cleared, after the fact, through Euroclear, Clearstream and DTC, says nothing regarding the market the securities traded on and nothing about plaintiffs' trades (as defendants admit), and defendants cite no authority or case law holding that trade clearing activities are relevant to a *Morrison* inquiry. The federal securities laws apply to plaintiffs' purchase of the November 2007 securities.

---

contracts, the placement of purchase orders, the passing of title, or the exchange of money" indicate the location of a transaction).

## IV. Defendants Provide No Reason for the Court to Reconsider Its Decision that Plaintiffs Have Class Standing for the February 2008 Offering

Defendants' class standing argument in their Opposition/Reply is a rehash of their opening brief that adds no additional argument. Under the Second Circuit's class standing analysis in *NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, 693 F.3d 145, 162 (2d Cir. 2012), the only prong of the test that defendants challenge is the first, concerning whether plaintiffs suffered an injury. But, as this Court had already found, plaintiffs have suffered an injury with regard to the November 2007 Offering. ECF No. 151; §II, *supra*; Pltfs.' Mot./Opp. at 19-20. Defendants do not dispute the second prong, that their conduct implicates the same set of concerns for the November 2007 and February 2008 Offerings. Accordingly, as the Court has also already found, plaintiffs have class standing to represent damaged investors in the February 2008 Offering, and defendants offer no reason for the Court to reconsider that holding. Pltfs.' Mot./Opp. at 23; ECF No. 163; ECF No. 166 at 35:14-21.

Defendants' complaints regarding plaintiffs' long-after-the-fact purchase of February 2008 securities is yet another red herring. Defendants provide no reason why plaintiffs' purchase of the February 2008 securities at a time well after this lawsuit was filed is relevant to the issue of class standing, let alone relevant to this case. Indeed, the purchase is irrelevant for the reasons set forth in plaintiffs' opening memorandum. Pltfs.' Mot./Opp. at 24-25. As defendants agree, the February 2008 securities were purchased in plaintiffs' Commerzbank account, Defs.' Reply at 8, which was not opened until around August 2009. Gilman Decl., Ex. C at 52:2-9. Thus, plaintiffs' purchase of the February 2008 securities did not occur until after the corrective information in this case entered the market and after this lawsuit was initially filed. Pltfs.' Mot./Opp. at 24-25. As such, this later purchase constitutes a new investment decision completely unrelated to this lawsuit. *Id.*

As previously stated, had defendants thought the purchase of the February 2008 securities was truly relevant, they could have served a non-party subpoena on Commerzbank and/or moved to compel additional information concerning this transaction. They did neither and cannot now claim to be prejudiced for their failure to do so. Plaintiffs have class standing for the February 2008 Offering.

## V. Maria Farruggio Is an Adequate Class Representative

Maria Farruggio's adequacy to serve as a Class Representative is unassailable. As detailed in plaintiffs' opening Motion, Mrs. Farruggio and her husband, Mr. Kaess, have collectively demonstrated their commitment to this action and the Class by, among other things, reviewing pleadings and other documents, communicating with counsel, providing documents, deposition testimony and detailed responses to defendants' discovery requests, and retaining qualified counsel with significant experience prosecuting complex securities matters.

Despite Mrs. Farruggio's recent unanticipated health issues, which were timely and properly disclosed to defendants, she continues to demonstrate her commitment to the Class by corresponding with counsel and reviewing ongoing briefing in this matter. Moreover, as her husband recently testified, she is more than willing to travel to New York to sit for a deposition in this case after her health issues pass – but her testimony would only be duplicative of her husband's and would not add anything to the evidentiary record on class certification. Gilman Decl., Ex. C at 227:2-24. Unsatisfied with Mr. Kaess' testimony, defendants rushed to file their preemptive Motion and refused to give Mrs. Farruggio a reasonable time to recover from her medical condition before opportunistically characterizing her as an unavailable party/witness in this matter. Defendants' blatant gamesmanship is improper and should be rejected by this Court.

## VI. Conclusion

For the foregoing reasons, defendants' Motion should be denied, and plaintiffs respectfully request the Court: (1) certify this action as a class action pursuant to Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure; (2) appoint Kaess and Farruggio as Class Representative(s); and (3) appoint Robbins Geller and Glancy Prongay as Class Counsel.

DATED: March 21, 2018

Respectfully submitted,

ROBBINS GELLER RUDMAN
& DOWD LLP
LUCAS F. OLTS
ERIC I. NIEHAUS
CHRISTOPHER D. STEWART
KEVIN S. SCIARANI
KEVIN A. LAVELLE

s/ ERIC I. NIEHAUS
ERIC I. NIEHAUS

655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)
lolts@rgrdlaw.com
ericn@rgrdlaw.com
cstewart@rgrdlaw.com
ksciarani@rgrdlaw.com
klavelle@rgrdlaw.com

ROBBINS GELLER RUDMAN
& DOWD LLP
SAMUEL H. RUDMAN
58 South Service Road, Suite 200
Melville, NY 11747
Telephone: 631/367-7100
631/367-1173 (fax)
srudman@rgrdlaw.com

GLANCY PRONGAY & MURRAY LLP
BRIAN P. MURRAY
LEE ALBERT
GARTH A. SPENCER
230 Park Avenue, Suite 530
New York, NY 10169
Telephone: 212/682-5340
212/884-0988 (fax)
bmurray@glancylaw.com
lalbert@glancylaw.com
gspencer@glancylaw.com

Co-Lead Counsel for Plaintiffs

CERTIFICATE OF SERVICE

I hereby certify that on March 21, 2018, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I caused to be mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on March 21, 2018.

s/ ERIC I. NIEHAUS
ERIC I. NIEHAUS

ROBBINS GELLER RUDMAN
& DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA 92101-8498
Telephone: 619/231-1058
619/231-7423 (fax)

E-mail: ericn@rgrdlaw.com

# Mailing Information for a Case 1:09-cv-01714-DAB In Re Deutsche Bank AG Securities Litigation

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Mario Alba , Jr**
  malba@rgrdlaw.com,e_file_ny@rgrdlaw.com,e_file_sd@rgrdlaw.com,drosenfeld@rgrdlaw.com
- **Lee Albert**
  lalbert@glancylaw.com
- **Andrew J. Brown**
  andrewb@rgrdlaw.com,nhorstman@rgrdlaw.com,ldeem@rgrdlaw.com
- **Charles Alan Gilman**
  cgilman@cahill.com,mmcloughlin@cahill.com,nmarcantonio@cahill.com,managingattorney@cahill.com,MA@cahill.com
- **Deborah R Gross**
  DGross@kcr-law.com,JHannigan@kcr-law.com
- **Eva Hromadkova**
  evah@murrayfrank.com
- **David George Januszewski**
  managingattorney@cahill.com,MA@cahill.com,djanuszewski@cahill.com
- **Jay B. Kasner**
  jkasner@skadden.com
- **Kevin A. Lavelle**
  klavelle@rgrdlaw.com
- **Matthew Montgomery**
  mattm@csgrr.com
- **Brian Philip Murray**
  bmurray@glancylaw.com
- **Scott D. Musoff**
  smusoff@skadden.com,aviva.nusbaum@skadden.com,emma.gardner@skadden.com
- **Eric I. Niehaus**
  ericn@rgrdlaw.com,e_file_sd@rgrdlaw.com
- **Sharan Nirmul**
  snirmul@ktmc.com,dpotts@ktmc.com,jenck@ktmc.com,ahankins@ktmc.com,mswift@ktmc.com
- **Lucas F. Olts**
  lolts@rgrdlaw.com,karenc@rgrdlaw.com,e_file_sd@rgrdlaw.com,susanw@rgrdlaw.com
- **Darren J. Robbins**
  e_file_sd@rgrdlaw.com
- **David Avi Rosenfeld**
  drosenfeld@rgrdlaw.com,e_file_ny@rgrdlaw.com,e_file_sd@rgrdlaw.com
- **Samuel Howard Rudman**
  srudman@rgrdlaw.com,e_file_ny@rgrdlaw.com,mblasy@rgrdlaw.com,e_file_sd@rgrdlaw.com
- **Kevin S. Sciarani**
  ksciarani@rgrdlaw.com,tdevries@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Christopher D. Stewart**
  cstewart@rgrdlaw.com,karenc@rgrdlaw.com,e_file_sd@rgrdlaw.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

**Harry J. Weiss**
450 Fifth Street, N.W.
Mail Stop 4-2
Washington, DC 20549