UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In re DEUTSCHE BANK AG SECURITIES LITIGATION | : : : : | Master File No. 1:09-cv-01714-DAB-RWL <u>CLASS ACTION</u> |
| This Document Relates To: ALL ACTIONS. | : : : : : : | SUPPLEMENTAL SUBMISSION IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION |

1479152_1

**I.      Introduction**

Lead Plaintiffs Kaess and Farruggio (collectively, "plaintiffs") respectfully submit this supplemental brief and additional evidence, including the Declaration of the former Chairman of the U.S. Securities and Exchange Commission ("SEC") Harvey L. Pitt, in response to the Court's request for "definitive proof that the relevant transaction occurred in the United States." ECF No. 220 at 1. As demonstrated by the evidence below, plaintiffs have met their burden of showing by a preponderance of the evidence that their purchase of the 7.35% Trust Preferred Securities (the "Preferred Shares") in the relevant November 2007 offering (the "Offering") was a "domestic transaction" occurring in the United States under the standard set forth in *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008), *aff'd*, 561 U.S. 247 (2010). "'[D]omestic transactions,'" are those involving securities in which (1) irrevocable liability is incurred in the United States, or (2) title passes within the United States. *Absolute Activist Value Master Fund Ltd. v. Ficeto*, 677 F.3d 60, 62 (2d Cir. 2012).[1]

"To determine whether irrevocable liability was incurred within the United States, courts look to the terms, timing, and place of the parties' contracting and liabilities thereunder." *Giunta v. Dingman*, 893 F.3d 73, 79 (2d Cir. 2018). "Relevant 'facts concerning the formation of the contracts, the placement of purchase orders, . . . or the exchange of money' should be considered." *Id.* (quoting *Absolute Activist*, 677 F.3d at 70). Where shares are not listed on a domestic exchange, a plaintiff must show that the buyer "incurred irrevocable liability within the United States to take and pay for a security" or that the seller "incurred irrevocable liability within the United States to deliver a security." *Giunta*, 893 F.3d at 79-80.

---

[1]     Citations are omitted throughout unless otherwise noted.

The facts here demonstrate that plaintiffs' purchase in the Offering was a domestic transaction.

## II. The Evidence Demonstrates that Plaintiffs' Transaction Occurred in the United States

The uncontroverted evidence shows that plaintiffs' purchase of the Preferred Shares in the Offering was a domestic transaction because irrevocable liability to both the buyer and seller occurred in the United States. *Absolute Activist*, 677 F.3d at 62. As is common in a domestic issuance of a new security, plaintiffs purchased the Preferred Shares directly in the Offering from an underwriter in the United States. In fact, as the Preferred Shares were "a new issue of securities with no established trading market" being offered for the first time, they were not listed on any public exchange when plaintiffs purchased them at the time of the Offering. Ex. 1 (Nov. 7, 2007 Pro. Supp.) at S-61.[2] Accordingly, plaintiffs' purchase was a domestic transaction.

Defendant Deutsche Bank Capital Funding Trust X ("Trust X"), a Delaware statutory trust with its principal place of business located in New York, issued the Preferred Shares "in a public offering in the United States." ECF No. 177-6 (Ex. F to Mot. for Class Cert.) at F-141; ECF No. 177-2 (Ex. B to Mot. for Class Cert.) at S-4; ECF No. 167, ¶36. The Preferred Shares were offered to investors on November 7, 2007, at $25 per share pursuant to a prospectus supplement. ECF No. 177-1 (Ex. A to Mot. for Class Cert.), ¶2.i. The underwriters sold the Preferred Shares to investors in the Offering, after having first purchased the shares from Trust X as part of the Offering process. ECF No. 177-2 (Ex. B to Mot. for Class Cert.) at S-59 – S-60. Each of the underwriters that sold the Preferred Shares in the Offering is located in the United States. *See id*. (listing underwriters).

---

[2] Unless otherwise indicated, exhibits cited herein ("Ex. __") are attached to the Declaration of Eric I. Niehaus in Support of Supplemental Submission in Support of Plaintiffs' Motion for Class Certification.

Because plaintiffs purchased directly in the Offering, plaintiffs necessarily purchased the Preferred Shares from one of these U.S. underwriters.

Plaintiffs' purchase of the Preferred Shares in the Offering is established by their trade confirmation. On November 7, 2007, the day of the Offering, plaintiffs agreed to purchase 7,000 Preferred Shares at $25 per share, the Offering price, through HSBC Securities (USA) Inc. in New York, where their brokerage account was located. ECF No. 136 at Page 7 of 16. HSBC was both plaintiffs' broker and an underwriter in the Offering. *Id.*; ECF No. 177-2 (Ex. B to Mot. for Class Cert.) at S-59 – S-60. Plaintiffs only invested with HSBC New York during the relevant period, including at the time plaintiffs purchased the Preferred Shares in the Offering. ECF No. 172-3 (Kaess Depo. Tr.) at 25:10-21, 29:16-19, 30:3-5, 31:7-11.

The fact that plaintiffs did not pay any commission fees associated with their purchase further demonstrates that plaintiffs purchased the Preferred Shares from HSBC Securities (USA)'s underwriting allocation of the Offering. The trade at issue did not settle until November 15, 2007, consistent with the date the Preferred Shares were issued in the Offering. ECF No. 136 at Page 7 of 16; ECF No. 177-2 (Ex. B to Mot. for Class Cert.) at S-6. No commission was charged for the transaction, other than a two-dollar service fee, further indicating the Preferred Shares were purchased from an underwriter's allocation of Preferred Shares in the Offering, as underwriters were compensated through a $0.7875 discount on the price of the Preferred Shares they underwrote, not a commission on trades. ECF No. 136 at Page 7 of 16; ECF No. 177-2 (Ex. B to Mot. for Class Cert.) at 1; *see also* Ex. 2 (SEC Investor Bulletin: "How to Read Confirmation Statements") at 2 (where a broker-dealer "sells you the shares out of its inventory" the broker "generally will not charge you a commission"). Had plaintiffs' purchase of the Preferred Shares occurred on a market, HSBC would have charged a commission to broker the trade. *See, e.g.*, Ex. 3 (DBPR000044) (HSBC charging

- 3 -

plaintiffs a $255 commission "as agent" on later purchase of preferred shares trading on the New York Stock Exchange); *also* Ex. 2 (SEC Investor Bulletin: "How to Read Confirmation Statements") at 2 (broker-dealer acts as "agent" when purchasing shares on a client's behalf on an exchange "and probably charges you a commission").  Given that the relevant Preferred Shares were purchased for an HSBC Securities (USA) account free of commission, HSBC directly sold plaintiffs' shares from its allocation in the Offering without using a stock exchange or seeking another counterparty.

Additional data obtained from Bloomberg further confirms that plaintiffs' purchase of the Preferred Shares occurred in the United States directly in the Offering.  At no point were the shares listed or traded on a foreign exchange or cross-listed on both foreign and domestic exchanges.  The Preferred Shares were not listed for trading on any market until November 9, 2007 – two days after plaintiffs' purchase of the Preferred Shares in the Offering.  Ex. 4 (Bloomberg data on Preferred Shares).  On November 9, 2007, the Preferred Shares were first listed as "OTC [over-the-counter] US."  *Id*.  Then, on November 19, 2007, the Preferred Shares were listed on the New York Stock Exchange until 2014, when they were redeemed and delisted.  *Id*.  Plaintiffs' purchase date, November 7, 2007, before the Preferred Shares had been listed on any market, further underscores that plaintiffs purchased directly in the U.S. Offering from a U.S. underwriter.[3]  In addition, at the time of the transaction, plaintiffs' broker, HSBC New York, "assum[ed] direct responsibility for the execution and settlement of securities transactions, and custody of securities" (Ex. 6 (HSBC Press

---

[3]   The Bloomberg data for the Preferred Shares can be contrasted with Bloomberg data for shares of Deutsche Bank AG securities, which are not at issue here, but show extensive cross-listing on both foreign and domestic exchanges.  Ex. 5 (Bloomberg data on Deutsche Bank AG).

Release)), *precluding the notion that the trade would have been a foreign transaction that cleared through a European entity, such as Euroclear*.[4]

Plaintiffs' trade confirmation also provides a CUSIP number, 25154D102, for the Preferred Shares. ECF No. 136 at Page 7 of 16. A CUSIP is an alphanumeric code which identifies a North American financial security. John Downes & Jordan Elliot Goodman, *Dictionary of Finance and Investment Terms* 157 (6th ed. 2003). The Preferred Shares were similarly identified by the ISIN number US25154D1028. Ex. 4 (Bloomberg data on Preferred Shares). The ISIN number's "US" prefix identifies the security as originating in the United States. *Murakush Caliphate of Amexem Inc. v. New Jersey*, 790 F. Supp. 2d 241, 257 n.14 (D.N.J. 2011). Upon their issuance, the underwriters were to deposit the Preferred Shares with the custodian to The Depository Trust Company, or DTC, in New York, New York. Ex. 1 (Nov. 7, 2008 Pro. Supp.) at S-31. Accordingly, the Preferred Shares are U.S. securities issued "in a public offering in the United States." ECF No. 177-6 (Ex. F to Mot. for Class Cert.) at F-141.

---

[4] That plaintiffs' damages expert, Dr. Feinstein, testified, during cross examination at his deposition on an issue outside the scope of his report and without having examined the issue, that it was possible that the shares were eligible for trading outside of the United States, says nothing about where plaintiffs' transaction took place and is not evidence the shares did, in fact, trade outside of the United States. ECF No. 176 (Class Cert. Mot.) at 22-23. Any conjecture that plaintiffs' purchase of the Preferred Shares took place outside of the United States is contradicted by the facts stated herein.

- 5 -

1479152_1

Finally, as the attached declaration of former SEC Chairman Harvey L. Pitt further demonstrates, the above facts show that plaintiffs' purchase of the Preferred Shares was a domestic transaction which occurred in the United States.  *See generally* Ex. 7, Declaration of Harvey L. Pitt. Upon reviewing the evidentiary record concerning the transaction at issue, Mr. Pitt concluded that plaintiffs "have provided a definitive confirmation that demonstrates that their purchase of the DB Trust X securities was through a U.S. registered broker-dealer in the United States, and that the purchase was part of the actual offering of the DB Trust X securities." *Id.* (Pitt Decl.) at 5.  Mr. Pitt further opined that "[h]ad this been a transaction effected in a specific marketplace as opposed to a registered offering, it is commonly understood and expected that the confirmation would have been required to reflect the commission charged or the mark-up of the price of the securities over the selling broker's actual price for those securities" – which it did not, as plaintiffs did not pay any commission fees associated with their purchase.  *Id.* (Pitt Decl.) at 6.  Mr. Pitt's expert opinion further confirms that plaintiffs' purchase was a domestic transaction which occurred in the United States.

In sum, plaintiffs purchased the Preferred Shares from a United States underwriter in a United States offering by a United States issuer.  Further, plaintiffs purchased the Preferred Shares through plaintiffs' United States broker, HSBC New York, in an account located in the United States.  This undisputed evidence demonstrates that the transaction occurred in the United States.

### III. Defendants' Claim that Plaintiffs Have Failed to Demonstrate that Their Purchase Was a Domestic Transaction Is Baseless

Attempting to rebut the fact that plaintiffs' purchase occurred in the United States, defendants claim that the documents produced by plaintiffs fail to identify the market on which the Preferred Shares were purchased.  ECF No. 173 (Mot. to Deny Class Cert.) at 17.  Not so. Defendants have never disputed the documentary evidence showing that plaintiffs purchased the

- 6 -

Preferred Shares directly in the Offering or that the Offering was conducted in the United States by U.S. underwriters for a U.S. issuer.  Nor have defendants disputed that plaintiffs' purchase was made by a U.S. broker for a U.S. brokerage account   Because the Preferred Shares are not foreign securities, securities purchased on foreign exchanges, or securities cross-listed on both foreign and domestic exchanges, *City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173, 181 (2d Cir. 2014), and *In re Sanofi-Aventis Sec. Litig.*, 293 F.R.D. 449, 457 (S.D.N.Y. 2013), are not applicable.

Plaintiffs have not found a single case holding that a transaction under such circumstances is ***not*** a domestic transaction under *Morrison*.  The evidence and case law squarely support that plaintiffs' purchase of the Preferred Shares was a domestic transaction.  *See In re Facebook, Inc.*, 312 F.R.D. 332, 351 (S.D.N.Y. 2015) (participation "'in a strictly U.S. IPO of a U.S. company in order to receive shares registered in the United States with the SEC that would trade exclusively on an American exchange' is sufficient to establish that plausibility [that the parties incurred irrevocable liability within the United States]") (citing *Absolute Activist*, 677 F.3d at 68).

## IV.   Conclusion

Plaintiffs have produced their trading records for their purchase of the Preferred Shares in the Offering.  This evidence provided by plaintiffs shows that the Preferred Shares were U.S. securities, which plaintiffs purchased directly in a U.S. offering by a U.S. issuer through U.S. underwriters.  The relevant transaction was made through plaintiffs' United States broker for a United States account.  Additional evidence submitted herein demonstrates that the Preferred Shares were not listed on any foreign exchange or cross-listed on a United States and foreign exchange.  Defendants do not dispute any of these facts, nor have they pointed to any documentary evidence suggesting otherwise.  The evidence overwhelmingly demonstrates that the relevant transaction was a "domestic

transaction" which occurred in the United States because irrevocable liability to both the buyer and seller occurred in the United States.

DATED: September 27, 2018

Respectfully submitted,

ROBBINS GELLER RUDMAN
  & DOWD LLP
LUCAS F. OLTS
ERIC I. NIEHAUS
CHRISTOPHER D. STEWART
KEVIN S. SCIARANI
KEVIN A. LAVELLE
JUAN CARLOS SANCHEZ


s/ ERIC I. NIEHAUS
ERIC I. NIEHAUS

655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
lolts@rgrdlaw.com
ericn@rgrdlaw.com
cstewart@rgrdlaw.com
ksciarani@rgrdlaw.com
klavelle@rgrdlaw.com
jsanchez@rgrdlaw.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
SAMUEL H. RUDMAN
58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)
srudman@rgrdlaw.com

GLANCY PRONGAY & MURRAY LLP
BRIAN P. MURRAY
LEE ALBERT
GARTH A. SPENCER
230 Park Avenue, Suite 530
New York, NY  10169
Telephone:  212/682-5340
212/884-0988 (fax)
bmurray@glancylaw.com
lalbert@glancylaw.com
gspencer@glancylaw.com

Co-Lead Counsel for Plaintiffs

## CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that on September 27, 2018, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses on the attached Electronic Mail Notice List, and I hereby certify that I caused the mailing of the foregoing via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

                                                   s/ ERIC I. NIEHAUS
                                                   ERIC I. NIEHAUS

                                                   ROBBINS GELLER RUDMAN
                                                          & DOWD LLP
                                                 655 West Broadway, Suite 1900
                                                 San Diego, CA  92101-8498
                                                 Telephone:  619/231-1058
                                                 619/231-7423 (fax)

                                                 E-mail:  ericn@rgrdlaw.com

# Mailing Information for a Case 1:09-cv-01714-DAB-RWL In Re Deutsche Bank AG Securities Litigation

### Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Mario Alba , Jr**
  malba@rgrdlaw.com,e_file_ny@rgrdlaw.com,e_file_sd@rgrdlaw.com,drosenfeld@rgrdlaw.com

- **Lee Albert**
  lalbert@glancylaw.com

- **Jessica Anne Barcus**
  jessica.barcus@skadden.com,Emma.Gardner@skadden.com

- **Andrew J. Brown**
  andrewb@rgrdlaw.com,nhorstman@rgrdlaw.com,ldeem@rgrdlaw.com

- **Charles Alan Gilman**
  cgilman@cahill.com,mmcloughlin@cahill.com,MA@cahill.com

- **Deborah R Gross**
  DGross@kcr-law.com,JHannigan@kcr-law.com

- **Eva Hromadkova**
  evah@murrayfrank.com

- **David George Januszewski**
  managingattorney@cahill.com,MA@cahill.com,djanuszewski@cahill.com

- **Jay B. Kasner**
  jkasner@skadden.com

- **Kevin A. Lavelle**
  klavelle@rgrdlaw.com

- **Matthew Montgomery**
  mattm@csgrr.com

- **Brian Philip Murray**
  bmurray@glancylaw.com,brian-murray-4237@ecf.pacerpro.com

- **Scott D. Musoff**
  smusoff@skadden.com

- **Eric I. Niehaus**
  ericn@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Sharan Nirmul**
  snirmul@ktmc.com,dpotts@ktmc.com,jenck@ktmc.com,ahankins@ktmc.com,3369561420@filings.docketbird.com,mswift@ktmc.com

- **Lucas F. Olts**
  lolts@rgrdlaw.com,karenc@rgrdlaw.com,e_file_sd@rgrdlaw.com,9870190420@filings.docketbird.com,susanw@rgrdlaw.com

- **Darren J. Robbins**
  e_file_sd@rgrdlaw.com

- **David Avi Rosenfeld**
  drosenfeld@rgrdlaw.com,e_file_ny@rgrdlaw.com,2879289420@filings.docketbird.com,e_file_sd@rgrdlaw.com

- **Samuel Howard Rudman**
  srudman@rgrdlaw.com,e_file_ny@rgrdlaw.com,mblasy@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Kevin S. Sciarani**
  ksciarani@rgrdlaw.com,3827167420@filings.docketbird.com,tdevries@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Christopher D. Stewart**
  cstewart@rgrdlaw.com,karenc@rgrdlaw.com,e_file_sd@rgrdlaw.com

**Manual Notice List**

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

**Harry            J. Weiss**
450 Fifth Street, N.W.
Mail Stop 4-2
Washington, DC 20549