UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

-----------------------------------X

In re DEUTSCHE BANK AG

SECURITIES LITIGATION                    09-CV-1714 (DAB)

-----------------------------------X     MEMORANDUM AND ORDER

DEBORAH A. BATTS, United States District Judge.


        This Action involves a series of securities offerings between
May 2007 and May 2008 where allegedly false or misleading offering
materials were used to sell $5.4 billion of preferred securities
in violation of Sections 11, 12(a)(2), and 15 of the Securities
Act of 1933.

        Before the Court is Defendants' Motion to Deny Class
Certification and Plaintiffs' Motion for Class Certification. For
the reasons stated below, Defendants' Motion to Deny Class
Certification is DENIED and Plaintiffs' Motion for Class
Certification is GRANTED.

    I.    Relevant Background

          A.    Early Proceedings

        This Action arises out of six putative class action cases
filed between February and May 2009 against Deutsche Bank AG and
other related entities and individuals (collectively "DB").

Plaintiffs sued under Sections 11, 12(a)(2) and 15 of the Securities Act of 1933 relating to six offerings between October 2006 and May 2008, alleging that DB failed to disclose its true exposure to real estate-related assets. (Am. Compl., ECF No. 34.) The Court dismissed all claims following the filing of the Second Consolidated Amended Complaint. In re Deutsche Bank AG Sec. Litig., No. 09-1714, 2011 U.S. Dist. LEXIS 93867 (S.D.N.Y. Aug. 19, 2011) and 2012 U.S. Dist. LEXIS 115088 (S.D.N.Y. Aug. 10, 2012) (Batts, J.). The Second Circuit affirmed this Court's dismissal of the Complaint without leave to replead. Kaess v. Deutsche Bank AG, 572 F. App'x 58, 59-60 (2d Cir. 2014).

Plaintiffs sought review of the Second Circuit's Opinion affirming this Court's Orders. While Plaintiffs' petition for certiorari was pending, the Supreme Court issued a decision in Omnicare, Inc. v. Laborers District Council Construction Industry Pension Fund, 135 S. Ct. 1318 (2015). Subsequently, on June 8, 2015, the Supreme Court entered a textual Order granting Plaintiffs' Petition for certiorari, vacating the Judgment and remanding "for further consideration in light of [Omnicare]." Belmont Holdings Corp, et al., v. Deutsche Bank AG, et al., 135 S. Ct. 2805 (2015).

   B.   Third Consolidated Amended Complaint

Following remand from the Supreme Court, this Court permitted Plaintiffs to file a Third Consolidated Amended Complaint ("TCAC"). (ECF No. 98.) The TCAC brings claims under Section 11 against all Defendants,[1] under Section 12(a)(2) against the Deutsche Bank Defendants and the Underwriter Defendants, and under Section 15 against the Deutsche Bank and the Individual Defendants in connection with the five offerings between May 2007 and May 2008. (TCAC ¶¶ 1-2.) From May 2007 to May 2008, DB conducted five offerings of preferred securities at a price of $25.00 per share:

- 6.55% Trust Preferred Securities of Deutsche Bank Contingent Capital Trust II, offered on May 16, 2007;
- 6.625% Noncumulative Trust Preferred Securities of Deutsche Bank Capital Funding Trust IX, offered on July 16, 2007;

---

[1] Defendants collectively refers to the Deutsche Bank Defendants (Deutsche Bank AG; Deutsche Bank Capital Funding Trust IX, Deutsche Bank Capital Funding LLC IX, Deutsche Bank Capital Funding Trust X, Deutsche Bank Capital Funding LLC X, Deutsche Bank Contingent Capital Trust II, Deutsche Bank Contingent Capital LLC II, Deutsche Bank Contingent Capital Trust III, Deutsche Bank Contingent Capital LLC III, Deutsche Bank Contingent Capital Trust V, Deutsche Bank Contingent Capital LLC V and Deutsche Bank Securities Inc.), the Individual Defendants (Josef Ackermann, Hugo Banziger, Detlef Bindert, Jonathan Blake, Anthony Di Iorio, Martin Edelmann, Tessen von Heydebreck, Hermann-Josef Lamberti, Rainer Rauleder, Peter Sturzinger, and Marco Zimmerman), and the Underwriter Defendants (UBS Securities LLC, Citigroup Global Markets Inc., Merrill Lynch, Pierce, Fenner & Smith Incorporated, individually and as successor by merger to defendant Banc of America Securities LLC, Wachovia Capital Markets, LLC (n/k/a Wells Fargo Securities, LLC) and Morgan Stanley & Co.).

- **7.35% Noncumulative Trust Preferred Securities of Deutsche Bank Capital Funding Trust X, offered on November 6, 2007;**
- **7.60% Trust Preferred Securities of Deutsche Bank Contingent Capital Trust III, offered on February 14, 2008; and**
- **8.05% Trust Preferred Securities of Deutsche Bank Contingent Capital Trust V, offered on May 5, 2008.**

**(Id. ¶ 2.)  The Registration Statement, Prospectus, and the various Prospectus Supplements are collectively referred to as the "Offering Materials."  (Id. ¶ 1.)**

**The TCAC alleges that the securities were sold pursuant to materially, objectively, and subjectively false and misleading Offering Materials which, in violation of GAAP, SEC regulations and IFRS,[2] misrepresented or omitted material facts, such as (1) that DB had as much as €20 billion in exposure to high-risk subprime and nonprime residential mortgage markets through RMBS and CDO assets; (2) that the Company's disclosures concerning market risks and credit risks misrepresented DB's true exposure to RMBS/CDOs and other mortgage-related assets; (3) that, as detailed in two U.S. Government reports on the financial crisis, the value of DB's RMBS and CDO assets was collapsing, the mortgages underlying the securities were far riskier than DB had represented, and DB's Executive Committee had approved a $5 billion bet against**

---

**[2] The TCAC alleges that, "[p]ursuant to Regulation (EC) 1606/2002, beginning with fiscal year 2007 DB prepared their consolidated financial statements in accordance with IFRS."  (TCAC ¶ 150.)**

the mortgage market; (4) that the Company's assertions concerning its compliance with GAAP were false and misleading as DB's 2006 Form 20-F did not comply with GAAP; (5) that the Company was engaged in high-risk propriety trading; and (6) that the Company's 2007 Form 20-F disclosures failed to reflect the actual risks in DB's reported Value at Risk ("VaR") metric.  (TCAC ¶ 3.) The TCAC further alleges that corrective disclosures were made on February 5, 2009 when the Company issued a release titled "Deutsche Bank Reports net loss of EUR 3.9 billion for the year 2008." (TCAC ¶ 183.)

## C.   Motion to Dismiss the Third Consolidated Amended Complaint

Defendants moved to dismiss the TCAC thereafter. (Mot. to Dismiss the Third Consolidated Am. Compl., ECF No. 103.) On July 25, 2016, this Court issued an opinion granting in part and denying in part Defendants' Motion to Dismiss. In re Deutsche Bank AG Sec. Litig., No. 09-1714, 2016 U.S. Dist. LEXIS 96714 (S.D.N.Y. July 25, 2016) (Batts, J.). This Court dismissed all claims as to the May 2007, July 2007, and May 2008 Offerings, id. at *22-26, *36, and only sustained claims as to the November 2007 and February 2008 Offerings that allege:

> (1)   failure to disclose "any known trends or uncertainties that have had or that the registrant reasonably expects will have a material favorable or unfavorable

> impact on net sales or revenues or income from
> continuing operations" and
>
> (2) failure to disclose "the most significant factors
> that make the offering speculative or risky"

pursuant to Item 303 of Regulation S-K, 17 C.F.R. § 229.303(a)(3)(ii), and Item 503 of Regulation S-K, 17 C.F.R. § 229.503(c), id. at *27-28, *36. Finally, the Court held that Plaintiffs' "attempt to allege material misstatements or other omissions claims" fail. Id. at *27.

### D.   Class Certification

At the beginning of this case, the Court appointed Norbert Kaess ("Kaess") and Maria Farruggio ("Farruggio"), husband and wife, as Co-Lead Plaintiffs for the November 2007 Offering and Belmont Holdings Corp. ("Belmont") as Lead Plaintiff for the February 2008 Offering. (Mem. And Order Granting Mot. For Recons., ECF No. 27.) In January 2017, Plaintiffs filed an Amended Motion for Class Certification adding Sylvia Laiti ("Laiti") as a Lead Plaintiff for the November 2007 and February 2008 Offerings, (Am. Mot. for Class Certification, ECF No. 133), and subsequently, voluntarily dismissed Lead Plaintiff for the February 2008 Offering, Belmont, after determining that Belmont lacked standing to sue, (ECF No. 139).

Defendants then moved to dismiss all claims arising from the February 2008 Offering with the permission of this Court. (ECF No.

158.) Defendants argued that Laiti was improperly added as Class Representative and therefore, all claims arising from the February 2008 Offering should be dismissed for lack of a Lead and Named Plaintiff with standing to sue. Id. This Court scheduled oral argument to hear (1) whether all claims arising from the February 2008 Offering should be dismissed, (2) whether Laiti could be properly added as Lead and Named Plaintiff for the February 2008 Offering, or, in the alternate, (3) whether Plaintiffs Kaess and Farruggio could stand as Lead Plaintiffs for the class of claims arising from the 2008 Offering.

### E.    Oral Argument and Order

At oral argument, Plaintiffs argued that Laiti should continue as Class Representative pursuant to a recent Supreme Court decision Cal. Pub. Employees' Ret. Sys. v. ANZ Sec., Inc., 137 S. Ct. 2042 (2017). (Tr. Of Proceedings, ECF No. 165.) In the alternate, Plaintiffs argued that Kaess and Farruggio should be permitted to proceed as Class Representatives for both the November 2007 and February 2008 Offerings under the doctrine of class standing pursuant to NECA IBEW Health & Welfare Fund v. Goldman Sachs & Co., 693 F.3d 145 (2d Cir. 2012). (Id.) NECA grants a plaintiff class standing if he "plausibly alleges (1) that he has personally suffered some actual [] injury as the result of the putatively illegal conduct of the defendant, and (2) that such

conduct implicates the same set of concerns as the as the conduct alleged to have caused injury to other members of the putative class by the same defendants." 693 F.3d at 162 (internal quotation marks and citations omitted).

After hearing oral argument, the Court disqualified Laiti and struck the Amended Motion for Class Certification. (Tr. of Proceedings (holding that Laiti was not appropriately brought as Class Representative because Plaintiffs had just "stuck her on there"); Order Granting Mot. to Disqualify Sylvia Laiti ("Oct. 16th Order"), ECF No. 163 ("Defendants' Motion to Disqualify Leiti as Lead and Named Plaintiff for the February 2008 claims is GRANTED.").) The Court simultaneously denied the Motion to Dismiss the February 2008 Offering and granted Plaintiffs' Motion to Appoint Kaess and Farruggio as Lead and Named Plaintiffs for the 2008 Offering. (Oct. 16th Order.)

The Court found that Kaess and Farruggio have class standing for the 2008 Offerings under NECA. In an order dated April 6, 2017 responding to several letter motions by Parties, the Court found that Kaess and Farruggio "personally suffered some actual [] injury as a result of the putatively illegal conduct of the defendant," 693 F.3d at 162, because Kaess and Farruggio "purchased shares at one price and sold for a minimal loss at another price." (April 6, 2017 Order ("Apr. 6th Order"), ECF No. 151.) At oral argument, the

Court found that that Defendants' conduct satisfies the second prong of NECA's test for class standing: that it "implicates the same set of concerns as the conduct alleged to have caused injury to other members of the putative class by the same defendants," 693 F.3d at 162; (Tr. of Proceedings at 35.) During oral argument, the Court found that Defendants failed to distinguish NECA from this case because "arbitrary and artificial construction of different issuers all going back to Deutsche Bank . . . does not prevent [Kaess and Farruggio having class standing for the 2008 Offering under NECA]." (Tr. Of Proceedings at 35.) The Court also found that "the 2007 plaintiffs three months later can represent the 2008 plaintiffs because it was omissions that were lacking in 2007, lacking in 2008." (Id.) The Court rejected Defendants' argument that the November 2007 and February 2008 Offerings had "different issuers, different securities, [and] different points in time" and thus implicated a different set of concerns as the conduct alleged to have caused injury to purchasers of the November 2007 Offering. (Id. at 29.)

The Court then issued an Order (1) granting Defendants' Motion to Disqualify Leiti as Lead and Named Plaintiff for the February 2008 claims, (2) granting Plaintiffs' Motion to use Kaess and Farruggio as Lead and Named Plaintiffs for the 2008 Offerings, and (3) striking Plaintiffs' prior Motion for Class Certification of

November 26, 2016, (ECF No. 126), which listed Leiti as Lead and Named Plaintiff. (Oct. 16th Order.)

    **F.**    <u>Proposed Class</u>

    Plaintiffs have presently moved to certify the following class:

> All persons or entities who purchased or otherwise acquired the 7.35% Noncumulative Trust Preferred Securities of Deutsche Bank Capital Funding Trust X ("7.35% Preferred Securities"), and/or the 7.60% Trust Preferred Securities of Deutsche Bank Contingent Capital Trust III ("7.60% Preferred Securities"), pursuant or traceable to the public offerings that commenced on or about November 6, 2007 and February 14, 2008. Excluded from the Class are defendants, the officers and directors of Deutsche Bank and the Underwriter Defendants at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns, and any entity in which defendants have or had a controlling interest.

(Pls.' Mem. Of Law in Supp. of Motion to Certify Class ("Pls.' Mem.") 1, ECF No. 176.)

**II.**  <u>Discussion</u>

    **A.**    <u>Legal Standard</u>

    To qualify for class certification, Plaintiffs must first demonstrate that the proposed class meets the four requirements of Rule 23(a), which provides:

> One or more members of a class may sue or be sued as representative parties on behalf of all members only if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the

> representative parties are typical of the claims or defenses
> of the class; and (4) the representative parties will fairly
> and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). Second, Plaintiffs must demonstrate that
the proposed class satisfies Rule 23(b) in one of three ways. In
this case, Plaintiffs seek certification of the class pursuant
to Rule 23(b)(3), which is satisfied where "the court finds that
the questions of law or fact common to class members predominate
over any questions affecting only individual members, and that a
class action is superior to other available methods for fairly and
efficiently adjudicating the controversy." Fed. R. Civ. P.
23(b)(3). Plaintiffs must prove that they meet the requirements
of Rule 23 by a preponderance of the evidence. Teamsters Local 445
Freight Div. Pension Fund v. Bombardier, Inc., 546 F.3d 196, 201-
03 (2d Cir. 2008).

The Court must conduct a "rigorous analysis" to determine
whether Rule 23's requirements have been met. Wal-Mart Stores,
Inc. v. Dukes, 564 U.S. 338, 351 (2011). The Second Circuit has
explained that

> (1) a district judge may certify a class only after making
> determinations that each of the Rule 23 requirements has
> been met; (2) such determinations can be made only if the
> judge resolves factual disputes relevant to each Rule
> 23 requirement and finds that whatever underlying facts are
> relevant to a particular Rule 23 requirement have been
> established and is persuaded to rule, based on the relevant
> facts and the applicable legal standard, that the
> requirement is met; (3) the obligation to make such

11

> determinations is not lessened by overlap between a Rule 23 requirement and a merits issue, even a merits issue that is identical with a Rule 23 requirement; [and] (4) in making such determinations, a district judge should not assess any aspect of the merits unrelated to a <u>Rule 23</u> requirement . . . .

<u>In re Initial Pub. Offering Sec. Litig.</u>, 471 F.3d 24, 41 (2d Cir. 2006).

In addition to the express requirements of Rule 23(a) and Rule 23(b), the Second Circuit has "recognized an implied requirement of ascertainability in Rule 23." <u>Brecher v. Republic of Argentina</u>, 806 F.3d 22, 24 (2d Cir. 2015) (internal quotation marks and citation omitted); <u>See, e.g.</u>, <u>In re Initial Pub. Offering Sec. Litig.</u>, 471 F.3d at 44-45; <u>Stinson v. City of N.Y.</u>, 282 F.R.D. 360, 373 (S.D.N.Y. 2012); <u>In re Bank of Am. Corp. Secs</u>, 281 F.R.D. 134, 140 (S.D.N.Y. 2012); <u>In re Sadia, S.A. Sec. Litig.</u>, 269 F.R.D. 298, 305 (S.D.N.Y. 2010). "An identifiable class exists if its members can be ascertained by reference to objective criteria." <u>In re Bank of Am. Corp.</u>, 281 F.R.D. at 140 (quoting <u>In re Fosamax Prods. Liab. Litig.</u>, 248 F.R.D. 389, 395 (S.D.N.Y. 2008)). "Where any criterion is subjective, e.g., state of mind, the class is not ascertainable." <u>Spagnola v. Chubb Corp.</u>, 264 F.R.D. 76, 97 (S.D.N.Y. 2010) (internal quotation marks and citation omitted).

> B.   <u>Rule 23(a) Analysis</u>
>
> 1.   <u>Numerosity</u>

The first requirement of Rule 23(a) is that the proposed class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "The numerosity requirement . . . does not mandate that joinder of all parties be impossible — only that the difficulty or inconvenience of joining all members of the class make use of the class action appropriate." <u>Cent. States Southeast & Southwest Areas Health & Welfare Fund v. Merck—Medco Managed Care, L.L.C.</u>, 504 F.3d 229, 244-45 (2d Cir. 2007). "[T]he numerosity inquiry is not strictly mathematical," however, a proposed class of more than forty members presumptively satisfies the numerosity requirement. <u>Pa. Pub. Sch. Emps.' Ret. Sys. v. Morgan Stanley & Co.</u>, 772 F.3d 111, 120 (2d Cir. 2014).

Numerosity is clearly satisfied here. Plaintiffs allege and Defendants do not dispute that the proposed Class likely contains "hundreds, if not thousands" of class members whose "widespread distribution" would render joinder impracticable. (Pls.' Mem. 11.) Plaintiffs point out that DB issued 32,200,000 shares at $25.00 per share in the November 2007 Offering and 70,000,000 shares in the February 2008 offering. (<u>Id.</u> at 3.) In addition, Plaintiffs provide evidence of intraday trading volume in the thousands of the relevant securities. (Niehaus Decl. Ex. A at 30-46, ECF No. 177-1.) It can be inferred therefore that purchasers of the relevant securities are widespread and numerous. It is clear that

joinder of all the investors who have purchased the Offerings is impracticable and likely exceeds 40 members.

Accordingly, the Court finds that Plaintiffs have adequately established numerosity.

### 2. Commonality

The second requirement under Rule 23(a) is that the action must raise "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). To satisfy the commonality requirement, Plaintiffs must show that their claims rest upon a "common contention . . . capable of classwide resolution — which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." Wal-Mart, 564 U.S. at 350. Plaintiffs cannot only show that class members "have all suffered a violation of the same provision of law" but that the class members "have suffered the same injury." Id. at 349-50 (quoting Gen. Tel. Co. of the Sw. v. Falcon, 457 U.S. 147 (1982)).

Whether there were material misstatements or material omissions are questions common to the entire class in cases alleging violations of Sections 11, 12(a)(2), and 15[3] of the

---

[3] Section 15 creates derivative liability for "[e]very person who, by or through stock ownership, agency, or otherwise . . . controls any person liable under" Section 11. In re Lehman Bros. Mortgage-Backed Sec. Litig., 650 F.3d 167, 185 (2d Cir. 2011) (citing 15

14

Securities Act of 1933. "[U]nlike securities fraud claims pursuant to section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78a et seq., plaintiffs bringing claims under sections 11 and 12(a)(2) need not allege scienter, reliance, or loss causation." In re Morgan Stanley Information Fund Secs. Litig., 592 F.3d 347, 358 (2d Cir. 2010). "In many cases . . . two issues are central to claims under sections 11 and 12(a)(2): (1) the existence of either a misstatement or an unlawful omission; and (2) materiality. The definition of materiality is the same for these provisions as it is under section 10(b) of the Exchange Act: Whether the defendants' representations, taken together and in context, would have misled a reasonable investor." Id. at 360 (internal quotations and alterations omitted).

Plaintiffs have established commonality. Plaintiffs have sued under Sections 11, 12, and 15 of the Securities Act of 1933. The two issues "central," id., to Plaintiffs' claims are (1) whether there was an unlawful omission and (2) whether that unlawful omission was material. Proof of these issues does not vary from class member to class member nor does it vary from Offering to Offering. Whether DB made an unlawful omission does not vary from class member to class member because Plaintiffs need not prove individual issues such as reliance. Id. Indeed, even proof of

---

U.S.C. § 77o(a)). Where a plaintiff does not have a viable Section 11 or Section 12(a)(2) claim, his Section 15 claim also fails.

materiality for sections 11 and 12 is objective and therefore, generalizable. Id. at 360 (materiality is determined using an objective, "reasonable investor" standard); see In re IndyMac Mortgage-Backed Sec. Litig., 286 F.R.D. at 235 ("[M]ateriality for Securities Act claims is an issue subject to generalized proof.").

Moreover, the two central issues do not vary from Offering to Offering. Much of the same analysis relating to class standing applies to the commonality inquiry in the class certification context. Accord Merryman v. Citigroup, Inc., No. 15-9185, 2018 U.S. Dist. LEXIS 55091, at *38 (S.D.N.Y March 22, 2018). In oral argument and in a subsequent Order, this Court has already held that DBs' alleged material omission "implicates the same set of concerns," 693 F.3d at 162, for both the November 2007 and February 2008 class members. (See Oct. 16th Order (holding that Plaintiffs Kaess and Farruggio have class standing under NECA).) In that same proceeding, this Court credited that DB's alleged unlawful omission is a single, common course of conduct underlying both the November 2007 and February 2008 Offerings. (Tr. of Proceedings at 35 ("[I]t was [the same] omissions that were lacking in 2007, lacking in 2008.").) The central issues for determining liability therefore do not vary from Offering to Offering since DB's alleged liability arises from a single, common course of conduct.

In sum, there are at least two common questions that are capable of classwide resolution: (1) whether DB made an unlawful omission and (2) whether that omission was material. These questions do not vary among class members or between Offerings. Thus they are capable of classwide resolution subject to generalized proof establishing commonality.

### 3.   Typicality

Rule 23(a)(3), the typicality requirement, is satisfied by a showing that "each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability.'" In re Flag Telecom Holdings, Ltd. Sec. Litig., 574 F.3d 29, 35 (2d Cir. 2009) (quoting Robidoux v. Celani, 987 F.2d 931, 936 (2d Cir. 1993)). "When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims." Robidoux, 987 F.2d at 936-37. In securities actions, in particular, typicality is "not demanding." Tsereteli v. Residential, 283 F.R.D. 199, 208 (S.D.N.Y. 2012) (citation omitted). "So long as 'plaintiffs assert . . . that defendants committed the same wrongful acts in the same manner, against all members of the class,

they establish the necessary typicality.'" Id. (quoting In re NYSE Specialists Sec. Litig., 260 F.R.D. 55, 72-73 (S.D.N.Y. 2009)).

Plaintiffs have adequately established typicality. Once again, much of the class standing and commonality discussions have "considerable applicability." Merryman, 2018 U.S. Dist. LEXIS 55091, at *38. As previously discussed, this Court has found that all class members' claims arise from a single, common course of conduct committed against all members of the class. (Tr. of Proceedings; Oct. 16th Order.) Indeed, even proof of that conduct is generalizable to all members rather than individualized to each member of the class. See Morgan Stanley, 592 F.3d at 358-60. Thus Plaintiffs have established typicality because they have established that Defendants allegedly committed the same wrongful act "in the same manner, against all members of the class." Tsereteli, 283 F.R.D. at 208 (quoting NYSE Specialists, 260 F.R.D. at 72-73); accord IndyMac, 286 F.R.D. at 235 (holding that "[a] common course of conduct and a unitary legal theory for the entire class period . . . namely that the Offering Documents contain material omissions" is sufficient to establish typicality in claims arising under sections 11 and 12 of the Securities Act of 1933 (internal quotation marks and citation omitted)).

Defendants argue that the Lead and Named Plaintiffs are not "typical" of the class members because they allegedly profited

18

from the purchases and sales of the securities issued in the November 2007 Offering.[4] (Defs.' Mem. of Law in Supp. of Defs.' Mot. to Deny Class Action ("Defs.' Mem.") 13-16, ECF. No. 175.) This argument does not defeat class certification. First, this Court has held that during the "relevant class period, Lead Plaintiffs purchased shares at one price and sold for a minimal loss at another price." (Apr. 6th Order.) Plaintiffs' subsequent purchase of the November 2007 Offering shares are consequently irrelevant.

Moreover, damages for Section 11, 12, and 15 claims are calculated based on a statutory formula. See 15 U.S.C. § 77k(e). Accordingly, "any differences in damages awards do not defeat class certification" in cases alleging claims under sections 11, 12, or 15. IndyMac, 286 F.R.D. at 235; Pub. Emples. Ret. Sys. of Miss. v. Merrill Lynch & Co., 277 F.R.D. 97, 110 (S.D.N.Y. 2011) ("[P]otential differences in damages are not dispositive in the class certification analysis." (citing Seijas v. Republic of Arg., 606 F.3d 53, 58 (2d Cir. 2010)). Here too, class members' damages for claims under sections 11, 12, and 15 will be calculated

---

[4] Defendants do not distinguish their arguments for defeating typicality from their arguments for defeating adequacy of representation. (Defs.' Mem.  11-20). We conclude that the only argument Defendants have raised against typicality is that Lead and Named Plaintiffs allegedly profited from the purchases and sales of the securities issued in the November 2007 Offering. (Id. at 13-16.)

pursuant to a statutory formula. It is therefore irrelevant at the class certification stage if Lead and Named Plaintiffs may have differences in damages from the other class members.

For the same reasons, Defendants' attempt to relitigate class standing for Lead and Named Plaintiffs Kaess and Farruggio fails. (Defs.' Mem. 21-24.) Again, this Court has already held that DB's alleged material omission is a single, common course of conduct which Plaintiffs must prove to prevail. (See Tr. of Proceedings at 35; Oct. 16th Order.) Any damages stemming from that conduct, if proven, can be calculated by statutory formula. Thus, Kaess and Farruggio are typical of other class members because DB's conduct alleged to have injured Kaess and Farruggio "implicates the same set of concerns as the conduct alleged to have caused injury to other members of the putative class by [DB]." NECA, 693 F.3d at 162.

4.  **Adequacy of Representation**

i.  **Plaintiffs' Interests Are Not Antagonistic to the Interest of Other Members of the Class.**

In order to determine if the class representatives "will fairly and adequately protect the interests of the class," Fed. R. Civ. P. 23(a)(4), the Court considers whether "(1) plaintiff's interests are antagonistic to the interest of other members of the class and (2) plaintiff's attorneys are qualified, experienced and

able to conduct the litigation." Flag Telecom, 574 F.3d at
35 (citation omitted). The adequacy inquiry is particularly
focused on "uncover[ing] conflicts of interest between named
parties and the class they seek to represent." Amchem Prods., Inc.
v. Windsor, 521 U.S. 591, 625 (1997). "However, '[a] conflict or
potential conflict alone will not . . . necessarily defeat class
certification — the conflict must be fundamental.'" Fort Worth
Employees' Ret. Fund v. J.P. Morgan Chase & Co., 301 F.R.D. 116,
134 (S.D.N.Y. 2014) (quoting Denney v. Deutsche Bank AG, 443 F.3d
253, 268 (2d Cir. 2006)) (alteration in original). "A finding that
a proposed class representative satisfies the typicality inquiry,"
though not sufficient on its own, "constitutes strong evidence
that [its] interests are not antagonistic to those of the class;
the same strategies that will vindicate plaintiff['s] claims will
vindicate those of the class." Merrill Lynch, 277 F.R.D. at
109 (quoting Damassia v. Duane Reade, Inc., 250 F.R.D. 152, 158
(S.D.N.Y. 2008)) (alterations in original); accord In re Platinum
& Palladium Commodities Litig., No. 10-3617, 2014 U.S. Dist. LEXIS
96457, at *31 (S.D.N.Y. Jul. 15, 2014); In re Libor-Based Fin.
Instruments Antitrust Litig., 299 F. Supp. 3d 430 (S.D.N.Y.
2018)(explaining that adequacy of representation overlaps with the
commonality and typicality inquiry).

    Here, the Lead and Named Plaintiffs' interests are not
antagonistic to the claims of the rest of the class. Again, the

discussion relating to class standing as well as commonality and typicality are applicable here. Even though the requirements of the class standing doctrine are "distinct from the criteria that govern whether a named plaintiff is an adequate class representative under Rule 23(a)," they are relevant. Ret. Bd. of the Policemen's Annuity & Benefit Fund of Chi. v. Bank of N.Y. Mellon, 775 F.3d 154, 161 (2d Cir. 2014). Accordingly, the prior discussions about typicality and commonality are directly applicable here too. Plaintiffs Kaess and Farruggio share the "same set of concerns" with other class members. Litigating their own claims will equally further all class members' claims because (1) the central issues of liability are commonly shared by all class members and (2) the proof required to show liability is objective and therefore generalizable. Thus Lead Plaintiffs' interests are adequately aligned with all class members.

Defendants raise several arguments that Lead Plaintiffs have interests antagonistic to the class and are therefore unfit to adequately represent the class. They all fail. The first argument raised is that Lead Plaintiffs earned "substantial profits" on the securities in question.[5] It fails for the reasons addressed in the

---

[5] Defendants also argue a variation on this argument. (Defs.' Mem. 18.) They argue that Plaintiffs are suing for "emotional damages" because Plaintiffs allegedly earned a profit, suffering no economic damages. (Id.) This Court does not agree that Plaintiffs' subsequent profit is relevant and in fact, has already found that Plaintiffs sufficiently alleged they sold at a "minimum loss."

typicality discussion. The Court has not credited Defendants' contention that Plaintiffs made a profit at all and in fact, has credited that they plausibly alleged a "minimal loss." (Apr. 6th Order.) Moreover, potential differences in damages is not dispositive at the class certification stage, especially when damages can be calculated based on statutory formula after liability, if any, is determined on a classwide basis.

Defendants also argue that Lead and Named Plaintiffs are unfit class representatives because they "willfully" shredded documents relevant to their purchases of the securities at issue in this lawsuit. After reviewing the record, this Court finds that a spoliation defense does not "threaten to become the focus of the litigation." Falcon v. Philips Elecs. N. Am. Corp., 304 Fed. App'x 896, 897 (2d Cir. 2008) (quoting Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 903 F.2d 176, 180 (2d Cir. 1990)). Defendants first cite a case from this District, Falcon, 304 Fed. App'x. 896, for supporting denial of class certification based on a spoliation charge against a lead plaintiff. (Defs' Mem. 12.) In Falcon, Class Representative Falcon discarded his allegedly defective television set before the defendants had an opportunity to examine it. Id. at 897. Therefore,

---

(April 6th Order.) Second, Plaintiffs have thus far not sought damages for emotional distress. Defendants' argument is meritless and wholly unsubstantiated.

"without the allegedly defective television set, Falcon will likely have much more difficulty showing design defect than would someone who could produce the product for examination." Id. (internal quotation marks and citation omitted). Defendants also cite a case from the Eastern District of New York, Pagan v. Abbott Laboratories, Inc., 287 F.R.D. 139, 150 (E.D.N.Y. 2012), for supporting denial of class certification based on a spoliation charge against a lead plaintiff. (Defs.' Mem. 13.) In Pagan, Class Representative Sullivan discarded her allegedly contaminated Similac product before it could be tested for contamination. Pagan, 287 F.R.D. at 150. Like the Court in Falcon, the Pagan Court found that Pagan would have much more difficulty showing that her Similac was in fact contaminated than would someone who could produce the product for examination. Id.  Thus neither Falcon nor Pagan could adequately serve as class representative for their respective classes. Falcon, 304 Fed. App'x At 897; Pagan, 287 F.R.D. at 150.

Both cases are distinguishable from this case. Here, Kaess shredding the financial documents does not prevent Defendants from obtaining and examining the same documents from the Bank. Indeed, Defendants do not deny that the relevant documents could be, and some have been, obtained from the banks that Kaess has disclosed to Defendants. (Gilman Decl. Ex. C at 49:4-6, 60:11-15, 209:17-18, ECF No. 172; Defs.' Mem. 4 n.5.) Unlike Falcon and Pagan, Kaess shredding his personal copies of the documents does not change

Defendants' ability to examine the relevant evidence. It also does not make it more difficult for Plaintiffs to prove Defendants' liability or for Defendants to defend against liability. Defendants' argument thus fails.

Defendants argue that Plaintiffs cannot adequately represent the class members because the federal securities laws do not apply to transactions outside the United States. Morrison v. National Australia Bank Ltd., 561 U.S. 247, 267-68 (2010) (holding that federal securities laws do not apply to transactions outside the United States). Indeed, this Court also found that Plaintiffs failed to satisfy their burden to show by a preponderance of evidence that the relevant transactions took place in the United States subject to federal securities laws. See Morrison v. National Australia Bank Ltd., 547 F.3d 167, 267-68 (2d Cir. 2008), aff'd, 561 U.S. 247 (2010).

In an Order dated September 18, 2018, this Court stated that "Plaintiffs have not pointed to convincing evidence that the relevant transaction in fact occurred in the United States." (Order for Suppl. Evidence for Class Certification ("Morrison Order"), ECF No. 220.) In that Order, this Court asked Plaintiffs to produce "definitive proof" that the relevant transaction occurred in the United States and that "[e]vidence that merely states that Plaintiffs or underwriters were located in the United States [,]

that the brokerage account was maintained in the United States at the time of purchase[,]" or "that the relevant securities were listed on a domestic exchange with nothing more" will not suffice. (<u>Morrison</u> Order 1-2 (citing <u>In re Sanofi-Aventis Secs. Litig.</u>, 293 F.R.D. 449, 457 (S.D.N.Y. 2013) and <u>City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG</u>, 752 F.3d 173, 176, 181 (2d Cir. 2014))).

On September 27, 2018, in a supplemental briefing, Plaintiffs produced sufficient evidence to satisfy their burden. (Pls.' Suppl. Br., ECF Nos. 221, 222.) Plaintiffs direct the Court to Kaess and Farruggio's trade confirmation which shows: a purchase of 7,000 shares of the November 2007 Offering.[6] (Trade Confirmation, ECF No. 136 at 7.) The Trade Confirmation also shows:

1. that the relevant shares were purchased at the Offering price, $25.00;
2. that the purchase was executed by HSBC Securities (USA) Inc.;
3. that the purchase was processed on November 11, 2007; and
4. that no broker fees were paid.

---

[6]   In their Supplemental Brief, Plaintiffs provide only a Trade Confirmation for the shares of the November 2007 Offering purchased prior to when this litigation commenced. (ECF No. 222-3.) This Court, in agreement with Plaintiffs, has held that this subsequent purchase and profit is irrelevant to the case at hand. (Apr. 6th Order.) Plaintiffs cannot have their cake and eat it too. This exhibit is therefore irrelevant to prove that Plaintiffs' <u>relevant</u> purchase was indeed in the United States.

(Id.) In addition, Plaintiffs provide a declaration by a former Chairman of the Securities and Exchange Commission ("SEC"), Harvey L. Pitt who stated that:

1. Deutsche Bank Capital Funding Trust ("DB trust X"), who issued the relevant preferred securities, is a U.S. domestic company and a wholly-owned subsidiary of Deutsche Bank AG, a non-U.S. Company.

2. The Offering was carried out by seven principal, U.S. underwriters.

3. The relevant securities were purchased by the Lead and Named Plaintiffs from HSBC Securities (USA) Inc., located in New York City, as part of the initial underwriting of those securities.

4. "When registered U.S. securities broker-dealers issue confirmations . . . the confirmation must contain all required information and also must be true in all material respects" under the rules set forth by the SEC and Financial Institutions Regulatory Authority.

5. If the sale has taken place through a foreign branch of HSBC "the confirmation would have been materially misleading" in violation of federal law because it was confirmed by HSBC Securities USA.

6. The absence of any commission on the Transaction Confirmation indicates that the purchase did not occur on an exchange, but was a direct purchase of shares in a registered offering.

7. The relevant securities were intended to be listed on and were in fact listed on the New York Stock Exchange.

(Pitt Decl. 4-7, ECF No. 222-7.) Thus, Pitt concludes the investors "purchased securities issued by a domestic bank [DB Trust X], registered in the U.S., with both the SEC and various state securities commissions, underwritten by U.S. registered broker-dealers, in the U.S." (Id. at 7.)

27

This Court has reviewed all the evidence provided and credits Pitt's conclusion. The Court notes the absence of any commission charged in the Trade Confirmation which is consistent with the Prospectus Supplement (which shows that underwriters are given a discount of $ 0.7858 per Trust Preferred Security in lieu of a commission). (ECF No. 222-1.) This is also consistent with Pitt's Declaration that the absence of a commission in the Trade Confirmation is strong evidence that the securities were purchased directly in a registered offering rather than on an exchange. (Pitt Decl. 6.) Accordingly, we also find that the securities later being listed and traded on the New York Stock Exchange is irrelevant to Kaess and Farruggio's purchase. Moreover, we note that DB filed a Form 20F with the Securities and Exchange Commission on March 26, 2008 pursuant to the Securities and Exchange Act of 1934, federal securities law, describing the relevant Offerings. (ECF No. 177-6.)

In sum, Kaess and Farruggio purchased securities that originated in the United States and were purchased through a domestic branch of HSBC subject to federal securities law. All the involved entities are registered in the United States and avail themselves of federal securities laws. Thus, Plaintiffs have met their burden to show that the relevant transaction is subject to federal securities law.

28

Accordingly, this Court finds that Plaintiffs have adequately established that Plaintiffs have no interests antagonistic to the absent class members and can adequately represent the class.

ii.    **Plaintiffs' Attorneys are Qualified to Conduct the Litigation.**

In addition to showing that "[Lead Plaintiffs'] interests are [not] antagonistic to the interest of other members of the class[,]" Plaintiffs must also show that "[Plaintiffs'] attorneys are qualified, experienced and able to conduct the litigation." Flag Telecom, 574 F.3d at 35 (citation omitted).

This Court has reviewed the attached firm resumes which show that Robbins Geller and Glancy Prongay (collectively "Class Counsel") both have extensive class action experience. (Niehaus Decl. Exs. D, E, ECF Nos. 177-4, 177-5.). We find that Class Counsel will fairly and adequately represent the interests of the class. Additionally, this Court has reviewed the record and finds Defendants' laundry-list of complaints about Class Counsel insufficient to disqualify them from conducting the litigation. (Defs.' Mem. 20-21.)

Accordingly, this Court finds that Plaintiffs have established adequacy of representation.

C.    **Ascertainability**

29

The proposed class members are ascertainable. They are all persons or entities who purchased or otherwise acquired the (1) 7.35% Noncumulative Trust Preferred Securities of Deutsche Bank Capital Funding Trust X and (2) 7.60% Trust Preferred Securities of Deutsche Bank Contingent Capital Trust III, pursuant or traceable to the public offerings from November 2007 and February 2008 subject to certain exclusions. Membership in these classes is easily ascertained by objective documentation. See Merryman, 2018 U.S. Dist. LEXIS 5509, at *41 (citing Dunnigan v. Metro. Life Ins. Co., 214 F.R.D. 125, 136 (S.D.N.Y. 2003)). The proposed class is not defined by any subjective requirement like "state of mind" that would render class members unascertainable. See Spagnola v. Chubb Corp., 264 F.R.D. 76, 97 (S.D.N.Y. 2010). This Circuit's implied requirement, ascertainability, is therefore satisfied.

   D.   Rule 23(b)(3) Analysis

      1.   Applicable Law

Rule 23(b)(3)'s first requirement is that "questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). "The predominance requirement is satisfied 'if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than

30

the issues subject only to individualized proof.'" <u>In re U.S. Foodservice Inc. Pricing Litig.</u>, 729 F.3d 108, 118 (2d Cir. 2013) (quoting <u>UFCW Local 1776 v. Eli Lilly and Co.</u>, 620 F.3d 121, 131 (2d Cir. 2010)).

"While predominance requires a more rigorous showing than does commonality or typicality, it does not require a plaintiff to show that there are no individual issues." <u>IndyMac</u>, 286 F.R.D. at 236 (internal quotation marks and citations omitted). Instead, "in determining whether common questions of fact predominate, a court's inquiry is directed primarily toward whether the issue of liability is common to members of the class," taking into account "both affirmative claims and potential defenses." <u>IndyMac</u>, 286 F.R.D. at 236 (internal quotation marks and citation omitted). If so, "common questions are held to predominate over individual questions." <u>Id.</u>

Rule 23(b)(3) also requires a showing that "a class action is superior to other available methods for fairly and efficiently adjudicating" Plaintiffs' claims. Fed. R. Civ. P. 23(b)(3). The relevant considerations include:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3)(A)-(D). In general, securities actions "easily satisfy the superiority requirement of Rule 23." In re Merrill Lynch Tyco Research Sec. Litig., 249 F.R.D. 124, 132 (S.D.N.Y. 2008) (quoting In re Blech Sec. Litig., 187 F.R.D. 97, 107 (S.D.N.Y. 1999)). This is because securities violations "inflict economic injury on large numbers of geographically dispersed persons such that the cost of pursuing individual litigation to seek recovery is often not feasible." Merrill Lynch, 277 F.R.D. at 120 (quoting In re Merrill Lynch Tyco Research Sec. Litig., 249 F.R.D. 124, 132 (S.D.N.Y. 2008)).

## 2.   Predominance and Superiority Analysis

### i.   Plaintiffs Have Established Predominance.

Plaintiffs seek certification under Rule 23(b)(3). (Pls.' Mem. 16-18.) Defendants do not dispute that Plaintiffs have established predominance and superiority. First, Plaintiffs have adequately established that common questions of law or fact predominate over any individual questions. As discussed already, "two issues are central to claims under sections 11 and 12(a)(2): (1) the existence of . . . an unlawful omission; and (2) materiality." In re Morgan Stanley Information Fund Secs. Litig., 592 F.3d 347, 358 (2d Cir. 2010). Resolving these issues is

fundamental to classwide resolution of Defendants' alleged liability to all class members.

The court must also take into account "potential defenses." IndyMac, 286 F.R.D. at 236. Defendants raise the following "potential defenses" to only Lead Plaintiffs' claims:[7] (1) that Lead Plaintiffs destroyed relevant financial documents, (Defs.' Mem. 12-13), and (2) that there are potential differences in damages between the Lead Plaintiffs and other class members, (id. 13-16). These individualized defenses do not outweigh the issues subject to generalized proof. The alleged willful spoliation is relevant to only two class members: Kaess and Farruggio. Moreover, as discussed already, the alleged spoliation does not hinder litigating liability issues because all the relevant documents can be obtained from HSBC. Thus the spoliation defense applicable to only Lead Plaintiffs does not defeat predominance.

Second, "any differences in damages awards do not defeat class certification" in cases alleging claims under sections 11, 12, or 15. IndyMac, 286 F.R.D. at 235. Again, whether DB is liable can be established on a classwide basis in a single classwide proceeding. If liability is proven, damages can then be mechanically determined on an individual basis by statutory formula. See 15 U.S.C. §

---

[7] Defendants do not argue that these defenses defeat predominance, but that they defeat Rule 23(a) requirements. (Defs.' Mem. 11-13).

77k(e). Therefore, the potential differences in damages also do not defeat predominance because the common questions of fact and law regarding Defendants' potential liability predominate over damages determinations affecting individual members.

ii.    <u>Plaintiffs Have Established Superiority.</u>

Finally, Plaintiffs have established superiority. Here, the alleged securities violations implicates "economic injury on large numbers of geographically dispersed persons such that the cost of pursuing individual litigation to seek recovery is often not feasible." <u>Merrill Lynch</u>, 277 F.R.D. at 120. No doubt, "substituting a single class action for numerous trials . . . will achieve significant economies of 'time, effort and expense, and promote uniformity of decision.'" <u>Foodservice</u>, 729 F.3d at 130-31 (citing Fed. R. Civ. P. 23 Advisory Committee's Notes.) Defendants raise no argument to the contrary.

Therefore, this Court concludes that the requirements of Rule 23(b)(3) have been satisfied.

III. CONCLUSION

For the foregoing reasons, Plaintiffs' Motion to Certify the Class is GRANTED.

A Rule 16 Conference is scheduled in this matter for 10:30 AM, Thursday, November 15, 2018. The Clerk of Court is ORDERED to close docket numbers 171 and 175 in this case.


SO ORDERED.

Dated: New York, New York
        October 2, 2018


_____
        Deborah A. Batts
United States District Judge