# EXHIBIT A
# [REDACTED]

**Robbins Geller Rudman & Dowd LLP**

| Atlanta | Chicago | Melville | Philadelphia | San Francisco |
| Boca Raton | Manhattan | Nashville | San Diego | Washington, DC |

June 3, 2019

<u>VIA ECF & OVERNIGHT DELIVERY</u>

The Honorable Deborah A. Batts
Southern District of New York
500 Pearl Street, Room 2510
New York, NY  10007

Re:   *In re Deutsche Bank AG Sec. Litig.*, No. 1:09-cv-01714-DAB-RWL (S.D.N.Y.)

Dear Judge Batts:

I write in opposition to defendants' May 23, 2019 letters describing the purported bases for summary judgment.  ECF Nos. 259, 261.  Contrary to defendants' letters, there are disputed issues of material fact on every element of plaintiffs' claims.  Plaintiffs' §§11 and 12(a)(2) of the Securities Act of 1933 strict liability claims arise from Deutsche Bank AG's ("DB" or the "Bank") failure to disclose tens of billions of dollars' worth of mortgage-related risks in the midst of the financial crisis.  The Court upheld plaintiffs' allegations that DB was required to disclose these risks in connection with its November 2007 and February 2008 offerings (the "Offerings") under Items 303 and 503 of Regulation S-K.  ECF No. 114 at 76.  The evidence obtained in discovery has confirmed plaintiffs' allegations.

DB's top executives, including defendants Ackermann, Banziger and Di Iorio, testified that, [REDACTED] Reflecting their negative view, [REDACTED] Indeed, by the time of the November 2007 offering, the Bank had already suffered hundreds of millions in losses on its supposed hedges and still retained over $20 billion in exposure to subprime and nonprime mortgage assets.  Nevertheless, the Bank failed to make any meaningful disclosure of these risks.  When the true risks were finally disclosed, the price of the preferred shares suffered statistically significant declines.  These facts cannot be disputed.

Ignoring these facts, defendants first contend the omitted trends and uncertainties *were* adequately disclosed.  But this Court has already held that DB's "disclosures are too generic and unconnected to the company's financial position" to comport with Items 303 and 503.  ECF No. 114 at 77.  Moreover, DB's CFO, Di Iorio, admitted under oath that [REDACTED] DB's assertions that it did not need to disclose "granular" details about its risky assets also fails.  ECF No. 259 at 2.  Defendants ignore that DB's senior management specifically knew of the downward trends and uncertainties surrounding the Bank's significant exposure to the riskiest parts of the U.S. mortgage market and that DB had a duty to disclose these trends and uncertainties.  *See, e.g.*, 17 C.F.R. §229.303.  Indeed, while defendants cite *Kaess v. Deutsche Bank AG*, 572 F. App'x 58 (2d Cir. 2014), *vacated on other grounds*, 135 S. Ct. 2805 (2015), to suggest these issues have already been resolved in defendants' favor, in reality, the Second Circuit did not consider plaintiffs' Item 303 claims, as they had not yet been alleged and were not before that court.

655 West Broadway     Suite 1900     San Diego, CA 92101     Tel 619 231 1058     Fax 619 231 7423     rgrdlaw.com

Nor does *Barclays*'s negative causation holding apply here. The Court's dismissal of the May 2008 offering does not negate causation because discovery has uncovered risks undisclosed in the March 27, 2008 Form 20-F and offering materials that caused statistically significant price declines, including DB's (i) notional exposure to monoline insurers; (ii) the scope of its basis risks; and (iii) the true risks associated with its Alt-A and subprime RMBS. And purchasers in both Offerings were unable to make their investment decisions with the benefit of any of the additional information DB disclosed in its March 2008 Form 20-F. Moreover, in *Barclays*, the plaintiff did not identify any statistically significant market reactions to rebut defendants' negative causation analysis. *See In re Barclays Bank PLC Sec. Litig.*, 756 F. App'x 41, 49 (2d Cir. 2018). That is not the case here, as plaintiffs' expert has already identified statistically significant price declines directly linked to the risks DB failed to disclose in the form of writedowns on nonprime and subprime mortgage assets.

Defendants' second contention is that DB's "exposure estimates," *i.e.*, valuations, are opinions immunized by *Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 135 S. Ct. 1318 (2015), misstates both plaintiffs' claims and *Omnicare*'s holding. Plaintiffs do not assert DB's valuation and risk estimates were inaccurate. Rather, plaintiffs fault DB for failing to disclose management's knowledge of material risks pursuant to Regulation S-K, and it bears repeating that the *Kaess* opinion is not applicable as it did not consider plaintiffs' Item 303 claims. DB's failure to disclose known, objectively material risks under Items 303 and 503 are not statements of opinions subject to *Omnicare*. *See Jaroslawicz v. M&T Bank Corp.*, 912 F.3d 96, 100 (3d Cir. 2018) (assessing an Item 503 claim separately from an *Omnicare* claim). Regardless, plaintiffs' evidence satisfies *Omnicare*, finding §11 liability "if a registration statement omits material facts about the issuer's inquiry into or knowledge concerning a statement of opinion, and if those facts conflict with what a reasonable investor would take from the statement itself." 135 S. Ct. at 1329. The omitted material facts conflict with DB's public assurances that the Bank had effectively eliminated its mortgage exposure.

Defendants' third contention that DB's mortgage-related risks were indisputably immaterial to investors in relation to DB's balance sheet is both false and a red herring. Not only were investors publicly clamoring for fulsome disclosures on DB's mortgage-related positions, DB's senior management understood that these positions would likely (and did, in fact) negatively and materially impact DB's income and capital base, which is the relevant inquiry under Item 303.

Defendants' fourth contention adds nothing to the argument already rejected by the Court that plaintiffs "profited" from their purchase of the securities at issue by receiving the dividends they were promised. ECF No. 259 at 2. In the time since the Court found that plaintiffs "'personally suffered some actual [] injury as a result of the putatively illegal conduct of the defendant'" because they "'purchased shares at one price and sold for a minimal loss'" (ECF No. 224 at 8 (citations omitted)), DB has elicited no new evidence that plaintiffs had a gain on the sales of the relevant securities.

Finally, ample evidence supported by expert opinion contradicts the Underwriter Defendants' due diligence defense that they conducted a sufficient investigation into the accuracy of the Offering materials.

Respectfully submitted,

s/ *Eric I. Niehaus*
ERIC I. NIEHAUS

cc: All Counsel of Record (via ECF)