UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | x | |
|---|---|---|
| In re DEUTSCHE BANK AG SECURITIES LITIGATION | : : : | Master File No. 1:09-cv-01714-GHW-RWL |
| | : | CLASS ACTION |
| | : : | |
| This Document Relates To: | : | DECLARATION OF ERIC I. NIEHAUS FILED ON BEHALF OF ROBBINS GELLER |
| ALL ACTIONS. | : : | RUDMAN & DOWD LLP IN SUPPORT OF APPLICATION FOR AWARD OF |
| | x | ATTORNEYS' FEES AND EXPENSES |

I, ERIC I. NIEHAUS, declare as follows:

1. I am a member of the firm of Robbins Geller Rudman & Dowd LLP ("Robbins Geller" or the "Firm"). I am submitting this declaration in support of my Firm's application for an award of attorneys' fees, expenses and charges ("expenses") in connection with services rendered in the above-entitled action (the "Litigation").

2. This Firm is co-Lead Counsel of record for plaintiffs Norbert G. Kaess, Maria Farruggio, and the Class.

3. The information in this declaration regarding the Firm's time and expenses is taken from time and expense printouts and supporting documentation prepared and/or maintained by the Firm in the ordinary course of business. I was the partner who oversaw and/or conducted the day-to-day activities in the Litigation and I reviewed these printouts (and backup documentation where necessary or appropriate) in connection with the preparation of this declaration. This declaration and the supporting exhibits were prepared by, or with the assistance of, other lawyers and staff at the Firm and reviewed by me before signing. The purpose of this review was to confirm both the accuracy of the entries on the printouts as well as the necessity for, and reasonableness of, the time and expenses committed to the Litigation. As a result of this review, reductions were made to both time and expenses in the exercise of billing judgment. Based on this review and the adjustments made, I believe that the time reflected in the Firm's lodestar calculation and the expenses for which payment is sought herein are reasonable and were necessary for the effective and efficient prosecution and resolution of the Litigation. In addition, I believe that these expenses are all of a type that would normally be charged to a fee-paying client in the private legal marketplace.

4. After the reductions referred to above, the number of hours spent on the Litigation by the Firm is 17,356.85. A breakdown of the lodestar is provided in the attached Exhibit A. The

lodestar amount for attorney/paraprofessional time based on the Firm's current rates is $12,021,477.00. The hourly rates shown in Exhibit A are the usual and customary rates set by the Firm for each individual.

5. The Firm seeks an award of $1,170,981.31 in expenses and charges in connection with the prosecution of the Litigation. Those expenses and charges are summarized by category in the attached Exhibit B.

6. The following is additional information regarding certain of these expenses:

(a) Filing, Witness and Other Fees: $15,020.17. These expenses have been paid to the Court for filing fees and to attorney service firms or individuals who: (i) served process of the complaint or subpoenas; (ii) obtained copies of court documents for plaintiffs; or (iii) delivered courtesy copies to the Court. The vendors who were paid for these services are set forth in the attached Exhibit C.

(b) Business Wire: $3,357.50. This expense was necessary under the Private Securities Litigation Reform Act of 1995's ("PSLRA") "early notice" requirements, which provides, among other things, that "[n]ot later than 20 days after the date on which the complaint is filed, the plaintiff or plaintiffs shall cause to be published, in a widely circulated national business-oriented publication or wire service, a notice advising members of the purported plaintiff class – (I) of the pendency of the action, the claims asserted therein, and the purported class period; and (II) that, not later than 60 days after the date on which the notice is published, any member of the purported class may move the court to serve as lead plaintiff of the purported class." *See* 15 U.S.C. §77z-1(a)(3)(A)(i).

(c) Transportation, Hotels & Meals: $227,852.66. In connection with the prosecution of this case, the Firm has paid for travel expenses to, among other things, attend court

hearings, meet with witnesses, mediators and opposing counsel and take or defend depositions. The date, destination and purpose of each trip is set forth in the attached Exhibit D.

(d) Court Hearing Transcripts, Deposition Reporting, Deposition Transcripts, Deposition Videography, and Deposition Conference Room Rentals: $68,030.54. The vendors who were paid for these services are listed in the attached Exhibit E.

(e) Special Counsel (Joseph M. McMullen): $5,332.46. This amount represents payments made to Joseph M. McMullen, who represented a confidential witness.

(f) Experts/Consultants/Investigators: $750,458.00.

(i) Economists Incorporated: $225,411.50. Lead Counsel retained Economists Incorporated, a financial and economic consulting firm, to provide expert opinions at summary judgment and testimony at trial on issues concerning the different types of mortgage-related assets, including the specific mortgage-related assets held by Deutsche Bank during the relevant time period. In connection with its expert report, Economists Incorporated spent a significant amount of time reviewing Deutsche Bank's SEC filings, deposition testimony given in this case, documentary evidence and consulted with Lead Counsel and its in-house forensic accountants throughout the process.

(ii) Richard D. Puntillo: $208,200.00. Lead Counsel retained Professor Puntillo of the University of San Francisco to provide expert opinions at summary judgment and testimony at trial on issues concerning corporate due diligence and the capital markets. In connection with his report, Professor Puntillo spent a significant amount of time reviewing Deutsche Bank's Proxy Statement and SEC filings, deposition testimony given in this case, documentary evidence and consulted with Lead Counsel and its in-house forensic accountants throughout the process.

(iii) Crowninshield Financial Research, Inc. ("Crowninshield"): $175,758.00. Lead Counsel retained Crowninshield, a firm specializing in expert analysis and testimony in economics, finance and accounting, to provide expert analysis on the issues of market efficiency, loss causation and damages. Crowninshield expert Steven P. Feinstein, Ph.D, CFA, prepared reports submitted at class certification and summary judgment and testified on market efficiency and the common damages methodology to be applied to the Class. Dr. Feinstein also performed class-wide aggregate damages analyses.

(iv) Kalorama Partners, LLC: $111,750.00. Through Kalorama Partners, LLC, Lead Counsel retained the services of Harvey L. Pitt, the former chairman of the SEC, to provide expert opinions at class certification and summary judgment, and testimony at trial, on issues concerning internal disclosure controls relating to proxy statements and materiality for publicly traded companies like Deutsche Bank. In connection with his report, Mr. Pitt spent a significant amount of time reviewing Deutsche Bank's Proxy Statement and SEC filings, deposition testimony given in this case, documentary evidence and consulted with Lead Counsel and its in-house forensic accountants throughout the process.

(v) Financial Markets Analysis LLC ("FMA"): $16,862.50. The principal of FMA, Bjorn Steinholt, was retained by plaintiffs at the inception of this Litigation to calculate damages suffered by plaintiffs and the class for all Offerings alleged in the Consolidated Amended Complaint.

(vi) Soundview Intelligence LLC ("Soundview"): $10,319.25. Soundview was retained to assist in identifying and contacting potential (relevant) former employees of Deutsche Bank.

(vii) Lily Haggerty: $1,225.00. Lily Haggerty was retained to assist in locating potential witnesses.

(viii) Idun Green: $931.75. Idun Green provided a German to English certified translation for a number of documents produced by plaintiffs in discovery and reviewed by the Court in the context of determining standing and class certification.

(g) Photocopies: $7,690.04. In connection with this case, the Firm made 23,685 photocopies. Robbins Geller requests $0.15 per copy for a total of $3,552.75. Each time an in-house copy machine is used, our billing system requires that a case or administrative billing code be entered and that is how the number of in-house copies were identified as related to the Litigation. The Firm also paid $4,137.29 to outside copy vendors. A breakdown of these outside charges by date and vendor is set forth in the attached Exhibit F.

(h) Online Legal and Financial Research: $26,110.68. This category includes vendors such as LexisNexis Products, PACER, Thomson Financial, TransUnion Risk and Alternative Data Solutions, Inc., and Westlaw. These resources were used to obtain access to SEC filings, factual databases, legal research and for cite-checking of briefs. This expense represents the expenses incurred by Robbins Geller for use of these services in connection with this Litigation. The charges for these vendors vary depending upon the type of services requested. For example, Robbins Geller has flat-rate contracts with some of these providers for use of their services. When Robbins Geller utilizes online services provided by a vendor with a flat-rate contract, access to the service is by a billing code entered for the specific case being litigated. At the end of each billing period in which such service is used, Robbins Geller's costs for such services are allocated to specific cases based on the percentage of use in connection with that specific case in the billing period. As a result of the contracts negotiated by Robbins Geller with certain providers, the Class

enjoys substantial savings in comparison with the "market-rate" for *a la carte* use of such services which some law firms pass on to their clients. For example, the "market rate" charged to others by LexisNexis for the types of services used by Robbins Geller is more expensive than the rates negotiated by Robbins Geller.

        (i)      eDiscovery Database Hosting: $32,235.32. Robbins Geller requests $32,235.32 for hosting eDiscovery related to this Litigation. Robbins Geller has installed top tier software, infrastructure and security. The platform implemented, Relativity, is offered by over 100 vendors and is currently being used by 198 of the AmLaw200. Over 30 servers are dedicated to Robbins Geller's Relativity hosting environment with all data stored in a secure SSAE 16 Type II data center with automatic replication to a datacenter located in a different geographic location. By hosting in-house, Robbins Geller is able to charge a reduced, all-in rate that includes many services which are often charged as extra fees when hosted by a third-party vendor. Robbins Geller's hosting fee includes user logins, ingestion, processing, OCRing, TIFFing, bates stamping, productions and archiving – all at no additional cost. Also included is unlimited structured and conceptual analytics (*i.e.*, email threading, inclusive detection, near-dupe detection, concept searching, assisted review, clustering, and more). Robbins Geller is able to provide all these services for a rate that is typically much lower than outsourcing to a third-party vendor. Utilizing a secure, advanced platform in-house has allowed Robbins Geller to prosecute actions more efficiently and has reduced the time and expense associated with maintaining and searching electronic discovery databases. Similar to third-party vendors, Robbins Geller uses a tiered rate system to calculate hosting charges. The amount requested reflects charges for the hosting of over 2,000,000 pages of documents produced by defendants, plaintiffs and non-parties in this Litigation.

(j)     Mediation Fees (Phillips ADR Enterprises, P.C.): $27,210.00.  These are the fees of the mediator, Layn R. Phillips, who conducted multiple mediation sessions leading to the settlement of the Litigation.

7.     The expenses pertaining to this case are reflected in the books and records of this Firm.  These books and records are prepared from receipts, expense vouchers, check records and other documents and are an accurate record of the expenses.

8.     The identification and background of my Firm and its partners is attached hereto as Exhibit G.

I declare under penalty of perjury that the foregoing is true and correct.  Executed this 7th day of May, 2020, at San Diego, California.

s/ Eric I. Niehaus<br>
ERIC I. NIEHAUS

CERTIFICATE OF SERVICE

      I, Eric I. Niehaus, hereby certify that on May 7, 2020, I authorized a true and correct copy of the foregoing document to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such public filing to all counsel registered to receive such notice.

      s/ ERIC I. NIEHAUS
ERIC I. NIEHAUS

ROBBINS GELLER RUDMAN
    & DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA 92101-8498
Telephone: 619/231-1058
619/231-7423 (fax)

E-mail: ericn@rgrdlaw.com